# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**THE PUBLIC INTEREST LEGAL FOUNDATION,**

   Plaintiff,

   v.

**KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION,**

   Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**NO. 1:19-CV-00622**

**CHIEF JUDGE CONNER**

**ELECTRONICALLY FILED**

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Attorneys for Defendants,
Kathy Boockvar, Jonathan M. Marks
and Bureau of Commissions,
Elections and Legislation

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 2

ARGUMENT ..................................................................................... 6

I.    PILF Fails To State a Claim for Relief Under the NVRA ................... 6

II.   Federal and State Law Expressly Prohibit Disclosure of the Records
      Sought by PILF .............................................................................. 12

III.  PILF Fails To State a Claim for Relief Because It Is Not a "Person
      Aggrieved" Under the NVRA ........................................................... 14

IV.   The Bureau of Commissions, Elections and Legislation Is Not a
      Proper Party ................................................................................. 16

CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

*Abramski v. United States*, 573 U.S. 169 (2014) .................................... 7

*Advancement Project v. Pennsylvania Dep't of Transp.*, 60 A.3d 891 (Pa. Commw. 2013) ........................................................ 13, 14

*American Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) ................................................... 8, 10, 15

*Babich v. Karsnak*, 528 A.2d 649 (Pa. Super. 1987) ........................... 16

*Clarke v. Securities Indus. Ass'n*, 479 U.S. 388 (1987) ...................... 15

*Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015) ............ 15

*Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990) ...................... 15

*National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479 (1998) ............................................................... 9

*Pichler v. UNITE*, 542 F.3d 380 (3d Cir. 2008) ................................ 13

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) . 11, 12

*Russell v. City of Philadelphia*, 428 F. App'x 174 (3d Cir. 2011) ............ 16

*Welker v. Clarke*, 239 F.3d 596 (3d Cir. 2001) ................................ 7

## STATUTES

18 U.S.C. § 2721(a)(1) .......................................................... 12, 14

18 U.S.C. § 2725(1) ............................................................. 12

18 U.S.C. § 2725(3) ............................................................. 12

52 U.S.C. § 20503(a) ............................................................ 7

52 U.S.C. § 20507 .............................................................. 3, 8

52 U.S.C. § 20507(a)(3) ......................................................... 7

52 U.S.C. § 20507(a)(4) .................................................................. 3, 4, 7, 8, 9

52 U.S.C. § 20507(b) ............................................................................. 7

52 U.S.C. § 20507(b)(1) ...................................................................... 10

52 U.S.C. § 20507(c) .......................................................................... 7, 8

52 U.S.C. § 20507(d)(2) ....................................................................... 9

52 U.S.C. § 20507(i) ................................................................... 1, 2, 4, 9

52 U.S.C. § 20507(i)(2) ......................................................................... 9

52 U.S.C. § 20510(b) ........................................................................... 14

52 U.S.C. § 20510(b)(1) ........................................................................ 5

52 U.S.C. § 20701 ............................................................................... 11

52 U.S.C. § 20703 ............................................................................... 11

52 U.S.C. § 20704 ............................................................................... 11

25 Pa. C.S.A. § 1901 ..................................................................... 6, 9, 10

75 Pa. C.S.A. § 6114(a) ....................................................................... 13

75 Pa. C.S.A. § 6114(a)(1) ................................................................... 14

65 P.S. § 67.101 *et seq.* ....................................................................... 5

Fed. R. Civ. P. 12(b) ......................................................................... 4, 6

Fed. R. Civ. P. 12(b)(6) ....................................................................... 16

# INTRODUCTION

Following dismissal of its first action for lack of required statutory notice, Plaintiff The Public Interest Legal Foundation ("PILF") commenced this second action under the public disclosure provision in the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i), seeking access to the very same records under the same flawed legal theory. In its Complaint, PILF alleges that the Commonwealth possesses voter and driver license records which, when compared, may shed light on whether noncitizens participated in Commonwealth elections and consequently these records bear on the accuracy of the voting rolls and must be made available for public inspection under the NVRA. The premise underlying PILF's Complaint is fundamentally and irremediably incorrect. Contrary to PILF's assertion, the NVRA does not create a broad right of public access to any information that might have bearing on a person's eligibility to vote. Rather, the NVRA only authorizes review and inspection of records relating to implementation of programs to purge the voter rolls of the names of persons who have died or changed residence. The information that PILF seeks does not relate to these programs and, in any event, is affirmatively barred from public disclosure by both federal and state law. PILF again fails to state any claim upon which relief can be granted and its Complaint should be dismissed.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

PILF claims to be is a "public interest organization" headquartered in Indianapolis, Indiana which is dedicated "to ensur[ing] that voter rolls in the Commonwealth of Pennsylvania, and other jurisdictions throughout the United States, are free from ineligible registrants, noncitizens, individuals who are no longer residents and individuals who are registered in more than one location." (Compl. (ECF 1) ¶ 5.)

On October 23, 2017, PILF's "Litigation Counsel" sent a letter to Defendant Jonathan M. Marks, then-Commissioner of the Department of State, Bureau of Commissions, Elections and Legislation, requesting access to the following records under 52 U.S.C. § 20507(i): (1) documents regarding registrants who were identified as potentially not satisfying the citizenship requirements for registration, including all information obtained from the U.S. Department of Homeland Security and the Pennsylvania Department of Transportation ("PennDOT") and all voter records referenced in news media reports concerning a software "glitch" in the PennDOT Motor Voter system; (2) all requests for removal or cancellation from the voter rolls from January 1, 2006 to the present for any reason related to citizenship; (3) all communications from jury selection officials since January 1, 2006 relating to individuals who claimed to be non-citizens to avoid jury service;

and (4) all communications with prosecutors and/or state or federal government agencies regarding categories (1), (2) or (3). (Compl. ¶¶ 69-70 & Ex. H.)

On December 4, 2017, PILF sent an additional letter to then-Commissioner Marks clarifying that it was seeking "results (full or interim) from an . . . official 'review' of voter data compared against PennDOT's database of customers to identify voters with matching driver profiles containing noncitizen designations." (Compl. ¶ 82 & Ex. I.) The letter referenced the October 25, 2017 hearing before the Pennsylvania House State Government Committee which was convened to address voting by non-citizens and the PennDOT software "glitch" that mistakenly allowed noncitizens to register to vote when they applied for or renewed their driver's licenses. (Compl. ¶ 44 & Ex. I.)

On December 20, 2017, then-Commissioner Marks sent a letter to PILF denying its request for access because the records sought were not required to be made available under the NVRA. (Compl. ¶¶ 89-91, 93.) The letter states in pertinent part:

> While we can appreciate your interest, the Department does not agree that the NVRA entitles you to access the records you seek. At its core, Section 20507 of the NVRA requires reasonable efforts to remove voters ineligible by reason of death or a change of residence. 52 U.S.C. § 20507(a)(4). There is nothing in that section that specifically relates to the removal of non-citizens. Therefore, it is not reasonable to read the public

3

> disclosure provision in Section 20507(i) as relating to
> anything but the mandatory removal programs set forth
> in Section 20507(a)(4).

(Compl., Ex. J.) Then-Commissioner Marks added that, even if the NVRA

required public disclosure of records relating to programs aimed at removing non-

citizens from the voting rolls, there were no records to produce because the

Commonwealth does not have such a program. (*Id.*) There is no dispute on this

point. PILF concedes in its Complaint that "no active process exists" in the

Commonwealth "to detect and remove" noncitizens from the voting rolls. (Compl.

¶ 30.)

On February 26, 2018, PILF filed an action in this Court (docketed at No.

18-CV-463) against then-Acting Secretary of the Commonwealth of Pennsylvania,

Robert Torres, and then-Commissioner Marks seeking to compel production of the

various records itemized in the October 23, 2017 letter. (Compl. ¶ 101.) Acting

Secretary Torres and Commissioner Marks moved to dismiss the Complaint under

Rule 12(b) on the grounds that, *inter alia*, the records requested were not within

the scope of the public access provision in the NVRA and PILF failed to provide

the notice required by the NVRA prior to filing suit.

While the earlier action was pending, the Department of State completed a

privileged investigation of the PennDOT software "glitch." An analysis of voter

4

registration data and data in other state databases performed by an expert retained by the Department of State yielded a list of individuals for whom voter registration status required further confirmation. (Compl. ¶¶ 104, 107 & Ex. L.)[1]  The Department of State sent letters to those individuals asking them to affirm their eligibility to vote or submit a request to cancel their registration. (Compl. ¶¶ 105-107 & Ex. L.)  The Department of State did not initiate any cancelations; instead, any cancelation of a registrant's voter registration was at the request of the registrant. (Compl. ¶ 107.)  Through an unrelated proceeding filed by another litigant under Pennsylvania's Right-to-Know Law, 65 P.S. § 67.101 *et seq.*, PILF obtained access to information concerning the letters sent to registrants, including the number of letters sent and the number of responses received. (Compl. ¶ 107.)

On February 26, 2019, this Court dismissed PILF's original complaint due to lack of notice required by 52 U.S.C. § 20510(b)(1). (Compl. ¶ 109.)

On March 1, 2019, PILF sent a letter to Defendant Kathy Boockvar, Acting Secretary of the Commonwealth of Pennsylvania, and Deputy Secretary Marks[2]

---

[1]  Paragraph 104 of the Complaint makes reference to a press statement describing the Department of State's investigation which is purportedly attached to the Complaint as Exhibit L.  There is no Exhibit L.  Nor does the Complaint include an Exhibit M or P.

[2]  Mr. Marks was named Deputy Secretary for Elections and Commissions in February 2019.

enclosing copies of its October 23, 2017 and December 4, 2017 letters and requesting access to the same records. (Compl. ¶ 121 & Ex. O.) Deputy Secretary Marks responded by letter dated April 9, 2019. In his letter, Commissioner Marks reiterated that the NVRA requires only that states make "reasonable efforts to remove voters ineligible by reason of death or a change of residence" and does not mandate programs for removal of noncitizens or permit public access to documents relating to persons suspected of being noncitizens. (Compl. Ex. O at p. 17.)[3] Deputy Secretary Marks added that "[l]ist maintenance in Pennsylvania is codified in 25 Pa. C.S.A. § 1901 which notably does not include any program or activity for systematic removal of non-citizens." (*Id.*)

On April 10, 2019, PILF commenced the present action reasserting the same claim under the NVRA. (ECF 1.) Defendants filed the instant motion to dismiss pursuant to Rule 12(b) on May 8, 2019. (ECF 12.)

## ARGUMENT

### I.  PILF Fails To State a Claim for Relief Under the NVRA.

The NVRA is not an all-purpose right-to-know law and does not create a right to inspect any record that may shed light on a person's eligibility to vote.

---

[3] PILF alleges in Paragraph 121 of the Complaint that the April 9, 2019 letter is reproduced as Exhibit P. In fact, the letter appears on page 17 of Exhibit O. There is no Exhibit P.

Instead, the statute confers a limited opportunity to inspect records relating to state programs that purge the names of voters who have died or changed residence. The records that PILF seeks do not relate to these mandatory programs and, as a matter of law, are not subject to inspection under the NVRA.

The NVRA's central purpose[4] is to expand opportunities for voter registration and ensure that, once registered, voters cannot be removed from the registration rolls for improper reasons. *Welker v. Clarke*, 239 F.3d 596, 598-99 (3d Cir. 2001). To achieve these goals, the NVRA requires that states establish simplified systems for voter registration in federal elections by mail, at designated government offices and on driver's license applications, 52 U.S.C. § 20503(a), and regulates state programs for confirming voter registrations, 52 U.S.C. § 20507(b). The NVRA also limits the circumstances in which states may remove registered voters from official voter lists. 52 U.S.C. § 20507(a)(3). In furtherance of the legislative goal of maintaining accurate and current voter rolls, the NVRA places an affirmative obligation on states to develop uniform, nondiscriminatory programs to remove the names of voters who have died or changed residence. 52 U.S.C. § 20507(a)(4), (b), (c). Specifically, the NVRA provides that "each State

---

[4] When construing a statute, the relevant words are interpreted "with reference to the statutory context, structure, history, and purpose." *Abramski v. United States*, 573 U.S. 169, 179 (2014) (citation and internal quotation marks omitted).

shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of–(A) the death of the registrant; or (B) a change in the residence of the registrant in accordance with subsections (b), (c), and (d)." 52 U.S.C. § 20507(a)(4). The parameters of such programs—so-called "list maintenance"—are also regulated by the NVRA. For example, the NVRA provides that voter removals based on change of address may be made based on information supplied by the U.S. Postal Service. 52 U.S.C. § 20507(c).

The Third Circuit confirmed the list maintenance obligations imposed on states in *American Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) ("*ACRU*"). The plaintiff in *ACRU* alleged that the City violated the NVRA by failing to implement a program to remove the names of convicted felons from the official voter list. *Id.* at 177-78. The Third Circuit held that the NVRA imposes no such obligation. After considering the purpose of the NVRA, the legislative history and the statutory text, the Court concluded that the NVRA only imposes "an affirmative obligation on states to make 'reasonable efforts,'" to remove the names of voters "who have died or moved away." *Id.* at 182.

The NVRA public disclosure provision appears in 52 U.S.C. § 20507—the same section of the statute which obligates states to implement list maintenance programs to purge the names of persons who have died or moved away. The

public disclosure provision, 52 U.S.C. § 20507(i), provides that states shall permit public inspection of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. . . ." 52 U.S.C. § 20507(i).[5] The reference in subsection (i) to "programs and activities" can only be read as referring to the mandatory obligation in subsection (a)(4) to "conduct a general program . . . to remove the names of ineligible voters . . . by reason of . . . death . . . or a change in . . . residence. . . ." *See generally National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998) ("[S]imilar language contained within the same section of a statute must be accorded a consistent meaning."). Thus, according to the NVRA's plain text, the right of public inspection in Section 20507(i) applies only to the list maintenance programs mandated by Section 20507(a)(4). In Pennsylvania, those programs are codified in the Pennsylvania Voter Registration Act ("PVRA"), 25 Pa. C.S.A. § 1901, which was adopted in response to the NVRA and which sets forth the manner and circumstances in which a voter's registration may be canceled due to death or change in residence.

---

[5] Section 20507(i)(2) clarifies that the records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice. 52 U.S.C. § 20507(i)(2).

The records that PILF seeks are not related to Pennsylvania's NVRA-mandated list maintenance programs or to cancellation of registrations due to death or change of residence. Rather, PILF is seeking access to data and results relating to the privileged investigation of the "glitch" in PennDOT's electronic systems that resulted in noncitizens inadvertently registering to vote. (*See, e.g.,* Compl. ¶ 104.) The NVRA does not contemplate or require any such investigation or permit access to the results of any such investigation. As noted above, the NVRA only imposes a duty to purge the names of voters who have died or moved away, *ACRU,* 872 F.3d at 182-83, and Pennsylvania's list maintenance programs serve only those purposes, 25 Pa. C.S.A. § 1901.[6] Even PILF concedes in its Complaint that Pennsylvania has "no active process . . . to detect and remove" noncitizens. (Compl. ¶ 30.) Any special investigation of the PennDOT "glitch" is necessarily distinct from standard list maintenance and therefore is not subject to public disclosure under the plain text of the NVRA.

Moreover, PILF's proffered interpretation of the NVRA is objectively unreasonable. Under PILF's view, the public should be permitted wholesale

---

[6]  In any event, the proposal advanced by PILF—that the registration of persons whose driver's license records include "INS Indicators" should automatically be canceled, (*see, e.g.,* Compl. ¶ 68)—would not be "uniform" or "nondiscriminatory" as required by 52 U.S.C. § 20507(b)(1).  Targeting selected registrants based on an assumption of ineligibility would violate both requirements.

access to *any* state record that sheds light on a registrant's eligibility to vote. If the NVRA were to be construed as PILF proposes, the public would have a *broader* right of access to voter records than the Attorney General who is entrusted with enforcing the NVRA. Under the NVRA, the Attorney General has the right to inspect "all records and papers . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . ." after identifying the purpose for the inspection and is prohibited from disclosing those records and papers other than to Congress or a governmental agency or in the presentation of any case under the NVRA. 52 U.S.C. §§ 20701, 20703, 20704. PILF's proposed construction of the NVRA's public inspection provision is infinitely broader and would encompass information on registrants maintained by PennDOT and other state agencies. This is patently unreasonable and certainly not what Congress intended.

In sum, the records sought by PILF do not relate to list maintenance programs aimed at removing registrants who have died or moved away—the only records required to be made available under the NVRA—and therefore PILF fails to state a claim under the NVRA upon which relief may be granted. Its Complaint should be dismissed.[7]

---

[7] PILF suggests that *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012), supports its request for driver's license and other state

## II. Federal and State Law Expressly Prohibit Disclosure of the Records Sought by PILF.

PILF's request for inspection fails for a second, independent reason: the driver license records that PILF seeks to access are barred from disclosure by federal and state law.

The Driver's Privacy Protection Act prohibits states from disclosing or making available to any person or entity any "personal information . . . about any individual obtained . . . in connection with a motor vehicle record," unless the use falls within a specified exception (none of which are relevant here). 18 U.S.C. § 2721(a)(1). The Act defines "personal information" as "information that identifies an individual," including "driver identification number[s]." 18 U.S.C. § 2725(3). A "motor vehicle record" is defined in the Act as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). The information that PILF seeks—driver license records with an "INS Indicator" that match driver license records associated with registered voters (Compl. ¶ 82 & Ex. I)—constitute "personal information" in a "motor vehicle

---

records. (Compl. ¶ 142.) That case is entirely inapposite. *Project Vote* involved the different issue of whether rejected voter registration applications are subject to public inspection. There is no such request here and, in any event, *Project Vote* is not the law in this Circuit.

record" and therefore the Driver's Privacy Protection Act precludes disclosure of that information to PILF. *See generally Pichler v. UNITE*, 542 F.3d 380, 395-96 (3d Cir. 2008) (union violated Driver's Privacy Protection Act by accessing motor vehicle records for union organizing which is not permitted use under Act).

Pennsylvania law similarly makes it unlawful for any Commonwealth official to "sell, publish or disclose . . . records or reports which relate to the driving record of any person." 75 Pa. C.S.A. § 6114(a). "Driving record" for purposes of 75 Pa. C.S.A. § 6114(a) includes a driver's license. *Advancement Project v. Pennsylvania Dep't of Transp.*, 60 A.3d 891, 895 (Pa. Commw. 2013). Accordingly, the Commonwealth and its officials are also prohibited by state law from disclosing the driver's license records requested by PILF.

The Pennsylvania Commonwealth Court rejected a similar request for driver's license records in *Advancement Project*. The plaintiff in that case was a self-styled voter protection agency seeking access to driver's license records with the intent of comparing them to the list of registered voters in the Department of State's Uniform Registry of Electors (SURE) database for the purpose of identifying the number of non-driver photo ID's that would need to be issued under Pennsylvania's voter ID law. *Advancement Project*, 60 A.3d at 892. PennDOT denied the plaintiff's request under the Pennsylvania Right-to-Know Law and the Commonwealth Court affirmed. The Commonwealth Court found that the

requested information "relates to the 'driving record'" of those individuals and therefore is barred from disclosure by 75 Pa. C.S.A. § 6114(a)(1). *Id.* at 896-97. The Court also found that the driver's license records constitute "motor vehicle records" and are likewise barred from disclosure by 18 U.S.C. § 2721(a)(1). *Id.* at 897.

*Advancement Project* is on all fours and compels the conclusion that driver's license records cannot be disclosed to PILF. Because those records are protected from disclosure by both 75 Pa. C.S.A. § 6114(a)(1) and 18 U.S.C. § 2721(a)(1), PILF fails to state a claim upon which relief can be granted.

## III. PILF Fails To State a Claim for Relief Because It Is Not a "Person Aggrieved" Under the NVRA.

Alternatively, the Complaint should be dismissed because PILF is not a "person aggrieved" by the NVRA within the meaning of 52 U.S.C. § 20510(b).[8]

Section 20510(b) provides that "[a] person who is aggrieved by a violation of this chapter" may bring a civil action for declaratory or injunctive relief if the violation is not timely corrected. 52 U.S.C. § 20510(b). The Supreme Court held that the "person aggrieved" reference prohibits a plaintiff from bringing a claim

---

[8] Defendants acknowledge and respect the Court's ruling on the "person aggrieved" issue in the context of the earlier litigation. They re-assert their argument here solely to preserve the issue in the event of an appeal.

unless he "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883 (1990). The Supreme Court described the "zone of interests" test as denying a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399 (1987).

PILF fails to satisfy the "person aggrieved" standard because its interests are at odds with the interests sought to be protected by the NVRA. The "NVRA was intended as a shield to protect the right to vote, not as a sword to pierce it." *ACRU*, 872 F.3d at 182. Because PILF's stated goal is to *remove* persons from the registration rolls based on an assumption that persons whose driver's license records at any time included an "INS indicator" are not eligible to vote, (*see, e.g.*, Compl. ¶¶ 5, 62-63, 134), PILF is not within the "zone of interests" protected by the NVRA and does not and cannot assert that its organizational objectives were hampered or its resources were diverted as a result of the allegations in the Complaint. As a result, PILF is not an "aggrieved person" authorized to bring suit under the statute.

Because PILF is not a "person aggrieved" under the NVRA, it fails to state a claim under the statute and its Complaint should be dismissed. *See Leyse v. Bank*

*of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (motion to dismiss for lack of statutory standing properly considered under Rule 12(b)(6)).

## IV. The Bureau of Commissions, Elections and Legislation Is Not a Proper Party.

As PILF concedes in its Complaint, the Bureau of Commissions, Elections and Legislation is a division of the Department of State. (*See, e.g.*, Compl. ¶ 8.) Because it is not a separate legal entity, the Bureau should be dismissed as a party defendant. *See generally Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011) (divisions within government entity not properly named as defendants); *Babich v. Karsnak*, 528 A.2d 649, 653 (Pa. Super. 1987) (subdivision of corporation is not a separate legal entity capable of being sued).

## **CONCLUSION**

For the reasons set forth above, PILF fails to state a claim upon which relief can be granted under the NVRA and its Complaint should therefore be dismissed.

Respectfully submitted,

/s/Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Counsel for Defendants,
Kathy Boockvar, Jonathan M. Marks
and the Bureau of Commissions,
Elections and Legislation

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: May 22, 2019

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULE 7.8(b)(3)

I, Donna A. Walsh, hereby certify that the foregoing Memorandum of Law in Support of Defendants' Motion To Dismiss is in compliance with Local Rule 7.8(b)(3). The brief contains 3728 words as computed by Microsoft Office Word.

<u>/s/ Donna A. Walsh</u>

Date: May 22, 2019

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion To Dismiss was served upon the following counsel of record via the Court's ECF system on this 22nd day of May, 2019:

> J. Christian Adams, Esquire
> Public Interest Legal Foundation
> 1555 King Street, Suite 200
> Alexandria, VA  22314
>
> Noah H. Johnson, Esquire
> Public Interest Legal Foundation
> 32E Washington Street, Suite 1675
> Indianapolis, IN  46204
>
> Linda A. Kerns, Esquire
> Law Offices of Linda A. Kerns, LLC
> 1420Locust Street, Suite 200
> Philadelphia, PA  19102

/s/ Donna A. Walsh