# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE PUBLIC INTEREST LEGAL
FOUNDATION,

        Plaintiff,

    v.

KATHY BOOCKVAR, in her official
capacity as Acting Secretary of the
Commonwealth of Pennsylvania,
JONATHAN M. MARKS, in his official
capacity as Deputy Secretary for
Elections and Commissions, and the
BUREAU OF COMMISSIONS,
ELECTIONS AND LEGISLATION,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

NO. 1:19-CV-00622

CHIEF JUDGE CONNER

ELECTRONICALLY FILED

---

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)

---

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Counsel for Defendants,
Kathy Boockvar, Jonathan M. Marks
and Bureau of Commissions,
Elections and Legislation

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................1

    I.     PILF Fails To State a Claim for Relief Under the NVRA ....................1

    II.    Federal and State Law Expressly Prohibit Disclosure of the Records Sought by PILF ..........................................................................................9

    III.   PILF Lacks Standing To Sue ............................................................ 15

    IV.   The Bureau of Commissions, Elections and Legislation Is Not a Proper Party ..................................................................................... 15

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

*Advancement Project v. Pa. Dep't of Transp.*, 60 A.3d 891 (Pa. Cmwlth. 2013) ...................................................... 14

*Am. Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) ...............................................................3

*Arcia v. Detzner*, No. 12-22282, 2015 WL 11198230 (S.D. Fla. Feb. 12, 2015)......4

*Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014) ...................................3

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ........................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................8

*Comm. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173 (3d Cir. 1988) .............................................................................. 13

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)..................................................5

*Davis v. Freedom of Information Comm'n*, 47 Conn. Supp. 309, 790 A.2d 1188 (2001), *aff'd*, 259 Conn. 45, 787 A.2d 530 (2002) ...................................... 11, 12

*Ex Parte Siebold*, 100 U.S. 371 (1879).................................................................. 14

*Judicial Watch, Inc. v. Lamone*, No. ELH-17-2006, 2018 WL 2564720 (D. Md. June 4, 2018) ................................................................................7

*Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479 (1998) ................................................................................ 4, 5

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ............ 5, 6

*Pub. Interest Legal Found. v. Bennett*, No. 4:18-CV-00981, 2019 WL 1112228 (S.D. Tex. Mar. 11, 2019), *adopting magistrate report and recommendation*, 2019 WL 1116193 (S.D. Tex. Feb. 6, 2019) ...................... 6, 7

*The Pub. Interest Legal Found., Inc. v. Reed*, No. 1:16-cv-01375 (E.D. Va. Jan. 27, 2017) ................................................................................ 11, 12

*Russello v. United States*, 464 U.S. 16 (1983).........................................................5

*Surrick v. Killion*, 449 F.3d 520 (3d Cir. 2006).......................... 12

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366 (3d Cir. 1991).......... 12

*Universal Health Care Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016)..........8

## **STATUTES**

18 U.S.C. § 2721(a)(1) ..................................................... 10

18 U.S.C. § 2721(b)(1) ..................................................... 11

18 U.S.C. § 2721(c) ........................................................ 10

18 U.S.C. § 2725(3) ........................................................ 10

28 U.S.C. § 158(d) ...........................................................5

28 U.S.C. § 1292 .............................................................5

52 U.S.C. § 20507 ...........................................................3

52 U.S.C. § 20507(a)(3) .....................................................3

52 U.S.C. § 20507(a)(4) ............................................. 3, 4, 5, 7

52 U.S.C. § 20507(b) ................................................... 3, 4, 5

52 U.S.C. § 20507(c) ................................................... 3, 4, 5

52 U.S.C. § 20507(d) ..................................................... 4, 5

52 U.S.C. § 20507(i) .................................................. 1, 4, 5

52 U.S.C. § 20507(i)(1) .....................................................2

52 U.S.C. § 20510(b) ...................................................... 11

52 U.S.C. § 20701 ...........................................................9

52 U.S.C. § 20703 ...........................................................9

52 U.S.C. § 20704 ...........................................................9

25 Pa. C.S.A. § 1901 ........................................................2

75 Pa. C.S.A. § 6114(a) ................................................................................ 14, 15

# INTRODUCTION[1]

The public inspection provision in the National Voter Registration Act

("NVRA") is targeted and narrow: the public is permitted to inspect records

relating to federally mandated list maintenance programs that purge the voter rolls

of names of registrants who have died or changed residence. 52 U.S.C. § 20507(i).

PILF is not seeking access to list maintenance records but rather records

maintained by state agencies that may shed light on the citizenship of persons who

may have been affected by a software error at PennDOT. As a matter of law, the

NVRA does not require states to make such information available for inspection.

Moreover, both federal and state law prohibit the Commonwealth from disclosing

to PILF information obtained from driver's license records. PILF thus fails to state

any claim for relief and its Complaint should be dismissed.

# ARGUMENT

## I.  PILF Fails To State a Claim for Relief Under the NVRA.

PILF's Opposition Brief, like its Complaint, is based on the fundamentally

incorrect premise that the public is allowed to inspect *any* state records that might

bear on an individual's eligibility to vote. (*See, e.g.,* Opp'n Br. (ECF 15) at 3, 8,

---

[1]  Pursuant to Local Rule 7.9, Defendants respectfully request that this matter
be listed for oral argument.

9.)  The NVRA affords no such right.  PILF's arguments to the contrary defy the plain text of the NVRA and collapse under the slightest scrutiny.

PILF contends that the public inspection provision in the NVRA carves out two specific exceptions to the inspection requirement—records relating to declinations to register to vote and records relating to the identity of voter registration agencies—and therefore all other records bearing on voter eligibility must be open for public inspection.  (Opp'n Br. at 7.)  This argument fails because it ignores the plain text of the NVRA.  Contrary to PILF's argument, the NVRA does not allow access to all records relating to registrants but rather only "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1).  PILF bypasses the express statutory qualifier that, to be accessible, records must relate to "the implementation" of list maintenance programs required by the NVRA and ignores the Pennsylvania Voter Registration Act ("PVRA"), 25 Pa. C.S.A. § 1901, which codifies Pennsylvania's list maintenance programs and activities and notably does *not* include any mechanism for systematically investigating or removing non-citizens.  PILF's refusal to acknowledge Pennsylvania's *actual* list maintenance programs in the PVRA is stunning and completely eviscerates its argument that citizenship data is accessible under the guise of list maintenance.

2

Unable to point to any facts which plausibly suggest that the Commonwealth ever implemented a list maintenance program aimed at unilaterally cancelling the registrations of suspected non-citizens, PILF makes the remarkable assertion that *all* state records relating to citizenship must nonetheless be open to inspection under the NVRA because citizenship is a qualification for registration. (Opp'n Br. at 9.) Again, the NVRA cannot reasonably be read as PILF proposes. The Third Circuit has made clear that the NVRA only requires states to implement list maintenance programs that purge the names of "registrants who have died or moved away." *See Am. Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 182 (3d Cir. 2017). The right of public inspection appears in the same section of the NVRA that creates the obligation to purge voter lists by reason of death or change of residence[2] and uses the same general language. *Compare* 52

_____

[2]  PILF would read subsections (b) and (c) of 52 U.S.C. § 20507 as inviting states to implement list maintenance programs to remove registrants for reasons other than death or change of address. (Opp'n Br. at 12.) This proposed construction cannot be squared with § 20507(a)(3) which provides that "the name of a registrant may not be removed from the official list of eligible voters except— (A) at the request of the registrant; (B) as provided by State law, by reason of criminal conviction or mental incapacity; or (C) as provided under paragraph (4) [*i.e.* pursuant to a general program that removes the names of ineligible voters by reason of the death of the registrant or a change in the residence of the registrant]." 52 U.S.C. § 20507(a)(3). The NVRA thus cannot be read as PILF proposes to require public inspection of records relating to citizenship. Contrary to PILF's argument on page 12 of its brief, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014) does not hold otherwise. There, the Eleventh Circuit held that a state is not permitted to systematically remove voters from the voting rolls within 90 days of an election and did not reach the issue of whether a state is authorized to

U.S.C. § 20507(a)(4) ("In the administration of voter registration for elections for Federal office, each State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; or (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d).") *and* 52 U.S.C. § 20507(b) ("Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . .") *and* 52 U.S.C. § 20507(c) (describing elements of program under § 20507(a)(4)) *and* 52 U.S.C. § 20507(d) (imposing restrictions on removal due to change in residence) *with* 52 U.S.C. § 20507(i) ("Each State shall . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purposes of ensuring the accuracy and currency of official lists of eligible voters, . . ."). The words "programs" and "activities" in § 20507(i) must be accorded the same meaning as in § 20507(a)(4), (b) and (c), *see Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501 (1998) ("similar language contained within the same section of a statute must be accorded a consistent meaning"), and therefore can only be read as referring to the mandated programs to remove

---

implement a program for investigation and removal of non-citizens. *See Arcia v. Detzner*, No. 12-22282, 2015 WL 11198230 (S.D. Fla. Feb. 12, 2015) (describing effect of Eleventh Circuit ruling).

registrants who have died or moved away. Pennsylvania has no other list

maintenance programs. Accordingly, PILF has no right under the NVRA to

inspect any other records.[3]

PILF asserts that *Project Vote* "strongly supports" its position, (Opp'n Br. at

6), but *Project Vote* is materially different. That case did not involve access to

citizenship data but rather voter registration applications. The Fourth Circuit held

in *Project Vote* that the request for rejected applications was within the scope of

the NVRA public disclosure provision because Virginia law tasked Virginia

election employees with responsibility for reviewing the completed voter

applications prior to registering voters. *Project Vote/Voting for America, Inc. v.

Long*, 682 F.3d 331, 335-36 (4th Cir. 2012). There is no parallel whatsoever to the

---

[3]  PILF bases its statutory construction argument on *Russello v. United States*, 464 U.S. 16 (1983), and *Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992), but neither case is on point. The issue in *Conn. Nat'l Bank* was whether the statute authorizing review of interlocutory orders, 28 U.S.C. § 1292, is limited by another statute, 28 U.S.C. § 158(d), which deals with bankruptcy jurisdiction. 503 U.S. at 251-52. This case does not involve construction of overlapping statutes and therefore the analysis in *Conn. Nat'l Bank* is not relevant. The issue in *Russello* was whether the "interest" subject to forfeiture under the RICO statute is limited to an "interest in an enterprise" as those words appear in other sections of the RICO statute. 464 U.S. at 20. Unlike in *Russello*, the public disclosure provision in the NVRA uses the *same general language* as other provisions in the *same section* describing list maintenance obligations. Under the "established canon of construction" recognized in *Nat'l Credit Union Admin.*, the right to public inspection of "programs" in § 20507(i) necessarily and only applies to the "programs" to purge voters who have died or moved away that are required by § 20507(a)(4) and further described in § 20507(b), (c) and (d).

records at issue in this case. PILF is not seeking to access completed voter registration applications or other records required for registration under state law. Nor do the list maintenance programs codified in the PVRA require or contemplate review of the data sought by PILF. Again, as PILF concedes, Pennsylvania has no systematic program for removing non-citizens. (Compl. ¶ (ECF 1) 30.)[4] Even if the Fourth Circuit's expansive interpretation of the NVRA were deemed to apply in this Circuit rather than the construction applied by the Third Circuit in *ACRU, Project Vote* does not support PILF's request for access to citizenship data.

PILF also errs in attempting to analogize its request for citizenship information in this case to its request for records in *Pub. Interest Legal Found. v. Bennett*, No. 4:18-CV-00981, 2019 WL 1112228 (S.D. Tex. Mar. 11, 2019), *adopting magistrate report and recommendation*, 2019 WL 1116193 (S.D. Tex. Feb. 6, 2019). Contrary to PILF's arguments, this case is not "substantially" or in any way similar to *Bennett*. (Opp'n Br. at 9.) *Bennett* involved a request for access to documents relating to standard "list maintenance activities"—the very

---

[4] PILF contends on page 2 of its Opposition Brief that Acting Secretary Boockvar "admits [the Department of State] has engaged in list maintenance activities" concerning suspected non-citizens. This is not accurate. The references are to the investigation of the software glitch, not list maintenance. Pennsylvania has no list maintenance program aimed at removing suspected non-citizens. Indeed, PILF admits in its Complaint that Pennsylvania has no "no active process . . . to detect and remove" suspected non-citizens. (Compl. ¶ 30.)

records required to be maintained and made available pursuant to the NVRA disclosure provision. Indeed, the Report and Recommendation in *Bennett* noted that the defendants in that case, unlike the Defendants here, did not dispute that at least some of the requested records fell within the public disclosure provision. 2019 WL 1116193 at *4. By contrast, the records sought by PILF in this case do not relate to the list maintenance programs mandated by § 20507(a)(4) and codified in the PVRA, but rather to an investigation directed by counsel into the so-called "glitch" in PennDOT's electronic voter registration system. Unlike the records in *Bennett*, the records sought by PILF in this case do not relate to list maintenance and are not within the scope of the public disclosure provision.

PILF's reliance on *Judicial Watch, Inc. v. Lamone* is also misplaced. (Opp'n Br. at 10.) The only issue in that case was whether Maryland county officials were required to make the county voter registration list available for inspection under the NVRA. *Judicial Watch, Inc. v. Lamone*, No. ELH-17-2006, 2018 WL 2564720 (D. Md. June 4, 2018). PILF is not seeking a voter list but rather data and information bearing on citizenship. *Judicial Watch* provides no support for PILF's request to inspect these records.

Finding no support for its position in the statutory text or caselaw, PILF invokes policy and argues that limiting the NVRA public inspection provision to list maintenance records would thwart the public interest in transparency. (Opp'n

Br. at 15-16.) This argument is a non-starter. Policy arguments, of course, cannot supersede statutory text. *Universal Health Care Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016). Moreover, PILF's argument is based on the false premise that registrations were "summarily canceled" by Commonwealth officials based on a reason other than death or change of residence. (Opp'n Br. at 15.) No such allegation appears in the Complaint. PILF does not and cannot allege that Pennsylvania "summarily canceled" any registrant due to suspected non-citizenship or any reason not outlined in the PVRA. To the contrary, PILF concedes in its Complaint that Pennsylvania has no list maintenance program aimed at removing suspected non-citizens. (Compl. ¶ 30.) PILF further alleges that the Department of State disclosed that it sent letters to registrants which alerted them to the software "glitch" at PennDOT and invited them to cancel their own voter registrations if they inadvertently registered to vote when they obtained a driver's license. (*See, e.g., id.* ¶¶ 103, 107.)[5] PILF admits that it has copies of the form letters and Department of State press statement, (*see id.* ¶¶ 103-04), and therefore cannot credibly assert lack of transparency.

---

[5] While well-pled factual allegations are required to be accepted as true for purposes of this motion, legal conclusions and unwarranted inferences in the Complaint are not accorded the presumption of truth and cannot defeat dismissal under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).

Put simply, the NVRA cannot reasonably be read as PILF proposes to require the Department of State to make available for public inspection any record from any source that may shed light on a person's eligibility to vote. The NVRA only mandates list maintenance programs to remove registrants who have died or moved away and only records relating to these mandated programs are required to be made available for inspection under the public disclosure provision in the NVRA. Because the records sought by PILF do not relate to Pennsylvania's list maintenance programs, PILF has no right to inspect those records. PILF fails to state a claim for relief under the NVRA and its Complaint should be dismissed.[6]

## II. Federal and State Law Expressly Prohibit Disclosure of the Records Sought by PILF.

PILF's effort to inspect citizenship data in driver's license records fails for the alternative reason that such disclosure is prohibited by both federal and state

---

[6] As explained in Defendants' Supporting Brief (ECF 14 at pp. 10-11), PILF's proposed construction of the NVRA is patently unreasonable because it would enable members of the public to have *unqualified* access to *all records from any state source* bearing on an individual's eligibility to vote whereas the Attorney General, who is charged with enforcing the NVRA, has the right to inspect only records "relating to any application, registration, payment of poll tax, or other act requisite to voting" and must preserve the confidentiality of those records. 52 U.S.C. §§ 20701, 20703, 20704. PILF offers no cogent justification for allowing the public broader access than the Attorney General and there is no justification.

law. PILF's arguments to the contrary are without merit.[7]

PILF is wrong in positing that the information sought—citizenship status—is not protected by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721(a)(1). (Opp'n Br. at 20.) The DPPA prohibits disclosure of "personal information" which is defined as "information that identifies an individual," including "driver identification number[s]." 18 U.S.C. § 2725(3). The identification numbers that PILF is seeking from driver license records—described in the Complaint as "the data matching of PennDOT driver's license numbers with INS Indicators against driver's license numbers of registered voters in the statewide voter registration database," (Compl. ¶ 68)—undoubtedly identify individuals and therefore the DPPA precludes disclosure of that information.

PILF also errs in arguing that the DPPA does not bar state election officials from re-disclosing any driver license records obtained from PennDOT. (Opp'n Br. at 18.) The DPPA expressly prohibits government agencies from re-disclosing driver license records for non-permitted uses. 18 U.S.C. § 2721(c). Equally

---

[7] PILF attacks a straw man in accusing the Defendants of taking the position that any voter record with any nexus to a state motor vehicle agency is protected from disclosure. (Opp'n Br. at 18, 21.) This is not Defendants' position. Rather, no documents were made available for inspection because the NVRA only permits inspection of records relating to mandated list maintenance programs and there is no such program for systematic removal of non-citizens. (*See* April 9, 2019 Letter from Deputy Secretary Marks attached to Compl. as Ex. Q.)

without merit is PILF's argument that it has a right to access driver's license records under 18 U.S.C. § 2721(b)(1) which permits use by "any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." (Opp'n Br. at 19.) PILF does not qualify for access under this section because it is not acting on behalf of any government agency and is not carrying out any government function. Nor can PILF claim a right of access as a "private attorney general." (Opp'n Br. at 19.) While the NVRA permits private citizen suits to enforce the NVRA, 52 U.S.C. § 20510(b), nothing in the NVRA or DPPA authorizes private citizens to access confidential driver's license records for the purpose of investigating whether non-citizens are registered to vote. PILF cannot use the NVRA as a bootstrap to overcome the prohibition in the DPPA and Pennsylvania law.

Lacking any support in the text of the DPPA, PILF tries to analogize this case to *Reed* and *Davis* where non-driver license records were deemed not to implicate the DPPA. (Opp'n Br. at 17-19.) In *Reed*, the United States District Court for the Eastern District of Virginia determined that the DPPA did not apply to a request for records relating to voter registrations that were canceled due to non-citizenship. *The Pub. Interest Legal Found., Inc. v. Reed*, No. 1:16-cv-01375 (E.D. Va., filed Jan. 27, 2017). While it is not possible to discern the precise issue or the Court's reasoning from the terse, two-paragraph order attached to PILF's

Opposition Brief, the court filings in *Reed* confirm that the only records required to be made available were voter cancellation notices which were expressly made subject to public inspection under state law.[8] The Order in *Reed* did not reference or compel production of information in driver's license records like the information sought by PILF in this case. Similarly, in *Davis*, the Superior Court of Connecticut concluded that it was not a violation of the DPPA to publish lists of names and addresses of owners of motor vehicles and snowmobiles which were required to be maintained by municipal tax inspectors and made available for public inspection. *Davis v. Freedom of Information Comm'n*, 47 Conn. Supp. 309, 790 A.2d 1188 (2001), *aff'd*, 259 Conn. 45, 787 A.2d 530 (2002). *Davis* did not involve a request to access driver license records. Neither *Reed* nor *Davis* is on point or binding on this Court. *See Surrick v. Killion*, 449 F.3d 520 (3d Cir. 2006) (state court decisions do not bind federal courts with respect to federal law); *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.").

---

[8]   In the Complaint filed in the *Reed* case (obtained from PACER), PILF sought access to "records showing individuals whose voter registrations have been cancelled because they were determined to not be United States citizens." Compl. ¶ 9, *The Pub. Interest Legal Found., Inc. v. Reed*, No. 1:16-cv-01375 (E.D. Va., filed Oct. 31, 2016) (ECF 1). *Reed* did not involve a request for driver license records and therefore *Reed* provides no support for PILF's position in this case.

No doubt recognizing the insurmountable obstacle posed by the DPPA, PILF argues that it is not seeking driver's license records but rather voter registration records. (Opp'n Br. at 16-17.) This argument is belied by PILF's NVRA request as well as its Complaint. In both its letters and its Complaint, PILF seeks access to driver's license records which include driver's license numbers and citizenship designations ("INS indicators") and explains its intent to compare that information to voter registration lists for the purpose of identifying persons who may be noncitizens and therefore ineligible to vote. *See, e.g.*, Oct. 23, 2017 Letter (attached to Compl. as Ex. H) (requesting "information obtained from . . . the Pennsylvania Department of Transportation since January 1, 2006 . . ."); Dec. 4, 2017 Letter (attached to Compl. as Ex. I) (requesting "results (full or interim) from an aforementioned official 'review' of voter data compared against PennDOT's database of customers . . ."); Compl. ¶ 96 ("The requested records, including records related to the Noncitizen Matching Analysis, . . . must be made available . . . ."). PILF cannot avoid dismissal by contradicting its own Complaint. *See, e.g., Comm. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

PILF argues that the DPPA could not have been intended to limit public disclosure of driver's license records for the purpose of verifying voter eligibility because the NVRA was enacted after the DPPA. (Opp'n Br. at 20.) This argument mixes apples and oranges. The NVRA permits public inspection of a

13

discrete category of records relating to regular programs to remove the names of persons who have died or moved away and the DPPA protects driver's license records from disclosure for uses other than those specifically authorized. The driver's license records that PILF is seeking do not fall within the scope of the NVRA and are plainly protected from disclosure by the DPPA. There is no inconsistency in the application of the statutes. Likewise, contrary to PILF's argument, (Opp'n Br. at 20-21), there is no conflict between the NVRA or DPPA and Pennsylvania state law which similarly prohibits disclosure of information relating to a person's driving record. 75 Pa. C.S.A. § 6114(a); *see also Advancement Project v. Pa. Dep't of Transp.*, 60 A.3d 891, 895 (Pa. Cmwlth. 2013). PILF's effort to imagine a conflict is wholly without merit.[9]

In a last ditch effort to avoid dismissal, PILF invokes policy and argues that dismissal of its Complaint "would fundamentally reorder the political landscape of the Commonwealth and deny voter information to legislators and other entities

---

[9] Again, the cases cited by PILF are not in any way analogous. In *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013), the issue was whether a state law requiring voters to present documentary evidence of citizenship was preempted by the Elections Clause in the U.S. Constitution and the NVRA which requires a particular voter registration form without separate proof of citizenship. In this case, there is no conflict between the NVRA which does not address driver license records and Pennsylvania state law which protects driver's license information. The issue in *Ex Parte Siebold*, 100 U.S. 371 (1879), was whether state officials could be prosecuted in federal court for violating federal laws that incorporate state election regulations. No such dual prosecution is presented here.

who have relied on it for decades or more." (Opp'n Br. at 21.) PILF offers no explanation for its apocalyptic prediction which is in any event ineffective to overcome the plain language in the DPPA and 75 Pa. C.S.A. § 6114(a).

In sum, PILF is barred by both federal and state law from accessing driver's license records and therefore fails to state a claim on which relief can be granted.

### III.   PILF Lacks Standing To Sue.

As detailed on pages 14-16 of Defendants' Supporting Brief, PILF is not a "person aggrieved" under the NVRA and is not authorized to bring suit under the statute. PILF's Complaint should be dismissed for failure to state a claim.

### IV.   The Bureau of Commissions, Elections and Legislation Is Not a Proper Party.

PILF does not dispute that the Bureau of Commissions, Elections and Legislation is a government subdivision without any separate legal existence, but nonetheless maintains that the Bureau should remain a party because it possesses "at least some of the requested records." (Opp'n Br. at 22.) No well-pled factual allegations in the Complaint support this assertion. Nor would it matter. The Bureau is not a separate entity with a separate legal existence and therefore is not a proper party. The Bureau should be dismissed as a party.

## CONCLUSION

For the reasons set forth above and in the Commonwealth's opening brief,

PILF fails as a matter of law to state any claim under the NVRA upon which relief

can be granted. The Complaint should therefore be dismissed.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Counsel for Defendants,
Kathy Boockvar, Jonathan M. Marks
and Bureau of Commissions,
Elections and Legislation

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: June 19, 2019

## CERTIFICATE OF COMPLIANCE
## <u>WITH LOCAL RULE 7.8(b)(3)</u>

I, Donna A. Walsh, hereby certify that the foregoing Reply Memorandum in

Further Support of Motion To Dismiss is in compliance with Local Rule 7.8(b)(3).

The brief contains 4029 words as computed by Microsoft Office Word.

<u>/s/ Donna A. Walsh</u>

Date:  June 19, 2019

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Reply Memorandum in Further Support of Motion To Dismiss was served upon the following counsel of record via the Court's ECF system on this 19th day of June, 2019:

> J. Christian Adams, Esquire
> Noah H. Johnson, Esquire
> Public Interest Legal Foundation
> 32E Washington Street
> Suite 1675
> Indianapolis, IN  46204
>
> Linda A. Kerns, Esquire
> Law Offices of Linda A. Kerns, LLC
> 1420Locust Street, Suite 200
> Philadelphia, PA  19102

> /s/ Donna A. Walsh
> Donna A. Walsh