## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE PUBLIC INTEREST LEGAL
FOUNDATION,

              Plaintiff,

    v.

KATHY BOOCKVAR, in her official
capacity as Acting Secretary of the
Commonwealth of Pennsylvania,
JONATHAN M. MARKS, in his official
capacity as Deputy Secretary for
Elections and Commissions, and the
BUREAU OF COMMISSIONS,
ELECTIONS AND LEGISLATION,

            Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**NO. 1:19-CV-00622**

**JUDGE CONNER**

**ELECTRONICALLY FILED**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
## <u>FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56</u>

Daniel T. Brier
Donna A. Walsh
Suzanne P. Scanlon
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Counsel for Defendants,
Acting Secretary Veronica
Degraffenreid and Deputy Secretary
for Elections and Commissions
Jonathan M. Marks

## **TABLE OF CONTENTS**

INTRODUTION................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 2

ARGUMENT ................................................................................. 9

    A.    Documents relating to the "matching analysis" are not subject to
        disclosure under the NVRA ................................................. 11

    B.    Documents received from counties relating to requests for
        cancellation due to non-citizenship have been produced ................... 15

    C.    The Department of State has no responsive communications with
        jury selection officials ........................................................ 16

    D.    The Department of State has no responsive communications with
        law enforcement officials ..................................................... 17

    E.    There is no genuine issue for trial........................................... 18

    F.    Deputy Secretary Marks is not a proper defendant ......................... 18

CONCLUSION ............................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ..................................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 9

*In re Continental Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002) ................................. 8

*League of United Latin Am. Citizens v. Public Interest Legal Found.*,
    No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018).................... 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...... 10

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)....................... 14

*Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010) . 14

*Public Interest Legal Found. v. Boockvar*, 370 F. Supp. 3d 449 (M.D. Pa.
    2019)............................................................................................................ 6

*Public Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553 (M.D. Pa.
    2019)........................................................................................................ 8, 11

*Public Interest Legal Found., Inc. v. Bell*, No. 19-CV-248, 2019 WL
    5290920 (E.D.N.C. Oct. 17, 2019)................................................................ 13, 14

*Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660 (3d Cir. 2016) ........................... 10

## STATUTES

18 U.S.C. § 2721 .................................................................................................. 8

18 U.S.C. § 2721(a)............................................................................................. 11

18 U.S.C. § 2725(3)............................................................................................. 11

52 U.S.C. § 10307 ............................................................................................... 14

52 U.S.C. § 20507(i)(1)................................................................................... 10, 17

52 U.S.C. § 20510(b)(1) ................................................................................................. 18

25 P.S. § 2621 .................................................................................................................. 18

25 Pa. C.S.A. § 1203(a) ............................................................................................. 6, 15

25 Pa. C.S.A. § 1203(h) ................................................................................................... 6

25 Pa. C.S.A. § 1203(i) .................................................................................................... 6

25 Pa. C.S.A. § 1901 ........................................................................................................ 6

25 Pa. C.S.A. § 1901(a) ................................................................................................. 16

42 Pa. C.S.A. § 5928 ................................................................................................. 3, 12

Fed. R. Civ. P. 26(b)(3)(A) ....................................................................................... 3, 12

Fed. R. Civ. P. 26(b)(4)(D) ....................................................................................... 3, 12

Fed. R. Civ. P. 56(a) ...................................................................................................... 10

Fed. R. Civ. P. 25(d) ........................................................................................................ 1

Pa. R. Civ. P. 4003.3 ................................................................................................. 3, 12

## **INTRODUCTION**

Plaintiff Public Interest Legal Foundation ("PILF") seeks to access four categories of documents concerning a Motor Voter system error pursuant to the public disclosure provision in the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i). By Memorandum and Order dated December 13, 2019 (ECF 23), the Court ruled that the first category of records sought by PILF—records relating to analysis of persons identified as having registered to vote through the Motor Voter process but who may not satisfy the citizenship requirement—are not subject to public inspection to the extent those records derive from driver license records which are protected by federal law. With regard to the other records sought by PILF, the Pennsylvania Department of State has either produced responsive records or confirmed that no responsive records exist. As a result, there is no genuine issue for trial and Defendants Acting Secretary of the Commonwealth Veronica Degraffenreid[1] and Deputy Secretary Jonathan M. Marks are entitled to summary judgment in their favor.

---

[1] The Complaint in this matter names Kathy Boockvar as a defendant in her (then) official capacity as Acting Secretary of the Commonwealth of Pennsylvania (she was later named Secretary of the Commonwealth). Compl. (ECF No. 1) ¶ 6. Secretary Boockvar resigned from office on February 5, 2021. Acting Secretary Veronica Degraffenreid was appointed on February 8, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Degraffenreid is "automatically substituted as a party."

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The request for records at issue in this case stems from the 2017 discovery that a software error at the Pennsylvania Department of Transportation ("PennDOT") may have allowed non-citizens to inadvertently register to vote when applying for or renewing a driver license. Marks Decl. ¶ 7.[2] By the end of 2017, the Department of State and PennDOT completed improvements to the Motor Voter interface to prevent non-citizens from being offered voter registration screens. *Id.* ¶ 8.

The Department of State also commenced an investigation to better understand the scope of the issue. The Department of State collaborated with PennDOT to compare records in the voter registration database—the Statewide Uniform Registry of Electors ("SURE")—with the PennDOT driver license database to identify driver license record containing a visitor, immigration or naturalization status—so-called "INS indicators."[3] Marks Decl. ¶ 12. Importantly, the mere presence of an INS indicator does not signify that a driver is a non-citizen. In fact, an INS indicator can also signify that a driver is a naturalized

---

[2]   The Declaration of Deputy Secretary Jonathan M. Marks is attached hereto as Exhibit "A."

[3]   PILF concedes that an INS indicator in a driver record does not mean that the driver is not a U.S. citizen. *See* Adams Dep Tr. (attached as Exhibit "B") at 112-13 ("[Y]ou could have a naturalized citizen with an INS indicator.").

citizen and therefore eligible to vote. Further, INS indicators are point-in-time data that can and do change over time (*e.g.*, a visa holder may become a U.S. citizen and therefore eligible to vote). Accordingly, the initial high-level comparison of the SURE database and driver license records did not identify non-citizen registrants but rather identified a much larger group of registrants that included citizens who may have been non-citizens at some prior point in time. *Id.* ¶¶ 13-14.

Anticipating litigation arising from the Motor Voter software error, in late 2017, then-Acting Secretary of the Commonwealth Robert Torres engaged the Office of Chief Counsel for legal advice concerning potential registration and voting by non-citizens, including analysis of data derived from the PennDOT driver license database. Torres Aff. ¶ 6[4]; *see also* Marks Decl. ¶¶ 15-16. The attorney-client and work product privileges protect communications between Department of State officials and counsel and between counsel and any expert retained by counsel. *See* Fed. R. Civ. P. 26(b)(3)(A); Fed. R. Civ. P. 26(b)(4)(D); 42 Pa. C.S.A. § 5928; Pa. R. Civ. P. 4003.3.

Following media reports concerning the software error, PILF sent a letter to Deputy Secretary Marks on or around October 23, 2017 requesting access to

---

[4] The Affidavit of then Acting Secretary Robert Torres is attached hereto as Exhibit "C."

documents relating to the Motor Voter issue pursuant to the NVRA. The records

PILF sought are:

1. Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security and the Pennsylvania Department of Transportation since January 1, 2006. This request extends to all documents that provide the name of the registrant, the voting history of such registrant, the nature and content of any notice sent to the registrant, including the date of the notice, the response (if any) of the registrant, and actions taken regarding the registrant's registration (if any) and the date of the action. . . . This request includes all voter records that were referenced in recent news media reports regarding individuals improperly exposed to registration prompts due to a "glitch" in PennDOT's Motor Voter compliance system. At least one news report claims that "a Pennsylvania Department of State review is underway." I seek all voter records contained in this review.

2. All documents and records of communication received or maintained by your office from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility. Please include any official records indicating maintenance actions undertaken thereafter.

3. All documents and records of communication received or maintained by your office from jury selection officials—state and federal—since January 1, 2006 referencing individual who claimed to be non-U.S. citizens when attempting to avoid serving a duty

call.  The request seeks copies of the official referrals
and documents indicating where your office or local
registrars matched a claim of noncitizenship to an
existing registered voter and extends to the
communications and maintenance actions taken as a
result that were memorialized in any written form.

4. All communications regarding list maintenance
   activities relating to #1 through 3 above to appropriate
   local prosecutors, Pennsylvania Attorney General,
   Pennsylvania State Police, any other state law
   enforcement agencies, the United States Attorney's
   office, or the Federal Bureau of Investigation.

*See* Oct. 23, 2017 Letter at 1-2 (Compl., Ex. H).  PILF sent a follow up letter on

December 4, 2017 reiterating its request and clarifying that it was seeking "results

(full or interim) from an aforementioned official review of voter data compared

against PennDOT's database of customers to identify voters with matching driver

profiles containing noncitizen designations. . . ." *See* Dec. 4, 2017 Letter at 1

(Compl., Ex. I).

Shortly after PILF sent its first letter, on October 25, 2017, the Motor Voter

software error was the subject of a public hearing before the House State

Government Committee.  Deputy Secretary Marks provided written and oral

testimony at the legislative hearing concerning a preliminary review by the

Department of State which found 1,160 records indicating that persons apparently

canceled their voter registrations because they were not U.S. citizens.  Marks Decl.

¶¶ 9-10.  Deputy Secretary Marks cautioned that the data was preliminary and

needed to be further validated by county election officials to ensure accuracy. *Id.* ¶ 10. In Pennsylvania, voter registration is entrusted by statute to the counties and only counties are authorized to investigate a registrant's eligibility and cancel voter registrations. 25 Pa. C.S.A. § 1203(a), (h), (i); 25 Pa. C.S.A. § 1901.

While the Department of State's review of the Motor Voter issue was ongoing, Deputy Secretary Marks sent a letter to PILF on December 20, 2017 denying its request for inspection of records under the NVRA. The letter advised that the public disclosure provision in the NVRA authorized public access only to records relating to programs for removing voters who have died or changed residence and, even if the NVRA were interpreted as applying to removal programs aimed at non-citizens, the Commonwealth had no such program in place and therefore no records to produce. *See* Dec. 20, 2017 Letter at 1 (Compl., Ex. J).

PILF commenced an action in this Court on February 26, 2018 (docketed at No. 18-CV-463) seeking to compel disclosure of the records requested in the October 23 and December 4, 2017 letters. By Memorandum and Order dated February 26, 2019, the Court dismissed the complaint in No. 18-CV-463 because PILF failed to give then-Acting Secretary Torres the written notice required by the NVRA prior to commencing litigation under the statute. *Public Interest Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457-58 (M.D. Pa. 2019).

Preparatory to bringing a second action, PILF re-issued the October 23 and December 4, 2017 letters to then-Secretary Boockvar and Deputy Secretary Marks on March 20, 2019.  Compl., Ex. N.  By letter dated April 9, 2019, Deputy Secretary Marks responded by reiterating the Department of State's view that the NVRA does not require programs to remove non-citizens and also advising that the Commonwealth has no such program and therefore no documents to produce.  *See* Apr. 9, 2019 Letter (Compl., Ex. Q).

PILF commenced the present action against former Secretary Boockvar and Deputy Secretary Marks on April 10, 2019, reasserting the same claim for relief under the public disclosure provision in the NVRA and seeking, in addition to the records itemized in the October 23, 2017 and December 4, 2017 requests, records relating to letters the Department of State sent to certain registrants in 2018 advising them of the Motor Voter software error.  Compl. ¶¶ 103-07.

The Secretary and Deputy Secretary filed a motion to dismiss PILF's second Complaint on May 8, 2019 and argued that the public disclosure provision applies only to documents relating to programs required by the NVRA and therefore only to programs for removing the names of registrants who have died or moved away. The Secretary and Deputy Secretary also argued that the records sought by PILF— the results of any comparison of the driver license database with the SURE database—are protected from disclosure by the Driver's Privacy Protection Act

7

("DPPA"), 18 U.S.C. § 2721. The Court disagreed with the former argument and agreed with the latter.

Specifically, the Court found that the disclosure provision in the NVRA is not limited to records relating to registrant death or change in residence, but also applies to systems designed to identify registrants who are ineligible to vote due to noncitizenship status. *Public Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561 (M.D. Pa. 2019). As a result, the Court ruled that PILF is entitled to inspect "documents obtained from non-DMV sources regarding potential noncitizen registrants, records of noncitizens requesting removal or cancellation from the voter roll, communications with jury selection officials, and communications with prosecutors." *Id.* at 562.

The Court also ruled that "glitch-related records and derivative lists created during the Commonwealth's investigation are protected by the DPPA to the extent they include personal information obtained by the DMV in connection with a motor vehicle record." *Id.* at 563. "[A] compilation of driver's license numbers— with or without INS indicators—is protected from redisclosure under the DPPA unless subject to an exception," and no exception is applicable here. *Id.* at 563-64. This decision constitutes the law of the case. *See In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002) ("The doctrine of the law of the case . . . limits relitigation of an issue once it has been decided.").

The Department of State has since provided PILF with copies of responsive documents that do not implicate protected driver license records, including the form letters sent to registrants asking them to confirm their eligibility or cancel their registrations, communications with county officials concerning the letters and summary data showing the breakdown of responses received. *See* Summary Chart attached as Exhibit "D." The Department of State has also provided PILF with copies of records forwarded by counties relating to requests received by the counties for cancelation of voter registration due to non-citizenship. *Id.* Further, the Department of State has confirmed that it conducts no regular programs or activities involving communications with jury officials or prosecutors concerning non-citizens registering to vote and has no documents to produce in response to these requests. *Id.* Fact discovery concluded on February 17, 2021. No party produced any expert reports.

## ARGUMENT

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The rule mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court is to view

the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party cannot avoid summary judgment by resorting to speculation or conjecture. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). The non-movant must point to evidence that is sufficient to sustain a judgment in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Otherwise, "[t]he court shall grant summary judgment." Fed. R. Civ. P. 56(a).

PILF has not met and cannot meet its burden. The documents it seeks are not subject to inspection under the NVRA[5] or have already been produced and, as a result, there is no genuine issue for trial.

---

[5] The public disclosure provision in the NVRA provides:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1).

## A.   Documents relating to the "matching analysis" are not subject to disclosure under the NVRA.

The first category of records sought by PILF are "[d]ocuments regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security and the Pennsylvania Department of Transportation since January 1, 2006." Compl. ¶ 69 & Ex. H. PILF later clarified that it is seeking "results (full or interim) from an . . . official 'review' of voter data compared against PennDOT's database of customers to identify voters with matching driver profiles containing noncitizen designations." Compl. ¶ 82 & Ex. I. The requested comparison of voter data and driver license records—referred to by PILF as "the Noncitizen Matching Analysis," Compl. ¶¶ 65-67, 96—necessarily involves driver license data protected by the DPPA. The DPPA prevents state representatives from disclosing "personal information . . . obtained by the department in connection with a motor vehicle record. . . ." 18 U.S.C. § 2721(a); *see also* 18 U.S.C. § 2725(3) (defining "personal information" for purposes of DPPA as information that identifies an individual . . ."). This Court has already ruled that "[t]he glitch-related information requested by PILF contains analysis matching noncitizen's driver's license numbers to the driver's license numbers of registered voters" and "is protected from redisclosure under the DPPA . . . ." 431 F. Supp. 3d

563.  Accordingly, pursuant to this Court's ruling, the results of the so-called

matching analysis and data derived therefrom are protected from disclosure under

the DPPA and are not subject to public inspection under the NVRA.[6]

To the extent the Department of State possesses documents relating to its

analysis of the Motor Voter issue that do not include or are not derived from

protected driver license records, those documents have been provided to PILF.

The Department of State has produced copies of form letters sent to registrants

informing them of the Motor Voter software issue and asking them to confirm their

eligibility to vote or request cancellation of their registration, communications with

county election officials and others concerning the letters, public statements

outlining the steps taken to investigate and address the Motor Voter issue and

numerical data showing the number of letters sent and responses received.  *See*

---

[6]  The Court's previous disposition of this issue in deciding the motion to dismiss makes a detailed discussion of the attorney-client privilege and work product doctrine unnecessary, but it is important to reiterate that the documents sought in the first category are also protected from disclosure by the attorney-client privilege and the attorney work product doctrine.  *See* Marks Decl. ¶¶ 15-17.  As Deputy Secretary Marks explained, the analysis that PILF seeks was performed by a consulting expert retained by counsel for the Department of State in anticipation of litigation relating to the software glitch.  The analysis has never been shared or publicly disclosed.  *Id.* ¶ 17.  As a result, communications involving counsel and the retained expert and documents relating to the analysis are protected by the attorney-client privilege and work product doctrine.  *See* 42 Pa. C.S.A. § 5928; Fed. R. Civ. P. 26(b)(3)(A); Fed. R. Civ. P. 26(b)(4)(D); Pa. R. Civ. P. 4003.3.

Marks Decl. ¶ 29.  Given the protection in the DPPA and this Court's earlier ruling, nothing more is required to be disclosed under the NVRA.

Even if the DPPA did not apply, PILF would have no right under the NVRA to access personal information concerning individuals who received letters from the Department of State relating to the Motor Voter issue.  In a similar action brought by PILF against North Carolina election officials, the U.S. District Court for the Eastern District of North Carolina ruled that information concerning registrants "identified as *potential* noncitizens . . . is uniquely sensitive and vulnerable to abuse" and therefore not required to be publicly disclosed under the NVRA.  *Public Interest Legal Found., Inc. v. Bell*, No. 19-CV-248, 2019 WL 5290920, at *3 (E.D.N.C. Oct. 17, 2019), *appeal filed*, No. 19-2265 (4th Cir. Nov. 13, 2019).  In that case, PILF sought access to information concerning persons identified by North Carolina officials as potentially not satisfying the citizenship requirements for registration during a post-election audit that included review of North Carolina driver license records.  *Id.* at **1, 4.  The district court ruled that the NVRA does not require public disclosure of "documents concerning . . . registrants who were identified as *potentially* not satisfying the citizenship requirement for registration" because any such identification "raises the specter of immigration violations and criminal activity" and "is plainly the type of information that is both sensitive and vulnerable to abuse." *Id.* at *4.

13

The reasoning in *PILF v. Bell* applies equally here.  The persons who received letters from the Department of State have not been confirmed to be non-citizens.  Disclosure of their personal information would unnecessarily expose them to the suggestion of immigration violations and criminal activity and the corresponding risk of harassment, embarrassment and reputational harm.  Due to the potential for abuse, such sensitive information is not subject to public disclosure under the NVRA.  *See Bell*, 2019 WL 5290920, at \*4; *see also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016) (requiring redaction of last four digits of telephone numbers and SSNs, birth dates and parts of email addresses); *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 712 (E.D. Va. 2010) (requiring redaction of social security numbers).[7]

---

[7]   The concern about potential misuse is not hypothetical.  PILF has been accused of violating the Voting Rights Act, 52 U.S.C. § 10307, by publishing reports falsely branding Virginia registrants as being ineligible to vote and as having committed felonies by registering to vote and voting.  The U.S. District Court for the Eastern District of Virginia denied PILF's motion to dismiss plaintiffs' claims, explaining that the plaintiffs plausibly alleged that PILF's "reports put them in fear of harassment and interference with their right to vote." *See League of United Latin Am. Citizens v. Public Interest Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at \*4 (E.D. Va. Aug. 13, 2018) (decision denying PILF motion to dismiss).  PILF settled the action by, *inter alia*, promising not to include personal information in future reports on alleged noncitizen registration in Virginia.  Sam Levin, "Voter Fraud Activist Will Apologize to Citizens He Accused of Being Illegal Voters," https://www.huffpost.com/entry/j-christian-adams-pilf-settlement_n_5d309002e4b0419fd3298ee6, July 18, 2019 (last visited May 3, 2021).

In summary, PILF is not entitled to results of any comparison of driver license records and other state databases or data resulting from any such comparison, and PILF has already received copies of communications with registrants and county election officials and information concerning the steps taken to address the Motor Voter issue. There is no genuine issue for trial with respect to the first category of records sought by PILF.

**B.      Documents received from counties relating to requests for cancellation due to non-citizenship have been produced.**

Second, PILF sought "[a]ll documents and records of communications received or maintained by your office from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility" and "any official records indicating maintenance actions undertaken thereafter." Compl. ¶ 70 & Ex. H. The Department does not process requests for cancellation of voter registrations—only counties are authorized to cancel voter registrations, 25 Pa. C.S.A. § 1203(a). In late 2017, however, the Department specifically requested that counties send copies of records in the counties' possession relating to communications they received from persons who self-identified as non-citizens and asked to be removed from the voter rolls. Marks Decl. ¶¶ 11, 33. Those documents (which were received after PILF's initial NVRA request) were provided to PILF during the discovery process, *id.* ¶¶ 11, 33,

15

and PILF also apparently received copies of those same records directly from the

counties, *see* Compl. ¶ 34 (describing records obtained from county election

officials).  No formal list maintenance was conducted.  The registrants had already

asked the counties to cancel their registrations, Marks Decl. ¶ 11, and list

maintenance programs in Pennsylvania are limited by statute to programs aimed at

removing the names of registrants who have died or relocated, 25 Pa. C.S.A. §

1901(a).[8]  Accordingly, there are no additional records to produce in response to

the second category in PILF's NVRA letter.

C.     **The Department of State has no responsive communications with jury selection officials.**

The third category of records sought by PILF are "documents and records of

communication received or maintained by your office from jury selection

officials—state and federal—since January 1, 2006 referencing individuals who

claimed to be non-U.S. citizens when attempting to avoid serving a duty call,"

including "official referrals" and maintenance actions taken as a result.  Compl. ¶

70 & Ex. H.  While the Department of State occasionally receives letters from jury

selection officials identifying persons who asked to be excused from jury service

---

[8]   The Pennsylvania Voter Registration Act provides that "[a]n elector's registration shall not be canceled except" at the request of the elector, upon the death of the elector, upon confirmation that the elector has moved or pursuant to a voter removal program designed to identify registered electors whose address may have changed.  25 Pa. C.S.A. § 1901(a).

due to non-citizenship and forwards those letters to county election officials for handling, such letters are infrequent and irregular and are not transmitted pursuant to any established program, Marks Decl. ¶¶ 37-38, and therefore are not within the scope of the NVRA public disclosure provision.  Nonetheless, the Department of State conducted a reasonable search but did not locate any such letters received in the two-year period prior to PILF's NVRA request[9] or since the request was received.  Marks Decl. ¶ 40.  There are no documents to produce in response to the third category in PILF's NVRA request.

### D.     The Department of State has no responsive communications with law enforcement officials.

PILF's final request for records relates to "[a]ll communications regarding list maintenance activities relating to [its other requests] [sent] to appropriate local prosecutors, Pennsylvania Attorney General, Pennsylvania State Police, any other state law enforcement agencies, the United States Attorney's office, or the Federal Bureau of Investigation."  Compl. ¶ 70 & Ex. H.  The Department of State no has no such records.  Marks Decl. ¶¶ 42-43.  As noted in the response to PILF's NVRA requests, the Commonwealth does not have an established list maintenance program for removing non-citizens.  *Id.* ¶ 44.  Nor did the Department of State

---

[9]  The NVRA requires states to maintain records for a two-year period.  52 U.S.C. § 20507(i)(1).  PILF's request for documents dating back to January 1, 2006 exceeds what the NVRA requires.

communicate with federal or state law enforcement agencies concerning persons who may have inadvertently registered to vote as a result of the PennDOT software error. *Id.* ¶ 42. Accordingly, even if the records requested potentially fell within the scope of the NVRA, there are no records to produce in response to the fourth category.

### E.     There is no genuine issue for trial.

The Department of State has either produced records that are properly responsive to PILF's NVRA requests or confirmed that no responsive documents exist. There is no genuine issue for trial and summary judgment should be entered in favor of Acting Secretary Degraffenreid and Deputy Secretary Marks.

### F.     Deputy Secretary Marks is not a proper defendant.

The public disclosure provision places the burden on "[e]ach State" to maintain certain records and make them available for inspection, 52 U.S.C. § 20507(i)(1), and requires written notice to "the chief election official of the State involved," 52 U.S.C. § 20510(b)(1). The responsibility to ensure disclosure of required records thus falls on the State itself and the Secretary of the Commonwealth as its chief election official. *See* 25 P.S. § 2621. Accordingly, Deputy Secretary Marks is not a proper defendant.

18

## CONCLUSION

For the reasons above, there is no genuine issue for trial and Acting Secretary Degraffenreid and Deputy Secretary Marks are entitled to judgment in their favor as a matter of law.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh
Suzanne P. Scanlon

Counsel for Defendants,
Acting Secretary of the Commonwealth
Veronica Degraffenreid and Deputy
Secretary for Elections and Commission
Jonathan M. Marks

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated:  May 3, 2021

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)</u>

I, Donna A. Walsh, hereby certify that the foregoing Memorandum in

Support of Motion for Summary Judgment is in compliance with Local Rule

7.8(b)(3).  The brief contains 4402 words as computed by Microsoft Office Word.


<u>/s/ Donna A. Walsh</u>
Donna A. Walsh


Date:  May 3, 2021

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was served upon the following counsel of record via the Court's ECF system on this 3rd day of May 2021:

> Kaylan Phillips, Esquire
> Noel H. Johnson, Esquire
> Public Interest Legal Foundation
> 32E Washington Street, Suite 1675
> Indianapolis, IN 46204
>
> Linda A. Kerns, Esquire
> Law Offices of Linda A. Kerns, LLC
> 1420 Locust Street, Suite 200
> Philadelphia, PA 19102

> /s/ Donna A. Walsh
> Donna A. Walsh