**United States District Court**
**Middle District of Pennsylvania**
**Harrisburg Division**

| | |
|---|---|
| The PUBLIC INTEREST LEGAL FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION,<br><br>*Defendants*. | No. 1:19-cv-00622-CCC |

## Plaintiff Public Interest Legal Foundation's Statement of Material Facts

Pursuant to Local Rule 56.1, Plaintiff Public Interest Legal Foundation ("Foundation") submits that there is no genuine, material issue to be tried for each of the following facts:

### The NVRA's Public Disclosure Provision

1.     The National Voter Registration Act of 1993 ("NVRA") provides,

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a

voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

2.     Defendant Secretary of State Boockvar ("Secretary") is required to comply with the NVRA's Public Disclosure Provision. Deposition Transcript of Jonathan M. Marks at 36:3-37:19, 38:10-23 (attached as Exhibit A).

***The Foundation***

3.     The Foundation is a non-partisan, public interest organization headquartered in Indianapolis, Indiana. The Foundation promotes the integrity of elections nationwide as part of its mission. The Foundation does this, in part, by using state and federal open records laws (*e.g.*, the Public Disclosure Provision) to study and analyze the voter list maintenance activities of state of local governments. Where necessary, the Foundation also takes legal action to compel compliance with state and federal voter list maintenance laws. The Foundation has dedicated significant time and resources to ensure that voter rolls in the Commonwealth of Pennsylvania, and other jurisdictions throughout the United States, are free from ineligible registrants, including deceased individuals, foreign nationals, individuals who are no longer residents, and individuals who are simultaneously registered in more than one jurisdiction. The Foundation has filed multiple lawsuits in the Commonwealth of Pennsylvania in furtherance of its election integrity goals. *See*, *e.g.*, *Public Interest Legal Foundation v. Boockvar*,

Civ. No. 1:20-cv-1905 (M.D. Pa.) and *Public Interest Legal Foundation v. Voye*, Civ. No. 2:20-cv-00279 (W.D. Pa.). Affidavit of Logan Churchwell ("Churchwell Aff.") ¶ 3.

4.     Defendant Secretary of State for the Commonwealth of Pennsylvania (the "Secretary") is the Commonwealth's Chief Election Official and the head of the Pennsylvania Department of State (the "Department"). *See* 71 Pa. Stat. Ann. § 271. The Department, under the Secretary's supervision, is charged with the administration of Pennsylvania's elections, *e.g.*, 71 Pa. Stat. Ann. § 273; 25 Pa. Stat. Ann. § 2621, and voter registration and list maintenance, 25 Pa.C.S. § 1108; 25 Pa.C.S. § 1201, including the NVRA, *e.g.*, Exhibit A at 36:3-37:19, 38:10-23.

5.     Defendant Jonathan Marks is the Deputy Secretary for Elections and Commissions at the Pennsylvania Department of State. Exhibit A at 18:16-18. Defendant Marks oversees the day-to-day operations of the Bureau of Elections and Notaries, the Bureau of Elections, Security and Technology, and the Bureau of Campaign Finance and Civic Engagement. *Id.* at 20:10-17. Under his supervision, the Bureau of Elections, Security and Technology administers the day-to-day operations of the Statewide Uniform Registry of Electors ("SURE") system and provides support to county officials related to the SURE system. *Id.* at 21:10-22:1. Commissioner Marks also assists with public records requests related to the SURE system. *Id.* at 22:2-11.

*A So-called "Glitch" Allows Noncitizen to Register to Vote*

6.    In 2017 or earlier,[1] the Department learned that non-United States citizens had registered to vote at Pennsylvania Department of Motor Vehicle ("PennDOT") offices for the last several decades (hereafter, the "PennDOT glitch" or "glitch"). Exhibit A at 112:24-116:1; Written Testimony of Jonathan Marks (attached as Exhibit B) (*see also* Exhibit A at 112:24-113:12); Written Testimony of Robert Torres (attached as Exhibit C); Statement – Voter Registration & Election Integrity (attached as Exhibit D) (*see also* Exhibit A at 188:2-19); Motor Voter, Unlawful Voting and Cyber Security: Joint Hearing before the Senate State Government Committee and the Senate Transportation Committee, Dec. 12, 2017, Testimony of Acting Secretary Torres at 30:15-30:38, video available at http://stategovernment.pasenategop.com/121217/; Presentation on Noncitizens Registered to Vote in Pennsylvania (attached as Exhibit E) at PILF-01077 ("Well, it's true that this has actually been an issue since the beginning of Motor Voter going back 20 years across multiple administrations."); Exhibit D at 1 (explaining that "the Department of State became aware in 2017 that a decades-old issue with

_____

[1] Documents and testimony elicited in discovery show that the Department was likely aware of this problem as early as 2015. *See* Exhibit A at 115:14-116:7. The exact date the Department became aware is not a material fact for purposes of the Foundation's motion for summary judgment.

the PennDOT motor-voter system had allowed ineligible individuals to inadvertently register to vote").

7.      The Department has acknowledged the PennDOT glitch publicly and privately on numerous occasions, including in testimony before Pennsylvania's General Assembly. *See, e.g.*, Defendant Kathy Boockvar's Response to Plaintiff's Request for Admission No. 8 (attached as Exhibit F); Defendants' Production D02296-2299 at D02296 (attached as Exhibit G) (explaining, "For decades, a small number of legal Pennsylvania residents have registered to vote and then later cancelled their voter registrations because they were not citizens of the United States"); Exhibit B; Exhibit C; *see also Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561 (M.D. Pa. 2019) ("The Commonwealth has admitted as much in public comments regarding the ongoing investigations and has described at length the rigorous and targeted analysis of voter-registration data and driver's license data that produced the requested records.").

*Pre-litigation Correspondence and NVRA Violation Notice*

8.      On or around October 23, 2017, the Foundation sent to Defendant Marks and Defendant Marks received the letter filed in this case as Docket Entry 1-9 (hereafter, the "Request Letter"). Churchwell Aff. ¶ 5; Exhibit A at 25:12-15.

9.     Pursuant to NVRA's Public Disclosure Provision, the Foundation's

Request Letter sought to inspect or receive the following four (4) categories of

records, as outlined in its request:

(1) Documents regarding all registrants who were identified as potentially
not satisfying the citizenship requirements for registration from any
official information source, including information obtained from the
various agencies within the U.S. Department of Homeland Security and
the Pennsylvania Department of Transportation since January 1, 2006.
This request extends to all documents that provide the name of the
registrant, the voting history of such registrant, the nature and content of
any notice sent to the registrant, including the date of the notice, the
response (if any) of the registrant, and actions taken regarding the
registrant's registration (if any) and the date of the action. This request
extends to electronic records capable of compilation.

   a.  This request includes all voter records that were referenced in recent
news media reports regarding individuals improperly exposed to
registration prompts due to a "glitch" in PennDOT's Motor Voter
compliance system. At least one news report claims that "a
Pennsylvania Department of State review is underway."[2] [The
Foundation] seek[s] all voter records contained in this review.

(2) All documents and records of communication received or maintained by
your office from registered voters, legal counsel, claimed relatives, or
other agents since January 1, 2006 requesting a removal or cancellation
from the voter roll for any reason related to non-U.S.
citizenship/ineligibility. Please include any official records indicating
maintenance actions undertaken thereafter.

(3) All documents and records of communication received or maintained by
your office from jury selection officials—state and federal--since January
1, 2006 referencing individuals who claimed to be non-U.S. citizens
when attempting to avoid serving a duty call. This request seeks copies of

---

[2] The Philadelphia Inquirer; Glitch let ineligible immigrants vote in Philly
elections, officials say (September 20, 2017),
http://www.philly.com/philly/news/politics/city/philly-voter-fraud-trump-
immigrants-registration-commissioners-penndot-20170920.html.

the official referrals and documents indicating where your office or local registrars matched a claim of noncitizenship to an existing registered voter and extends to the communications and maintenance actions taken as a result that were memorialized in any written form.

(4) All communications regarding list maintenance activities relating to #1 through 3 above to appropriate local prosecutors, Pennsylvania Attorney General, Pennsylvania State Police, any other state law enforcement agencies, the United States Attorney's office, or the Federal Bureau of Investigation.

Doc. 1-9 at 1-2.

10.     The Department did not produce any of the Requested Records in response to the Request Letter. Exhibit A at 25:23-25.

11.     On October 25, 2017, the Foundation's representative visited the Department's Bureau of Commissions, Elections and Legislation to inspect the Requested Records. Churchwell Aff. ¶ 8.

12.     The Department did not permit inspection of the Requested Records during the Foundation's October 25, 2017 visit. Churchwell Aff. ¶ 10.

13.     On or around December 4, 2017, the Foundation sent to Defendant Marks and Ms. Fuhrman and Defendant Marks and Ms. Fuhrman received the letter filed in this case as Docket Entry 1-10 (hereafter, the "Follow-up Letter"). Churchwell Aff. ¶ 11; Exhibit A at 29:1-30:5.

14.     The Foundation's Follow-up Letter provided,

In the interest of efficient and thorough disclosure, I offer the following guidelines for the documents I hope are furnished for inspection or, in the alternative, are replicated.

- With regard to Request 1(a), documents sought would most recently include results (full or interim) from an aforementioned official "review" of voter data compared against PennDOT's database of customers to identify voters with matching driver profiles containing noncitizen designations. Given the public assertions that such actions were underway according to news media reports and testimony before the Pennsylvania House State Government Committee on October 25, PILF reasonably expects that some amount of records would be available for inspection as of this writing. This request seeks access to any combination of: metadata summaries of the "review's" findings; detailed listings of flagged voters for citizenship eligibility defects; records indicating maintenance actions undertaken as a result of the "review"; detailed voter profiles for each flagged voter within SURE; comprehensive voting histories with political party registration/affiliation for the same; and communications/written guidelines for methodology of said "review".

- Request 2 seeks all available documents per each former voter that self-reported their citizenship ineligibility by any method of notification. My offer stands to furnish examples of similar records obtained via NVRA request from another state. The same examples can be provided for Request 3.

- Request 4 seeks all non-exempt records of communication with law enforcement related to Requests 1 – 3.

Doc. 1-10 at 1-2.

15.     On December 6, 2017, a Foundation representative again visited the office of the Pennsylvania Department of State's Bureau of Commissions, Elections and Legislation to inspect the Requested Records. Churchwell Aff. ¶ 12.

16.     The Department of State did not permit inspection of the Requested Records during the Foundation's December 6, 2017 visit. Churchwell Aff. ¶ 13.

17.	On or around December 20, 2017, the Department denied the Foundation's Records Request in a letter to the Foundation. Churchwell Aff. ¶ 14; Doc. 1-11.

18.	On or around March 20, 2019, the Foundation served Defendant Boockvar, Pennsylvania's Chief Election Official, with written notice of the NVRA violations alleged in this action (hereafter, the "NVRA Notice Letter"). Churchwell Aff. ¶ 16. *See* Docs. 1-15 – 1-16.

19.	On March 20, 2019, Mr. Gates acknowledged receipt of the NVRA Notice Letter on the Defendants' behalf and confirmed that he provided the NVRA Notice Letter to Defendants Boockvar and Marks. Mr. Gates stated the following in his email: "Thank you for sending the attached notice of violations of the NVRA to my attention today. I have this day, March 20, 2019 provided the attached notice to my clients Kathryn Boockvar and Jonathan Marks." Churchwell Aff. ¶ 17; Doc. 1-17; Exhibit F at RFA No. 7 ("It is admitted only that Secretary Boockvar received the letter dated March 1, 2019").

20.	The Foundation has complied with the NVRA's pre-litigation notice requirements, 52 U.S.C. § 20510(b). *See Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d at 557 ("PILF commenced this action after satisfying the NVRA's notice requirements.")

21.     On or around April 9, 2019, in a letter to the Foundation, the
Department of State reaffirmed its denial of the Foundation's Records Request.
Churchwell Aff. ¶ 18; Doc. 1-18.

22.     The Secretary did not cure her violation of the NVRA in the time
afforded by the NVRA. Churchwell Aff. ¶ 21.

***The Statewide Uniform Registry of Electors (SURE) System***

23.     The SURE system is a "single, uniform integrated computer system"
that "[c]ontain[s] a database of all registered electors in this Commonwealth." 25
Pa.C.S. § 1222(c), (c)(1); *see also* Exhibit A at 48:15-17 (explaining that "the
Statewide Uniform Registry Of Electors is essentially each county's official voter
registry"). *See also* Exhibit A at 52:12-53:1.

24.     The SURE system is used to conduct maintenance of the
Commonwealth's voter registration records, *see* 25 Pa.C.S. § 1222(c)(4), (7), (9),
(11)-(12); Exhibit A at 52:12-53:1, 55:21-56:1, including adding new voter
registration records, *id.* at 58:13-16, canceling voter registration records, *id.* at
58:17-19, and updating voter registration records, *id.* at 62:20-63:4 ("Each, each,
each voter record has a, a log that shows changes that are made to the voter's
record over time.").

25.     The Department of State has "instant access to a commission's
registration records maintained on the [SURE] system." 25 Pa.C.S. § 1222(c)(5);

*see also* Exhibit A at 55:10-14, 49:11-16 ("The data that's contained in the SURE system, the Department can access that, that data."); *see also id*. at 67:24-25.

26.     The SURE system contains voting history. Exhibit A at 62:17-19.

27.     The SURE system records the fact that a voter registration record was canceled and the reason the record was canceled. Exhibit A at 63:17-21, 64:20-23.

28.     A voter registration record will be cancelled in the SURE system if election officials determine that the registrant was not a United States citizen. Exhibit A at 64:13-65:6.

29.     Each registration record in the SURE system contains a field named "Status Reason." Exhibit A at 66:23-67:25 (explaining that Docket Entry 1-6 includes is a "screen shot" of a voter record from the SURE system).

30.     The "Status Reason" field identifies and reflects the status of the voter registration record, including whether a record was cancelled and the reason the record was cancelled. Exhibit A at 69:14-70:4.

31.     When a voter registration record is cancelled because the registrant is not a United States citizen, election officials enter "Cancel – Not a Citizen" in the record's "Status Reason." Exhibit A at 69:14-70:8; *see also id*. at 70:22-25.

32.     Each voter registration record in the SURE system contains "tabs" or pages, showing and/or containing, *inter alia*, the registrant's voting history, Exhibit A at 103:9-104:9, 105:25-106:1, data and information about correspondence sent

to the registrant and received from the registrant, *id*. at 106:25-107:22, a log of changes made to the record over time, *id*. at 109:3-17, documents uploaded to the SURE system that are relevant to the registrant, *id*. at 109:18-110:8, and information or notations about applications submitted by the registrant, including the initial application and a change application, *id*. at 110:9-111:6.

33.     A portion of Philadelphia's voter registration records in the SURE system "contain an uploaded image that can be used to verify the non-citizen cancellation code." Exhibit G at D02296.

34.     The SURE system can generate "dozens of reports." Exhibit A at 72:1-3.

35.     The SURE system contains a function called "reports menu." Exhibit A at 74:11-75:9.

36.     The SURE system can generate a report called "Voter Listing with Status," which shows all voter registration records that were cancelled, over a specified period of time, for a particular reason, including the reason "Cancel – Not a Citizen." Exhibit A at 73:20-74:17, 75:19-76:16, 78:6-79:5; PILF 897 (attached as Exhibit H).

37.     The SURE system can generate a report called "Voter Listing with Date," which shows all voter registration records that were cancelled, over a specific period of time, for the reason "Cancel – Not a Citizen" along with the date

that voting history was last recorded for each registrant. Exhibit A at 79:13-19, 82:9-25.

38.     The SURE system can generate a report called "Canceled Records by Types," which shows the number of voter registration records that were cancelled, over a specific period of time, for the reason "Cancel – Not a Citizen." Exhibit A at 89:3-91:6, 93:13-94:11.

39.     The Department of State can use the SURE system to generate reports for each Commonwealth county showing all voter registration records cancelled for the reason "Cancel – Not a Citizen." Exhibit A at 96:3-25.

***List Maintenance Activities Concerning Potential Noncitizens***

Pre-"glitch" List Maintenance Records

40.     The Foundation has received voter list maintenance records concerning non-United States citizens from officials in the Commonwealth of Pennsylvania. *See* Churchwell Aff. ¶¶ 4.

41.     From Philadelphia County, Pennsylvania, the Foundation received "Voting Listing with Dates" reports generated by the SURE system showing voter registration records cancelled for the reason "Cancel – Not a Citizen" for the years 2013, 2014, and 2015, and showing the "Last Voted" date for each cancelled registrant included on the reports. *See* Exhibit A at 79:13-84:14 (testimony discussing reports).

42.     Records received from Allegheny County included a "Voter Listing with Status" Report showing voter registration records cancelled for the reason "Cancel – Not a Citizen" between 2006 and September 21, 2017.  Doc. 1-2 through 1-8; Exhibit H; *see also* Exhibit A at 73:17-79:2 (testimony discussing report); *see also id*. at 78:25-79:2 ("I would agree that, yes, this is a list of voters whose registration records were canceled for the reason "not a citizen."").

43.     The Department can access voter records in the SURE system, like the image on page 6 of Docket Entry 1-6. Exhibit A at 66:23-67:25.

44.     The Department can use the SURE system to generate the reports produced to the Foundation by Philadelphia and Allegheny Counties. Exhibit A at 92:3-9.

45.     The Department can generate a report today that shows statistical data—including the number of voter registration records cancelled for the reason "Cancel – Not a Citizen." Exhibit A at 90:14-91:1; *see also* 96:3-25 (explaining that the Department of State could run similar reports for all 67 Commonwealth counties).

46.     The Department periodically receives letters and reports from federal district courts showing registered voters who recused themselves from jury duty because they are not United States citizens. Exhibit A at 229:3-231:4. The Department of State maintains copies of these letters and reports. Exhibit A at

231:18-23. The Department of State forwards these letters and reports to county election officials and "ha[s] a record of those communications." *Id*.

The Al Schmidt Analysis

47.    In July and September 2017, Department officials met with Philadelphia City Commissioner Al Schmidt to discuss the issue of noncitizens registering to vote at DMV branch offices. *See* Exhibit A at 158:2-162:7; *see also* Exhibit G at D02298-99 (bullet points for July 18, 2017, September 7, 2017, September 15, 2017, and September 20, 2017)).

48.    Commissioner Schmidt shared his research concerning noncitizen registration with the Department, Exhibit A at 156:9-17, 162:8-21; Email from Seth Bluestein to Jonathan Marks (attached as Exhibit I) (noting an attachment entitled "Non-Citizens Data Sheet").

49.    Around September 2017, the Department, in collaboration with the Pennsylvania Department of Transportation, compared voter registration records with motor vehicle records to determine "the number of records that may have matched between the voter registration, the SURE database and PennDOT's motor vehicle records that had an INS indicator on the motor vehicle record." Exhibit A at 169:9-171:19, 172:4-173:8, 177:1-4 (quoted), *see also* 175:7-16, 176:2-11.

50.    The Department was "looking for … how many individuals, who may be the same person" in both databases. Exhibit A at 177:16-20.

51.     "[W]hen comparing the records in the two databases, …
approximately 100,000 records appear[ed] to be a match." Exhibit A at 174:4-8,
*see also id*. at 176:24-177:4, 177:5-13. *See also*, 174:2-8.

52.     The number of matches was "communicated to the Department of
State," specifically, Mike Moser. Exhibit A at 185:2-8.

53.     Mr. Moser provided the number of matches to then-Secretary of State
Cortes and Defendant Marks. Exhibit A at 185:9-12.

54.     Defendant Marks and then-Secretary Cortes provided the number of
matches to Commissioner Schmidt at a subsequent meeting. Exhibit A at 185:13-
19.

The Initial Statewide Analysis

55.     In September 2017, the Department conducted a statewide analysis of
1,160 voter registration records in the SURE system that were canceled for the
reason "Cancel – Not a Citizen (hereafter, the "Initial Statewide Analysis").
Exhibit A at 116:8-17, 117:16-18 ("Our analysis, however, looked at the entire
universe of voter records that were canceled for that reason."), 118:11-17 (1,160
records analyzed), 119:4-25, 125:17-20, 123:3-4 ("it's 1,160 records that were
canceled for the reason 'not a citizen'").

56.     On October 25, 2017, Defendant Marks appeared before the
Pennsylvania House State Government Committee and provided written testimony

concerning the Initial Statewide Analysis. Exhibit B; Exhibit A at 112:24-113:12 (discussing and authenticating written testimony).

57.     Defendant Marks' written testimony provides a "summary" of the Initial Analysis, Exhibit A at 118:16-20; Exhibit B at D01180-81.

58.     The Initial Statewide Analysis included only voter registration records belonging to registrants who "self-reported and cancelled their registration because they were not citizens." Exhibit B at PILF-01180; Exhibit A at 121:14-22 (discussing and authenticating written testimony).

59.     The Department identified the 1,160 records included in the Initial Statewide Analysis through a "query of the database" of the SURE system. Exhibit A at 123:22-124:11; *see also* D02201-20 (attached as Exhibit J) (report of data query).

60.     The database query included voting history for each voter registration record. Exhibit A at 124:23-125:1; *see also* Exhibit B.

61.     Of the 1,160 records analyzed, 248 had recorded on their vote history at least one vote. Exhibit A at 125:2-16; *see also* Exhibit B.

The Noncitizen Matching Analysis

62.     Following the Initial Statewide Analysis, the Department "engaged with an expert to do an analysis of voter registration records and motor vehicle records to determine the, the universe of potential individuals that required more --

17

had more scrutiny in terms of their, their qualifications specifically related to citizenship" Exhibit A at 140:21-141:11.

63.    The Department explained and summarized the analysis in a July 2018 statement prepared by its Communications office entitled "Voter Registration & Election Integrity" (hereafter, the "Expert Analysis Statement"). Exhibit A at 187:25-188:19 (identifying and authenticating Expert Analysis Statement); Exhibit D (copy of Expert Analysis Statement).

64.    The Expert Analysis Statement provides,

The Department also undertook the following steps to investigate and address the concern that some ineligible individuals registered to vote:

- The Department retained an expert to conduct a full analysis of registration data by comparing the voter rolls with other available state databases. The initial analysis yielded a responsible list of individuals for whom voter registration status required further confirmation.

- Prior to the May 2018 primary, the department mailed letters to 7,702 of those registrants whose registration status was active. Because the data analysis was ongoing, the immediate goal was to remind the individuals of voter eligibility requirements before the primary.

- Based on further expert analysis, the Department mailed letters to 11,198 registrants on June 12, including those with active and inactive status, asking the recipients to affirm their eligibility to vote or to submit a request to cancel their registration.

- After the responsive affirmations and requests for cancellation were taken into account, on June 29 another round of letters with a similar message was mailed to those who had not responded.

- A robocall reiterating the need to respond to the mailing was made to registrants for whom there was a telephone number in their voter registration record.

- Additional affirmations and requests to cancel were processed.

- On July 26, the Department sent the appropriate counties the information on the individuals whose letters were returned as undeliverable and the individuals who did not respond to our repeated communication efforts. County election offices have been advised to handle the registrants according to their normal processes employed to verify addresses and confirm eligibility.

Exhibit D at D000215.

65.     "[V]oter registration records from the SURE system were one element of data that fed the analysis." Exhibit A at 149:2-4.

66.     The 7,702 registrants who received the letter referenced in bullet point 2 of paragraph 64 "required additional scrutiny regarding their qualifications" to register to vote. Exhibit A at 144:23-145:10.

67.     The 7,702 registrants who received the letter referenced in bullet point 2 of paragraph 64 were separate from the 1,160 voter registration records analyzed in the Initial Statewide Analysis. Exhibit A at 145:11-17.

68.     The 11,198 registrants referenced in bullet point 3 of paragraph 64 received the letter (hereafter, the "Affirm or Cancel Letter") D00190-98 (attached as Exhibit K). *See* Exhibit A at 210:17-211:2.

69.     The Department of State kept a list of responses to the Affirm or Cancel Letter. Exhibit A at 211:3-9.

70.     Of the recipients of the Affirm or Cancel Letter, 1,915 mailed back the Letter to the Department of State with an affirmative response indicating they

were citizens and qualified to be registered. Exhibit A at 212:16-213:1; *see* Exhibit D at D000217; Exhibit K at D000190-91 (citizenship affirmation letter).

71.     The Department of State is currently retaining the affirmative response letters received from those 1,915 recipients. Exhibit A at 213:15-214:6, 214:24-215:2.

72.     Of the recipients of the Affirm or Cancel letter, 215 mailed back to county offices requesting cancellation of their voter registration record. Exhibit A at 215:14-216:22; *see* Exhibit D at D000217; Exhibit K at D000195 (cancellation request letter).

73.     Of the recipients of the Affirm or Cancel letter, 8,698 either did not respond or had undeliverable addresses. Exhibit A at 217:18-218:6; *see* Exhibit D at D000217.

74.     The Department of State provided information on those 8,698 recipients to county offices with instructions to "handle the registrants according to their normal processes employed to verify addresses and confirm eligibility." Exhibit D at D000215; *see also* Exhibit A at 218:7-19.

Dated: May 3, 2021.

Respectfully submitted,

For the Plaintiff Public Interest Legal Foundation:

Linda A. Kerns, Esquire
LAW OFFICES OF LINDA A. KERNS, LLC
1420 Locust Street – Suite 200
Philadelphia, PA 19102
PA Atty ID 84495
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

  /s/ Kaylan L. Phillips
Noel H. Johnson (Wis. Bar # 1068004)*
Kaylan L. Phillips (In. Bar #30405-84)*
Attorneys for Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
*Admitted Pro Hac Vice

**Certificate of Service**

I hereby certify that on May 3, 2021, I electronically filed the foregoing using the Court's ECF system, which will serve notice on all parties.

/s/ Kaylan L. Phillips
Kaylan L. Phillips
kphillips@publicinterestlegal.org
*Counsel for Plaintiff*