**United States District Court**
**Middle District of Pennsylvania**
**Harrisburg Division**

| | |
|---|---|
| The **PUBLIC INTEREST LEGAL FOUNDATION,** | |
| *Plaintiff,* | |
| *v.* | |
| **KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION,** | No. 1:19-cv-00622-CCC |
| *Defendants.* | |

**Plaintiff Public Interest Legal Foundation's Brief in Opposition to
<u>Defendants' Motion for Summary Judgment</u>**

# **Table of Contents**

Table of Authorities ........................................................................ ii

Summary of the Argument............................................................ 1

Argument........................................................................................ 2

    I.    The Department is Not Entitled to Summary Judgment ................ 2

    A. Defendants Misconstrued the Foundation's Requests .............. 2

    B. Defendants' Assertions of Privilege Are Invalid
       and Unsupported......................................................................... 5

    C. Defendants' Application of the DPPA Exemption
       is Overbroad and Unsupported................................................ 12

    D. Vague and Unsupported "Voter Privacy" Concerns
       Do Not Override the NVRA..................................................... 15

    E. Genuine Factual Disputes Exist Concerning the
       Adequacy of Defendants' Search............................................ 17

       i.   Defendants' Affidavit Lacks Sufficient Detail
          Concerning the Search ....................................................... 17

       ii.  The Time Period of Defendants' Search
          was Inappropriately Truncated........................................... 18

    F. A Permanent Injunction is Warranted..................................... 19

    G. Defendant Marks Is a Proper Party ......................................... 22

Conclusion .................................................................................... 23

Certificate of Compliance ............................................................ 24

Certificate of Service ................................................................... 25

# Table of Authorities

*Cases*

*Bellitto v. Snipes*,
   No. 16-cv-61474 (S.D. Fla. Mar. 30, 2018)............................................ 20

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)..................................................................... 19

*Fisher v. United States*,
   425 U.S. 391 (1976)...................................................................... 6

*Fox v. Lackawanna Cty.*,
   No. 3:16-CV-1511 (M.D. Pa. Aug. 27, 2018) ......................................8-9

*Gillard v. AIG Ins. Co.*,
   15 A.3d 44 (Pa. 2011) .................................................................... 6

*Heinzl v. Cracker Barrel Old Country Store, Inc.*,
   No. 2:14-cv-1455 (W.D. Pa. Oct. 29, 2015)..................................8, 9-11

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
   213 F.3d 124 (3d Cir. 2000)............................................................ 12

*Ill. Conservative Union v. Illinois*,
   No. 20 C 5542 (N.D. Ill. June 1, 2021).................................................. 5

*Judicial Watch, Inc. v. Lamone*,
   399 F. Supp. 3d 425 (D. Md. 2019)...................................................... 5

*Maldonado v. Ramirez*,
   757 F.2d 48 (3d Cir. 1985).......................................................14-15, 17

*Martin v. Bally's Park Place Hotel & Casino*,
   983 F.2d 1252 (3d Cir.1993)..........................................................8-9

*Pennsylvania v. Navient Corp*,
   967 F.3d 273 (3d Cir. 2020)............................................................. 3

*Project Vote, Inc. v. Kemp*,
   208 F. Supp. 3d 1320 (N.D. Ga. 2016)........................................13, 20-22

*Project Vote/Voting for Am., Inc. v. Long*,
   813 F. Supp. 2d 738 (E.D. Va. 2011) ............................................. 13, 21

*Pub. Interest Legal Found. v. Boockvar*,
   431 F. Supp. 3d 553 (M.D. Pa. 2019)..............................................12-13

*Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*,
No. 19-2265 (4th Cir. May 10, 2021) ...................................................15-17

*Trammel v. United States*,
445 U.S. 40 (1980)..................................................................................6-7

*True the Vote v. Hosemann*,
43 F. Supp. 3d 693 (S.D. Miss. 2014) .................................................. 13

*United States v. Beneficial Corp.*,
492 F. Supp. 682 (D.N.J. 1980) ............................................................... 3

*United States v. Ernstoff*,
183 F.R.D. 148 (D.N.J. 1998).......................................................8-9, 11

*United States v. Liebman*,
742 F.2d 807 (3d Cir. 1984)...................................................................... 6

*United States v. Nixon*,
418 U.S. 683 (1974) ................................................................................. 6

*United States v. Rockwell Int'l*,
897 F.2d 1255 (3d Cir. 1990).......................................................... 6, 8, 11

*Wachtel v. Health Net, Inc.*,
482 F.2d 225 (3d Cir. 2007)..................................................................6-7

*Westinghouse Elec. Corp. v. Republic of Phil.*,
951 F.2d 1414 (3d Cir. 1991).................................................................6-7

## Statutes and Rules

18 U.S.C. § 2721(a) ..................................................................................... 12

18 U.S.C. § 2725(3) ..................................................................................... 13

25 Pa.C.S. § 1222(c)(5)................................................................................. 3

Fed. R. Civ. P. 56(a)................................................................................... 12

FED. R. EVID. 501 .......................................................................................... 6

Plaintiff Public Interest Legal Foundation ("Foundation") hereby opposes Defendants' Motion for Summary Judgment (Doc. 62).

## Summary of the Argument

Since 2015, the Foundation has investigated the extent of foreign participation in Pennsylvania's elections. (*See* Doc. 1 at ¶¶ 27-32.) Defendants continuously stonewall these efforts by refusing to permit access to public list maintenance records. Now, after two years of resource-consuming litigation under the National Voter Registration Act of 1993 ("NVRA"), Defendants claim they provided all non-exempt records and ask for judgment as a matter of law. Defendants' Motion must fail because they have not demonstrated that there are no genuine issues of material fact regarding their search for and production of responsive documents.

Defendants' position rests on a single conclusory affidavit that is devoid of essential details. Even worse, Defendants have rewritten the Foundation's requests in order to limit production to preferred time-periods and documents. Defendants shielded additional documents through an overbroad application of questionable exemptions, heavy redactions, and sweeping, unsupported privileges. In short, Defendants fail to demonstrate that they have searched for and disclosed what the NVRA requires. Defendants' Motion should be denied.

1

## Argument

**I.     Defendants Are Not Entitled to Summary Judgment.**

**A. Defendants Misconstrued the Foundation's Requests.**

Defendants' Motion should fail solely because Defendants did not search for the records requested. Defendants' statement of facts shows that they confined the Foundation's first and second requests to records "relating to comparison of the SURE database with the PennDOT driver license database"— the so-called "glitch" investigation, (Doc. 63 ¶¶ 2, 7-8)—and records related to the earlier Initial Statewide Analysis, (*see* Doc. 64-1 ¶ 33; Doc. 66 ¶¶ 55-61). Fatal to Defendants' Motion, the Foundation's request also included much more.

For example, the first request sought "[d]ocuments regarding **all registrants** who were identified as potentially not satisfying the citizenship requirements for registration **from any official information source** … since January 1, 2006." (Doc. 1-9 ¶ 1 (emphasis added).) Paragraph 1(a) of the first request provides that "[t]his request **includes** all voter records that were referenced in recent news media reports regarding individuals improperly exposed to registration prompts due to a 'glitch' in PennDOT's Motor Voter compliance system." (Doc. 1-9 ¶ 1(a) (emphasis added).) Furthermore, the Foundation's correspondence specifies that documents sought in "Request **1(a)**"—as opposed to the entirety of Request 1— "**include** results (full or interim) from an aforementioned official 'review' of voter

2

data compared against PennDOT's database of customers…." (Doc. 1-10 bullet point one (emphasis added).) "[T]he word 'including' clearly connotes enlargement…." *United States v. Beneficial Corp.*, 492 F. Supp. 682, 684 (D.N.J. 1980); *see also Pennsylvania v. Navient Corp*, 967 F.3d 273, 285 (3d Cir. 2020).

Defendants' single relevant affidavit[1]—the Marks Affidavit—does not demonstrate that Defendants searched for the requested records. In fact, it omits any search for these records. Summary judgment is not available if Defendants did not even look for the requested records.

Defendants' treatment of the Foundation's second request was also deficient. Defendants artificially limited the search and production to records provided to Defendants by county officials in late 2017 in connection with the Initial Statewide Analysis. (*See* Doc. 64-1 ¶ 33; Doc. 66 ¶¶ 55-61.) By law, Defendants have "instant access to a commission's registration records maintained on the [SURE] system." 25 Pa.C.S. § 1222(c)(5). Yet Defendants did not at any time conduct its own search for responsive records maintained in the Systematic Uniform Registry of Electors ("SURE") system or any other source.

It is also unclear whether all counties with records provided them to Defendants. Defendants state that they "received records from Allegheny,

---

[1] Former Secretary Torres' affidavit was filed in a 2017 action under Pennsylvania's Right-to-Know Law. (Doc. 64-3.)

3

Dauphin, and Philadelphia counties." (Doc. 64-1 at 9.) This stands in stark contrast to Defendants' testimony to lawmakers in 2017, which claimed the 1,160 records reviewed in the Initial Statewide Analysis "were from 46 counties." (Doc. 66-2 at 1.) Defendants never established that the universe of records received from county officials in 2017 satisfies the Foundation's request. The Foundation asked to inspect "[d]ocuments regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration…." (Doc. 1-9 ¶ 1.) Defendants, in contrast, asked the counties for something more limited—records "to verify the reason or reasons a voter record was cancelled" under the status of "CANCEL – NOT A CITIZEN." Exhibit A at 2. Therefore, the Foundation may not have received certain records. Defendants' confinement of the requests and failure to search the SURE system renders the search and production inadequate.

The list of 1,160 persons who requested removal from the voter rolls due to noncitizenship (Doc. 66-10) is deficient because Defendants applied redactions beyond what this Court (and the NVRA) authorize and to an extent that the document cannot effectively be used to assess the list maintenance decisions it reflects. Defendants also did not establish that it provided registrant-specific records for each person on the list, including voting histories.

Defendants' response to the Foundation's third request is deficient because Defendants limited their search to between October 2015 and March 2019. (Doc.

64-1 ¶ 40.) The records sought date to 2006. (Doc. 1-9 ¶ 3.) Defendants' limited search is based on the untenable position that the NVRA does not require production of records more than two years old. (*See* Doc. 64 at 17 n.9.) "[I]f a state chooses to retain a record beyond two years, the NVRA requires the state to produce that record." *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 441 (D. Md. 2019); *see also Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543, at *20 n.3 (N.D. Ill. June 1, 2021). Because Defendants maintain records responsive to request three (Doc. 66 ¶ 46; Doc. 64-1 ¶ 37), they must produce them.

There are plainly genuine disputes concerning Defendants' search for and production of records.

### B. Defendants' Assertions of Privilege Are Invalid and Unsupported.

Because they are records relating to list maintenance, communications concerning the Noncitizen Matching Analysis must be disclosed to the Foundation under the NVRA. Defendants claim a blanket privilege over these records. Yet Defendants never factually establish the validity of any privilege and certainly never on a document-by-document basis (*see* Doc. 63 ¶ 5 (stating, in conclusory fashion, that all non-exempt documents were produced)). *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion").

Attorney-client privilege is "governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." FED. R. EVID. 501, *quoted in Wachtel v. Health Net, Inc.*, 482 F.2d 225, 230 (3d Cir. 2007). In this federal-question case, federal common law applies. *See United States v. Liebman*, 742 F.2d 807, 809 (3d Cir. 1984). While federal courts have flexibility on privilege rulings, *Trammel v. United States*, 445 U.S. 40, 47 (1980), "these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth," *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Attorney-client privilege applies when a client consults with an attorney for the purpose of obtaining legal advice. *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998); *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The Supreme Court stressed that limitation, stating that "since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Id.* "The privilege 'protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1423-24 (3d Cir. 1991) (quoting *Fisher*, 425 U.S. at 403)

6

(emphasis in *Westinghouse*). The Third Circuit's emphasis of "only" highlights the fatal flaw with Defendants' position.

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel*, 445 U.S. at 51. *All* of the situations in which the attorney-client privilege attaches "are consistent with the purpose of encouraging clients to speak fully with their lawyers without concern that what they say to the lawyer will be disclosed. Where this purpose ends, so too does the protection of the privilege." *Wachtel*, 482 F.2d at 231.

The Foundation does not seek records of Defendants disclosing opinions and advice from lawyers about legal rights or obligations. Instead, the Foundation seeks only list maintenance records, which have nothing to do with encouraging clients to confer with their attorneys, and accordingly are beyond the protection of the attorney-client privilege.

Because Defendants provided neither a privilege log nor a detailed affidavit addressing each withheld record, genuine issues of fact exist concerning the contents of the allegedly privileged records. For example, do withheld records concern the solicitation of legal advice or do they simply concern the methodology or results of list maintenance activities? Can any exempt information be redacted?

Neither the Foundation nor this Court can know because Defendants have not provided those details.

Defendants also blanket an entire category of list maintenance records as attorney work-product created "in anticipation of litigation relating to the software glitch." (Doc. 64 at 12 n.6.) The Third Circuit considers "the nature of the document[s] and the factual situation" to determine whether "the document[s] can fairly be said to have been prepared or obtained because of the prospect of litigation." *Rockwell Int'l*, 897 F.2d at 1266 (citations and quotations omitted). Fundamentally, "[t]he preparer's anticipation of litigation must be objectively reasonable." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993). "This requires proof of 'an identifiable specific claim or impending litigation when the materials were prepared.'" *Fox v. Lackawanna Cty.*, No. 3:16-CV-1511, 2018 U.S. Dist. LEXIS 145073, at *8 (M.D. Pa. Aug. 27, 2018) (citations omitted). The "rule of thumb" is that "'if the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation.'" *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:14-cv-1455, 2015 U.S. Dist. LEXIS 146825, at *17 (W.D. Pa. Oct. 29, 2015) (citations omitted). In addition, "'the material must have been produced because of the prospect of litigation and for *no other purpose*.'" *United States v. Ernstoff*, 183

F.R.D. 148, 156 (D.N.J. 1998) (citations omitted). Business documents' mere "'potential use in pending litigation does not turn these documents into work product or confidential communications between client and attorney.'" *Id*. (citations omitted).

Defendants' claim of privilege fails. First, Defendants' proffered concern about "litigation from any number of sources" (Doc. 64-1 ¶ 17) does not establish "objectively reasonable" anticipation, *Martin*, 983 F.2d at 1260, nor "proof of an identifiable specific claim," *Fox*, 2018 U.S. Dist. LEXIS 145073, at *8 (quotations omitted). Defendants utterly fail to state the potential cause of action or litigation theory or demonstrate the analysis had "no other purpose" than litigation. *Ernstoff*, 183 F.R.D. at 156. What the facts show is that the subject records "would have been created regardless of whether litigation was expected to ensue." *Heinzl*, 2015 U.S. Dist. LEXIS 146825, at *17.

Defendants' investigation into noncitizen registration at PennDOT offices stretches back to at least September 2015, more than *two years* before the Foundation's request. *See* Exhibit F at 3 (September 2015 entry); (Doc. 66-1 at 115:2-7). Defendants conducted the first matching analysis using PennDOT records in the Summer of 2017, months before the Foundation's request. *See* Exhibit F at 3 (August 2017 entry); (Doc. 66 ¶¶ 47-52 (describing analysis)). More than one month before the Foundation's request, Defendants analyzed statewide

SURE system records "that were cancelled for the reason 'Not a Citizen.'" Exhibit F at 3 (September 2017 entry); (Doc. 64-1 ¶¶ 9-10; Doc. 66 ¶¶ 55-61). Why did that analysis happen? Not anticipated litigation. Rather, Defendants "wanted to understand both the scope of the issue and, and also the potential causes of it, so that any additional enhancements that [it] made would be effective." (Doc. 66-1 at 115:12-21.) The public has a right to reach their own understanding of the problem.

Shortly thereafter, Defendants undertook yet another analysis (Doc. 66 ¶¶ 62-74)—the allegedly privileged analysis. This analysis was also not caused by anticipated litigation. Rather, it was the next step and final stage of a multi-stage investigation into a decades-old failure in conducting ordinary list maintenance. That investigation and remedial effort began years before the Foundation was aware of the problem. The purpose of the analysis was stated clearly: "to investigate and address the concern that some ineligible individuals registered to vote[.]" (Doc. 66-4 at 1.) Defendants touted that the "goal in this process was to protect the integrity of elections in Pennsylvania." (*Id*.) Defendants even revealed that it "knew that it was imperative to address the problem" "*when [it] learned* that ineligible residents may have registered to vote…." (*Id*. (emphasis added).) Defendants knew of the problem as early as 2015. (Doc. 66-1 at 115:2-7.) It strains credulity to suggest that this latest analysis (and records of it)—had "no other

purpose" than litigation readiness. *Ernstoff*, 183 F.R.D. at 156. Defendants'

objections are simply a post-hoc rationalization aimed at concealing list

maintenance records.

The work-product privilege protects documents, not facts. *Heinzl*, 2015 U.S.

Dist. LEXIS 146825, at *13-14. It is circular and nonsensical for Defendants to

claim that responsive records were created because, and only because, Defendants

allegedly feared litigation aimed at obtaining those same records. There is zero

record evidence to support Defendants' belief that litigation seeking any other type

of relief was possible. The last thing a reasonable official would do if she feared

public-records litigation is create more public records—unless, of course, the

creation of those records had an entirely different purpose—such as remedying a

longstanding list maintenance issue—which is plainly the case with Defendants'

latest analysis. (Doc. 66-4.)

"[T]he factual situation in th[is] particular case" demonstrates that the

allegedly privileged analysis was conducted "in the ordinary course of business"

*Rockwell Int'l*, 897 F.2d at 1265-66, and would have proceeded as planned

"regardless" of whether the Foundation had asked to inspect records. *Heinzl*, 2015

U.S. Dist. LEXIS 146825, at *17. Because Defendants' filings lack sufficient

details, at minimum a genuine issue of fact exists concerning the purpose of the

Noncitizen Matching Analysis (Doc. 66 ¶¶ 61-74), and the contents of each related

11

record. The Foundation made every effort to probe the details of the analysis during discovery but was unable to gather those facts precisely because Defendants repeatedly refused to answer questions based on privilege.[2] (*See* Doc. 67 at 18-20.) Regardless, Defendants bear the burden of justifying asserted privileges, *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000), and removing all material doubt as to factual disputes, Fed. R. Civ. P. 56(a). Defendants have not carried those burdens.

### C. Defendants' Application of the DPPA Exemption is Overbroad and Unsupported.

This Court held that "'personal information ... obtained by [PennDOT] in connection with a motor vehicle record'" is exempted from the Public Disclosure Provision by the Driver's Privacy Protection Act ("DPPA"). *Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 562 (M.D. Pa. 2019) (quoting 18 U.S.C. § 2721(a)). Defendants' application of the DPPA exemption is overbroad in at least three ways.

First, Defendants treats any list maintenance record tangentially related to their review of the PennDOT database as exempt. The DPPA is not so broad. It shields only "personal information," which is limited to "information that identifies

---

[2] (*See, e.g.*, Doc. 66-1 at 141:14-17, 147:4-15, 147:16-148:3, 148:4-15, 148:16-149:1, 167:11-20, 186:22-25, 188:21-189:6, 189:7-13, 191:3-8, 191:12-17, 192:14-19, 193:10-14, 193:22-194:6, 195:6-7, 201:25-202:3, 202:12-17, 202:18-22, 203:12-20, 204:13-25, 205:4-10, 205:23-206:5, 206:11-17, 206:19-207:14, 207:15-19, 208:19-23, 220:4-11, 239:2-10, 239:18-240:2.)

an individual….” 18 U.S.C. § 2725(3)). If information is not “personal

information,” it is not exempt. That means, for example, communications and other

documents discussing glitch-related analysis, methodology, and results (*e.g.*, raw

totals) are not exempt. Yet Defendants continue to withhold these records.

Second, Defendants treat the presence of “personal information” as grounds

to withhold entire documents. The DPPA exemption applies only “*to the extent*

[records] include personal information obtained by the DMV in connection with a

motor vehicle record.” *Boockvar*, 431 F. Supp. 3d at 563 (emphasis added).

Redaction, not document-wide exemption, is thus commensurate with the scope of

this Court’s holding. Other courts have endorsed such a remedy. *Project*

*Vote/Voting for Am., Inc. v. Long*, 813 F. Supp. 2d 738, 743 (E.D. Va. 2011); *True*

*the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736-39 (S.D. Miss. 2014); *Project Vote,*

*Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016).

Third, Defendants treat personally identifying information in *non-DMV*

records as “personal information” under the DPPA, thereby inappropriately

sweeping in records whose source was something *other* than PennDOT—such as

the SURE system or the registrants themselves. (*See* Doc. 67 at 16-18 (describing

records whose source was the registrant).) Defendants have not produced a single

SURE system record belonging to any of the thousands of individuals who

received letters asking that they confirm or cancel their voter registration, (*see*

Doc. 64-1 at 19-20), even though those records were already in Defendants'
possession throughout the entire "glitch" analysis and well before any comparison
with PennDOT records. The DPPA exemption cannot swallow the whole of the
NVRA's Public Disclosure Provision and prohibit the most basic information
contained in list maintenance records from being disclosed.

Far worse for Defendants is the failure to adequately justify the DPPA
exemption on a document-by-document basis. *See Maldonado v. Ramirez*, 757
F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is essentially conclusory and lacking
in specific facts is inadequate to satisfy the movant's burden.") (citations and
quotations omitted). There are clear, genuine issues of material fact concerning the
contents of the withheld records—namely, do they contain "personal information"
as defined by the DPPA or not? If not, they are not exempt. Even if they do,
redaction is the remedy. However, neither the Foundation nor this Court can make
these important determinations because Defendants have failed to provide the
necessary justification.

Under any reasonable standard, the Marks Affidavit is inadequate to support
Defendants' Motion. Defendants do not discuss *any* specific withheld records.
Instead, Defendants rely entirely on the allegation that some activities "implicate
confidential driver license information." (Doc. 64-1 ¶ 27.) Irrespective of its truth,
this conclusory statement is inadequate to permit any meaningful review of the

withheld records. *See Maldonado*, 757 F.2d at 51. The Foundation and this Court are left to guess at the validity of the exemption with respect to specific records. One must even guess at the number of records being withheld. On such a bare record, summary judgment certainly is not available.

### D. Vague and Unsupported "Voter Privacy" Concerns Do Not Override the NVRA.

Defendants rely on a vacated decision from the Eastern District of North Carolina to support their expansive exemption of personally identifying information. (Doc. 64 at 13-14.) After the Motion was filed, the Fourth Circuit Court of Appeals vacated the district court's dismissal of the Foundation's complaint alleging violations of the Public Disclosure Provision. *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, No. 19-2265, 2021 U.S. App. LEXIS 13797 (4th Cir. May 10, 2021). While Defendants inflate privacy concerns and downplay the importance of transparency, the Fourth Circuit reaffirmed the "balance between transparency and voter privacy" struck by Congress in the NVRA. *Id.* at *18-19.

The Fourth Circuit also required factual review of each potentially exempt document. The Court instructed the district court to devise "a system of redaction" that would allow the court to "review the individual documents and redactions to ensure that specific redactions correspond with materials protected from disclosure." *Id.* at *23. If any redactions are endorsed here, they should similarly

15

be permitted only to the extent they do not cannibalize the NVRA's oversight function. *See id.*

The Fourth Circuit ultimately vacated the decision because it could not "discern on th[e] record whether the Foundation may be entitled to disclosure of some of the documents requested." *Id*. at *2. The same applies here. Defendants' conclusory affidavit lacks sufficient detail to determine both the validity of the claimed exemptions and the potential that truly exempt information can be simply redacted. Rather than justify its own actions, Defendants call into question the Foundation's character and intentions with the data sought, relying on accusations from the Foundation's ideological opponents. As an initial matter, impugning the character of a requestor of public records has no place or relevance in the law, and certainly not in this Court. Neither the government nor interest groups may decide who is eligible to inspect list maintenance records based on the requestor's perceived ideological viewpoint. That is unconstitutional. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Congress did not attach ideological tests to the NVRA's public inspection rights. Rather, the right to inspect list maintenance records belongs to all members of the public, regardless of political or ideological affiliation.

Second, Defendants inaccurately characterize the Foundation's history and omit the central fact that it was *state election officials* in the Commonwealth of

Virginia that removed registrants from the rolls and labeled them "Declared Non-Citizens." Had the Foundation not obtained and publicized Virginia's documents, nobody would have learned that the Commonwealth was removing citizens from the rolls as noncitizens.

Nevertheless, the Fourth Circuit addressed Defendants' concerns regarding the risk of disclosing information related to citizenship status. "This risk, however, does not render the requested documents affiliated with potential noncitizens immune from disclosure under the plain language of the NVRA. Instead … a district court can order redaction of 'uniquely sensitive information' in otherwise disclosable documents." *Pub. Interest Legal Found.*, U.S. App. LEXIS 13797, at *22.

### E. Genuine Factual Disputes Exist Concerning the Adequacy of Defendants' Search.

#### i. Defendants' Affidavit Lacks Sufficient Detail Concerning the Search.

An affidavit "lacking in specific facts is inadequate to satisfy the movant's burden" under Rule 56. *Maldonado*, 757 F.2d at 51. The Marks Affidavit contains no specific facts concerning the search. It omits all detail concerning scope, methods, search terms, custodians, and systems searched.[3] Instead, it focuses on

---

[3] The lone exception is perhaps paragraph 40, which explains that the search for Request No. 3 records was in appropriately limited temporally. (Doc. 64-1 ¶ 40.)

17

the number of documents produced. (Doc. 63 ¶¶ 4, 7-8.) Merely reciting the documents that were produced tells the Court nothing about whether the search was designed to uncover all responsive records. Defendants are not entitled to summary judgment on such minimal, immaterial, and conclusory facts.

### ii.  The Time Period of Defendants' Search was Inappropriately Truncated.

Defendants also inappropriately limited the time period of its search. The Foundation's request has a start date (January 1, 2006), but no end date. Congress requires election officials to permit inspection of "all" list maintenance records. 52 U.S.C. ¶ 20507(i). It is reasonable then to require Defendants to produce all records in its custody or control on the day the Department filed its motion, and, if the Foundation is successful, to supplement that production on the day this Court enters judgment.

The Marks Affidavit does not explain the time parameters of the search, which should be fatal to the Motion. Regardless, it was not until February 3, 2021 that the Foundation began receiving the vast majority of discovery records—nearly 2,000 of them. *See* Exhibits E and H; (Doc. 64-4). Yet neither the February 3 production nor a subsequent one included list maintenance records dated later than 2018. *See* Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Foundation SMF Response") ¶¶ 2, 4, 5-7. The Department also concedes

that it limited the search to activities occurring in 2018 or earlier. *Id*. That is not adequate. At minimum, there is a genuine dispute concerning the search.

### F.  A Permanent Injunction is Warranted.

The Court should enter summary judgment and a permanent prospective injunction with an affirmative duty to disclose records similar to those requested. Such an injunction is necessary under these circumstances to prevent impairment of the public's right to access list maintenance information in the future.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A permanent injunction is warranted where a plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Each of these elements is satisfied.

Defendants' steadfast refusal to comply with the NVRA caused the Foundation to suffer irreparable harm in at least two ways. First, the Foundation suffered an informational injury, including the loss of opportunity to obtain in a timely fashion information vital to the current and ongoing debate surrounding foreign participation in our elections. Second, the Foundation lost the opportunity

to take action to urge election officials to institute remedial measures before more elections could take place. *See Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12-13 (S.D. Fla. Mar. 30, 2018) (describing NVRA's oversight function). Monetary damages cannot redress these injuries. *Kemp*, 208 F. Supp. 3d at 1350 ("There is no monetary remedy that can correct the public's lack of access to information enabling it to ensure the integrity of Georgia's voter registration process.").

The danger of injury recurring is real. At all times—including now—Defendants maintained that the NVRA does not require disclosure of the requested records. (*See* Doc. 64-1 ¶¶ 25-26 (denying request prior to litigation)); Exhibit G at RFP No. 2 (refusing to produce responsive records in discovery); (Doc. 64-1 ¶ 44 (summary judgment affidavit stating, "The Commonwealth has no systematic program to identify and remove non-citizens from the voting rolls and therefore no list maintenance records to produce in response to PILF's requests.").) Consistent with this, Defendants have not produced a single document in response to the Foundation's NVRA request. What Defendants produced was disclosed in response to *discovery requests*, *see, e.g.*, Doc. 64-1 ¶¶ 11, 33-34, and only well after this Court denied Defendants' motion to dismiss. Furthermore, Defendants deliberately ignored or rewrote the Foundation's requests to favor its litigation position, *see* Foundation SMF Response ¶ 2 (describing the inappropriate

20

limitation on Foundation request), and in some instances confined production to two years, (*see* Doc. 64 at 17 n.9; Doc. 64-1 ¶ 40), contrary to the statute's plain language, *see supra* Section I.A. Defendants behavior underscores the need for prospective relief. No one should be forced to file a federal action—and then hope to reach the discovery stage—to possibly obtain some of the public record sought years after the request was made.

To the Foundation's knowledge, the only other court to address this issue found a prospective injunction appropriate due to the nature of elections. In *Project Vote/Voting for Am., Inc. v. Long*, the court concluded,

> Considering the ubiquity of voting in our representative democracy, there is a "real and immediate threat" that members of the public, like the plaintiff, may again be wrongfully denied the statutory right to inspect and photocopy completed voter registration records <u>with the voters' SSNs redacted.</u>

813 F. Supp. 2d 738, 744 (E.D. Va. 2011) (citations and quotations omitted). (emphasis in original). For the reasons described, the same real threat exists here.

"The balance of hardships does not weigh in favor of the defendants, as a permanent injunction will simply compel the defendants to comply with their responsibilities under the NVRA and, thus, will prevent them from denying the public of a statutory right." *Project Vote*, 813 F. Supp. 2d at 744; *see also Kemp*, 208 F. Supp. 3d at 1350 (considering preliminary injunction).

The public interest would also not be disserved by a permanent injunction. The *Kemp* court prudently recognized that "'[t]he public has an interest in seeing that the State of Georgia complies with federal law, especially in the important area of voter registration. Ordering the state to comply with a valid federal statute is most assuredly in the public interest.'" *Kemp*, 208 F. Supp. 3d at 1351 (citations and quotations omitted); *see also Project Vote*, 813 F. Supp. 2d at 745. The same is undoubtedly true in the Commonwealth as well.

A permanent prospective injunction will not just ensure future compliance with the NVRA, it will, more importantly, ensure *timely* compliance. Timely compliance will help eliminate the possibility that one or more federal elections will occur without the transparency Congress intended, as occurred here. Because all elements are satisfied, a permanent injunction should enter.

### G. Defendant Marks Is a Proper Party.

Defendants claim Defendant Marks is entitled to summary judgment, but also not a proper defendant. (Doc. 64 at 18.) Defendants rely on the NVRA's placement of obligations on "each State." (Doc. 64 at 18.) However, that the Secretary of the Commonwealth is a proper party here does not mean Defendant Marks is an improper party.

Defendant Marks oversees the Bureau of Election Security and Technology, which "is responsible for the day-to-day activities of voter registration and election

22

administration, including administration of the [SURE] database." (Doc. 64-1 ¶ 2.)

He is also responsible for requests for SURE system records. (Doc. 66-1 at 22:2-

11.) Defendant Marks is apparently the custodian of many requested documents

and enjoining him will redress the Foundation's injuries.

## **Conclusion**

For these reasons, the Defendants' Motion should be denied.

Dated: June 14, 2021.

Respectfully submitted,

For the Plaintiff Public Interest Legal Foundation:

<div style="margin-left:2em">

Linda A. Kerns, Esquire
LAW OFFICES OF LINDA A. KERNS, LLC
1420 Locust Street – Suite 200
Philadelphia, PA 19102
PA Atty ID 84495
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

  /s/ Kaylan L. Phillips
Noel H. Johnson (Wis. Bar # 1068004)*
Kaylan L. Phillips (In. Bar #30405-84)*
Attorneys for Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
*Admitted Pro Hac Vice

</div>

23

## Certificate of Compliance with Local Rule 7.8(B)(2)

I hereby certify that the foregoing memorandum complies with Local Rule 7.8(b)(2). The brief contains 5,000 words as computed by the word-count feature of Microsoft Office Word.

<div style="text-align: right;">

/s/ Kaylan L. Phillips
Kaylan L. Phillips
kphillips@publicinterestlegal.org
*Counsel for Plaintiff*

</div>

## **Certificate of Service**

I hereby certify that on June 14, 2021, I electronically filed the foregoing

using the Court's ECF system, which will serve notice on all parties.

/s/ Kaylan L. Phillips
Kaylan L. Phillips
kphillips@publicinterestlegal.org
*Counsel for Plaintiff*