IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:19-CV-00622 |
| | : | |
| KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION, | : | JUDGE CONNER |
| | : | |
| | : | ELECTRONICALLY FILED |
| Defendants. | : | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Defendants Acting Secretary of the Commonwealth Veronica Degraffenreid[1] and Deputy Secretary for Elections and Commissions Jonathan M. Marks, by and through their undersigned counsel, state the following as their response to Plaintiff

---

[1] The Complaint in this matter names Kathy Boockvar as a defendant in her (then) official capacity as Acting Secretary of the Commonwealth of Pennsylvania (she was later named Secretary of the Commonwealth). Compl. (ECF 1) ¶ 6. Secretary Boockvar resigned from office on February 5, 2021. Acting Secretary Veronica Degraffenreid was appointed on February 8, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Degraffenreid is "automatically substituted as a party."

Public Interest Legal Foundation's ("PILF") Statement of Undisputed Material Facts pursuant to Local Rule 56.1:

1. Although not a statement of material fact,[2] Defendants admit that Paragraph 1 quotes the public disclosure provision in the National Voter Registration Act, 52 U.S.C. § 20507(i)(1).

2. Although not a statement of material fact, Defendants admit that the NVRA imposes certain obligations on states with respect to public disclosure of information.

3. Defendants admit that PILF is a non-profit entity that has published material and initiated legal actions in furtherance of its goals which include removing persons from the registration rolls based on assumptions that persons whose driver license records include "INS indicators" are not eligible to vote. *See, e.g.*, Compl. ¶¶ 5, 63. In addition, PILF has been accused of violating federal law by publishing reports falsely accusing registrants in another state of being ineligible to vote and of voting illegally. *See League of United Latin Am. Citizens v. Public Interest Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *4

---

[2] While Defendants observe that certain assertions in PILF's submission are not statements of material fact or disagree with PILF's characterization of certain evidence, they are not aware of any genuine issues of material fact for trial and continue to maintain that they are entitled to summary judgment in their favor as a matter of law.

(E.D. Va. Aug. 13, 2018). Accordingly, PILF's interests are at odds with interests sought to be protected by the NVRA.

4. Although not a statement of material fact, Defendants admit that the NVRA requires states to designate a state officer or employee as the chief state election official for purposes of coordinating responsibilities under the NVRA. 52 U.S.C. § 20509. It is further admitted that the powers and duties of the Secretary of the Commonwealth are set forth in 25 P.S. § 2621 and that the powers and duties of the Department of State are referenced in 71 P.S. § 271. Further, the Department of State is charged with responsibility for administering voter registration, 25 Pa. C.S.A. § 1108, and its responsibilities are codified at 25 Pa. C.S.A. § 1201. List maintenance obligations are delegated to the counties and are codified by statute at 25 Pa. C.S.A. § 1901. Defendants dispute PILF's characterization of those legal obligations and defer instead to the statutes which outline those responsibilities and obligations.

5. Admitted, with the exception of the reference to assistance with public record requests. Deputy Secretary Marks testified that requests for information are handled by the Right-To-Know Officer or by the Department of State's counsel's office and that he is involved only to the extent that he may be asked to review a particular request. Marks Dep. Tr. at 22, ll.4-11.

6. It is admitted that the Department of State became aware that a software error in the Pennsylvania Department of Transportation ("PennDOT") Motor Voter registration system may have allowed non-citizens to inadvertently register to vote.

7. It is admitted that the Department of State has publicly acknowledged that a software error in the PennDOT registration system may have allowed non-citizens to inadvertently register to vote.

8. Admitted.

9. It is admitted that Paragraph 9 quotes the letter sent by PILF on October 23, 2017.

10. It is admitted that the Department of State did not produce records in response to PILF's October 23, 2017 letter and that the Department of State explained its position in a letter to PILF on December 20, 2017. Specifically, the Department of State advised that it understood the NVRA public disclosure provision as applicable only to the mandatory removal programs required by the statute and that the Commonwealth does not have a removal program regarding non-citizens and therefore there were no documents to disclose.

11. It is admitted that a representative of PILF appeared at the Department of State, but it is denied that PILF had a right under 52 U.S.C. § 20507(i)(1) to review all of the records requested for the reasons in Defendants' brief in support

of its motion for summary judgment and brief in opposition to PILF's motion for summary judgment.

12. It is admitted that PILF was not given records as later explained in the Department of State's December 20, 2017 letter.

13. Admitted.

14. It is admitted that Paragraph 14 quotes the letter sent by PILF on December 4, 2017.

15. It is admitted that a representative of PILF appeared at the Department of State, but it is denied that PILF had a right under 52 U.S.C. § 20507(i)(1) to review all of the records requested for the reasons in Defendants' brief in support of its motion for summary judgment and brief in opposition to PILF's motion for summary judgment.

16. It is admitted that PILF was not given records as later explained in the Department of State's December 20, 2017 letter.

17. It is admitted that Deputy Secretary Marks sent a letter to PILF on December 20, 2017 explaining the Department of State's view that the NVRA applies only to records relating to statutorily mandated removal programs and does not require disclosure of the records sought by PILF.

18. It is admitted that PILF sent a letter dated March 1, 2019 asserting its view that the Department of State was in violation of the public disclosure

provision in the NVRA. Defendants disagree with this legal conclusion and further state that no response to this legal conclusion is required under Local Rule 56.1.

19. Admitted.

20. Defendants deny the allegations in Paragraph 20 as legal conclusions to which no response is required under Local Rule 56.1

21. It is admitted that Deputy Secretary Marks sent a letter to PILF dated April 9, 2019 explaining the Department of State's view that the NVRA applies only to records relating to statutorily mandated removal programs and does not require disclosure of the records sought by PILF.

22. Defendants admit that no documents were provided to PILF prior to commencement of this action, but deny the allegation that the NVRA was violated and further state that this is a legal conclusion to which no response is required under Local Rule 56.1.

23. Admitted.

24. It is admitted that the Statewide Uniform Registry of Electors ("SURE") is mandated by 25 Pa. C.S. § 1222 and serves as the database of registered electors in the Commonwealth. The SURE system is used for the purposes referenced in Paragraph 24 (voter registration, voter cancellation and updating registration information) in accordance with the requirements in 25 Pa. C.S.A. § 1222(c).

25. Admitted.

26. It is admitted that the SURE system "[i]dentif[ies] registered electors who vote in an election and the method by which their ballots were cast" in accordance with 25 Pa. C.S.A. § 1222(c).

27. Admitted.

28. It is admitted that voter registrations have been designated as canceled in the SURE system and that a reason given for cancelation is "non-citizen."

29. It is admitted that the SURE system includes a field named "Status Reason" whose purpose is to identify the status of the record.

30. It is admitted that the SURE system includes a field named "Status Reason" whose purpose is to identify the status of the record.

31. It is admitted that the SURE system includes a field named "Status Reason" whose purpose is to identify the status of the record and that county election officials record cancellations as "Cancel-Not a Citizen" to signify that the cancellations were due to lack of United States citizenship. The procedures and processes utilized by county election officials to make these determinations in any specific case are not recorded in SURE or otherwise known to the Department of State.

32. It is admitted that the SURE system enables county election officials to record various information about registered electors, including the elections in

which the registrant voted, correspondence uploaded by county election officials and the dates on which registrants submitted applications. The SURE system also includes additional data and information concerning electors, including personal identifying information, political party, election district information and methods by which ballots were cast. *See generally* 25 Pa. C.S.A. § 1222(c).

33. It is admitted that, in the document attached to PILF's SOMF (ECF 66) as Exhibit G, it is noted that, of the 1,160 records of cancelations due to non-citizenship, 318 of those records were coded by election officials in Philadelphia County and that, of those 318 records, only a portion of them contain an image that may be used to verify the non-citizen cancellation code. The document goes on to say that the physical records themselves were requested from Commissioner Al Schmidt to allow for verification that the cancellation code was indeed used because the registrant was not a United States citizen. The document also notes that some records uploaded to the SURE system by Philadelphia County appear to have been completed by someone other than the registrant, thereby giving rise to verification issues which may require contacting the registrant. PILF's SOMF, Ex. D.

34. It is admitted that the SURE system can create various reports, but it is denied that PILF has established a right to any such reports under 52 U.S.C. § 20507(i)(1) for the reasons in Defendants' brief in support of its motion for

summary judgment and brief in opposition to PILF's motion for summary judgment.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. It is admitted that PILF claims in the Complaint in this case that it received records from county election officials concerning cancellation of voter registrations because the registrants were not United States citizens. *See, e.g.,* Compl. ¶ 29. Defendants have no first-hand information concerning the requests, but have no reason to deny that PILF received such records.

41. It is admitted that PILF claims in the Complaint in this case that it received records from county election officials concerning cancellation of voter registrations because the registrants were not United States citizens. *See, e.g.,* Compl. ¶ 29. Defendants have no first-hand information concerning the requests, but have no reason to deny that PILF received such records.

42. It is admitted that PILF claims in the Complaint in this case that it received records from county election officials concerning cancellation of voter registrations because the registrants were not United States citizens. *See, e.g.,*

Compl. ¶ 29. Defendants have no first-hand information concerning the requests, but have no reason to deny that PILF received such records.

43. It is admitted that the Department of State has access to records in the SURE system, including documents uploaded by county election officials to the SURE system, and that Docket Entry 1-6 appears to include a screen shot from the SURE system that was printed on paper and that includes additional handwriting, the source of which is unknown.

44. It is admitted that the Department of State can utilize the SURE system to generate reports, but it is denied that PILF is entitled to additional records or reports under 52 U.S.C. § 20507(i)(1) for the reasons in Defendants' brief in support of its motion for summary judgment and brief in opposition to PILF's motion for summary judgment.

45. Admitted.

46. It is admitted that the Department of State periodically receives letters from jury officials reporting that persons summoned for jury duty indicated that they are not United States citizens and that the Department of State forwards such letters to the appropriate county election officials for handling. The Department of State conducted a search and was not able to locate any letters received from jury selection officials in the two years prior to PILF's request or since that time. Marks Decl. ¶¶ 37-40.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

51. Admitted. By way of further response, personal information in driver license records is protected from disclosure by the Driver's Privacy Protection Act, 18 U.S.C. § 2721(a)(1).

52. Admitted.

53. Admitted.

54. Admitted.

55. It is admitted that the Department of State conducted an initial analysis of statewide records in the SURE system in the fall of 2017 and discovered that 1,160 records indicated a registrant canceled his or her registration because he or she was not a United States citizen.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Admitted.

61. Admitted.

62. It is denied that the Department of State engaged an expert. The testimony quoted actually states that the Department of State's "counsel engaged with an expert to do an analysis of voter registration records and motor voter records . . . ." Marks Dep. Tr. at 141, ll.6-8.

63. It is admitted that the Department of State issued a press statement in July 2018. It is denied that the statement "explained and summarized" the expert's analysis. The press statement issued by the Department of State, being in writing, speaks for itself. *See* Pl.'s SOMF, Ex. D.

64. It is admitted that Paragraph 64 quotes the statement issued by the Department of State in July 2018.

65. It is admitted that the expert analysis included comparison of voter registration records in the SURE system.

66. Admitted. By way of further answer, the expert analysis yielded a list of persons for whom voter registration status required further confirmation. *See* Pl.'s SOMF, Ex. D.

67. Admitted.

68. It is admitted that letters were sent to 11,198 registrants, but a number of those letters were returned as undeliverable. *See* Pl.'s SOMF, Ex. D.

69. It is admitted that the Department of State tracked responses that it received. Responses sent to county election offices were not tracked by the Department of State. Marks Dep. Tr. at 211, ll. 6-16.

70. Admitted. By way of further response, the identities of persons whose registration status required further review are not required to be disclosed because such information is uniquely sensitive and susceptible to abuse. *Public Interest Legal Found. v. N. Carolina State Bd. of Elections*, 996 F.3d 257, 267-68 (4th Cir. 2021) ("'uniquely sensitive information' in otherwise disclosable documents," including "the identities and personal information of . . . those United States citizens who were once identified . . . as 'potentially' failing to satisfy the citizenship requirement but later were exonerated," is properly redacted and not subject to disclosure under NVRA).

71. Admitted. By way of further response, the identities of persons whose registration status required further review are not required to be disclosed because such information is uniquely sensitive and susceptible to abuse. *Public Interest Legal Found. v. N. Carolina State Bd. of Elections*, 996 F.3d 257, 267-68 (4th Cir. 2021) ("'uniquely sensitive information' in otherwise disclosable documents," including "the identities and personal information of . . . those United States citizens who were once identified . . . as 'potentially' failing to satisfy the

citizenship requirement but later were exonerated," is properly redacted and not subject to disclosure under NVRA).

72. It is admitted that 215 recipients returned cancellations forms and that the cancellation forms do not list a reason for the cancellation.

73. Admitted.

74. Admitted.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh
Suzanne P. Conaboy

Counsel for Defendants,
Acting Secretary of the Commonwealth
Veronica Degraffenreid and Deputy
Secretary for Elections and Commission
Jonathan M. Marks

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: June 14, 2021

# CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Response to Statement of Undisputed Material Facts was served upon the following counsel of record via the Court's ECF system on this 14th day of June 2021:

>Kaylan Phillips, Esquire
>Noel H. Johnson, Esquire
>Public Interest Legal Foundation
>32E Washington Street, Suite 1675
>Indianapolis, IN 46204
>
>Linda A. Kerns, Esquire
>Law Offices of Linda A. Kerns, LLC
>1420 Locust Street, Suite 200
>Philadelphia, PA 19102

>/s/ Donna A. Walsh
>Donna A. Walsh