# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 1:19-CV-00622** |
| | : | |
| **KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION,** | : : : : : : : : | **JUDGE CONNER** **ELECTRONICALLY FILED** |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Daniel T. Brier
Donna A. Walsh
Suzanne P. Conaboy
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Counsel for Defendants,
Acting Secretary Veronica
Degraffenreid and Deputy Secretary
for Elections and Commissions
Jonathan M. Marks

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................... 1

ARGUMENT .......................................................................... 2

    I.    PILF's NVRA Request and Its Motion for Summary Judgment Mischaracterize Pennsylvania's List Maintenance Programs .............. 2

    II.   PILF Is Not Entitled to "All" Records Outside Statutory Exemptions and It Is Not the Commonwealth's Burden to Prove That Undisclosed Records Fit Within an Exemption ........................... 3

    III.  The Department of State Produced Documents Sought by PILF That Are Within the Scope of the Public Disclosure Provision ........... 5

        A.    Documents relating to the "matching analysis" that are not derived from driver records have been produced ...................... 5

        B.    Documents received from counties relating to requests for cancellation due to non-citizenship have been produced ........... 8

        C.    The Department of State has no responsive communications with jury selection officials .................................................... 10

        D.   The Department of State has no responsive communications with law enforcement officials .................................................... 11

        E.    Defendants are entitled to summary judgment ........................... 11

    IV.   PILF Is Not Entitled To Access Any Additional Records Relating to the Matching Analysis .................................................................... 12

    V.    There Is No Legal or Factual Basis To Void the Attorney-Client Privilege or Work Product Doctrine ................................................... 13

CONCLUSION ...................................................................... 19

## TABLE OF AUTHORITIES

## CASES

*Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.3d 496
(10th Cir. 1988) .................................................................................. 15

*EMC Ins. Co. v. Zicolello*, No. 13-CV-825, 2014 WL 123687 (M.D. Pa.
Jan. 14, 2014) ..................................................................................... 17

*In re Grand Jury Proceedings*, 604 F.2d 798 (3d Cir. 1979)................................. 16

*Haines v. Liggett Grp.*, 975 F.2d 81 (3d Cir. 1992)................................................. 14

*Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 14-CV-1455, 2015
WL 6604015 (W.D. Pa. Oct. 29, 2015)................................................. 16

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) ............................................................. 4

*Project Vote, Inc. v. Kemp,* 208 F. Supp. 3d 1320 (N.D. Ga. 2016)......................... 4

*Project Vote/Voting for Am., Inc. v. Long,* 752 F. Supp. 2d 697 (E.D. Va.
2010)....................................................................................................... 4

*Public Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553 (M.D. Pa.
2019)........................................................................................... 1, 3, 6, 7, 12

*Public Interest Legal Found., Inc. v. N. Carolina*, 996 F.3d 257 (4th Cir.
2021).............................................................................................. 3, 4, 12

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994) .. 16, 17

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (3d Cir. 2007)............................. 14

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) .................... 3, 7

*Upjohn Co. v. United States*, 101 S. Ct. 677 (1981) ............................................. 14

*Utesch v. Lannett Co., Inc.*, No. 16-5932, 2020 WL 7260775 (E.D. Pa. Dec. 9,
2020)...................................................................................................... 18

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991) ................................................................................................ 17

## STATUTES

5 U.S.C. § 551 *et seq.* ....................................................................... 4

5 U.S.C. § 552(a)(4)(B) ....................................................................... 4

18 U.S.C. § 2721 ................................................................................. 3

18 U.S.C. § 2721(a) ............................................................................ 6

18 U.S.C. § 2725(3) ............................................................................ 6

52 U.S.C. 20507(i)(1) ........................................................... 1, 3, 4, 7, 10

25 Pa. C.S.A. § 1203(a) ....................................................................... 8

25 Pa. C.S.A. § 1901 ........................................................................ 2, 9

25 Pa. C.S.A. § 1901(a) ....................................................................... 9

25 Pa. C.S.A. § 1901(a)(1)-(4) ............................................................. 2

25 Pa. C.S.A. § 1901(b) ....................................................................... 2

Fed. R. Civ. P. 26(a)(1)(A)(i) ......................................................... 15, 16

Fed. R. Civ. P. 26(b)(4)(D)(ii) ............................................................ 16

L.R. 7.8(a) ....................................................................................... 17

**INTRODUCTION**

Relying on conjecture, assumptions and generalities, Plaintiff Public Interest Legal Foundation ("PILF") urges the Court to enter summary judgment in its favor and order Defendant Acting Secretary of the Commonwealth Veronica Degraffenreid[1] and Deputy Secretary Jonathan M. Marks to disclose additional unspecified records pursuant to the public disclosure provision in the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i)(1). PILF misreads the NVRA and ignores that the Department of State has already produced records identified in this Court's decision granting in part and denying in part the Acting Secretary's Rule 12(b)(6) motion. *See Public Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553 (M.D. Pa. 2019).[2] For the reasons below and in the Acting Secretary's own motion for summary judgment (ECF 62, 64), PILF's motion should be denied in its entirety and summary judgment should instead be entered in favor of Acting Secretary Degraffenreid and Deputy Secretary Marks.

---

[1]   The Complaint in this matter names Kathy Boockvar as a defendant in her (then) official capacity as Acting Secretary of the Commonwealth of Pennsylvania (she was later named Secretary of the Commonwealth). Compl. (ECF 1) ¶ 6. Secretary Boockvar resigned from office on February 5, 2021. Acting Secretary Veronica Degraffenreid was appointed on February 8, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Degraffenreid is "automatically substituted as a party."

[2]   Neither production of the records in discovery nor references to the production in briefing should be construed as a waiver of the right to appeal all or part of the previous ruling.

# **ARGUMENT**

**I.    PILF's NVRA Request and Its Motion for Summary Judgment
Mischaracterize Pennsylvania's List Maintenance Programs.**

PILF misapprehends Pennsylvania law and existing voter removal programs
in repeatedly mischaracterizing the Department of State's special investigation of
the PennDOT Motor Voter software error as statutory "list maintenance." *See*
PILF Br. (ECF 67) at 2 n.1, 4, 14, 16, 18, 19, 23.  Voter list maintenance in
Pennsylvania is mandated and regulated by statute.  *See* 25 Pa. C.S.A. § 1901.  The
General Assembly specifically directed that voter registrations "shall not be
canceled except" at the request of the elector, upon the death of the elector, upon
confirmation that the elector has moved outside the county or under a voter
removal program designed to identify electors whose addresses may have changed.
25 Pa. C.S.A. §§ 1901(a)(1)-(4), (b).  There is no state statute that imposes a
systematic and regular process to identify and remove non-citizens from the voter
rolls and Pennsylvania has no such list maintenance program.  To the extent PILF
seeks "list maintenance" records relating to removal programs aimed at non-
citizens, there are no records to produce.

## II.   PILF Is Not Entitled to "All" Records Outside Statutory Exemptions and It Is Not the Commonwealth's Burden to Prove That Undisclosed Records Fit Within an Exemption.

Unable to identify any documents within the scope of the NVRA disclosure provision that have not already been produced, PILF moves the target and now argues that it is entitled to all records that relate to potential non-citizens who may have inadvertently registered to vote unless the Acting Secretary proves an exemption.  ECF 67 at 10.  PILF is wrong on both points.

PILF is wrong in claiming a right to automatic disclosure of "all requested records" not expressly exempted.  *Id.* at 3.  The NVRA requires that states "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ."  52 U.S.C. § 20507(i)(1).  The NVRA is not "a tool to root out voter fraud . . . or any other . . . allegedly illegal activity associated with casting a ballot on election day" and does not require disclosure of voting records from any particular election or records not "used to update or maintain the voter roll."  *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 722-28 (S.D. Miss. 2014).  Nor does the NVRA override or nullify privileges or privacy protections.  As this Court has already concluded, the NVRA does not compel production of records protected by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721.  431 F. Supp. at 562-63; *see also Public Interest*

3

*Legal Found., Inc. v. N. Carolina*, 996 F.3d 257, 267 (4th Cir. 2021). And the NVRA does not require production of sensitive personal information. Indeed, uniquely sensitive information in otherwise disclosable documents, including personal identifiers and information that may lead to harassment or may impute a suggestion of criminality, may properly be redacted. *See Public Interest Legal Found., Inc. v. N. Carolina*, 996 F.3d at 267; *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016); *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711-12 (E.D. Va. 2010). Further, the NVRA public disclosure provision only requires states to maintain documents relating to covered programs and activities for two years. 52 U.S.C. § 20507(i)(1). PILF is plainly not entitled to all documents in the Commonwealth's possession that are not expressly exempted.

PILF also errs in seeking to avoid its burden of proof under the NVRA and under Rule 56 by analogizing its claim under the NVRA to a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 551 *et seq.* ECF 67 at 5-6. The inapt analogy to FOIA in this context fails. While FOIA likewise recognizes personal privacy protections, that statute specifically imposes on public agencies the burden of establishing that withheld agency records fall within a specific statutory exemption. 5 U.S.C. § 552(a)(4)(B). There is no such burden-shifting provision in the NVRA. Nor can such a provision be implied. *Lamie v. U.S.*

*Trustee*, 540 U.S. 526, 538 (2004) (rejecting proposed construction of statute that "would have us read an absent word into the statute"). Therefore, unlike FOIA actions, PILF bears the burden of establishing that the voter records and privileged communications and materials it seeks are subject to disclosure under the NVRA and PILF has not satisfied and cannot satisfy its burden.

### III.   The Department of State Produced Documents Sought by PILF That Are Within the Scope of the Public Disclosure Provision.

PILF argues generally that it is entitled to additional records under the NVRA but does not account for the records it has already received and fails to demonstrate any statutory right to access any additional records.

#### A.   Documents relating to the "matching analysis" that are not derived from driver records have been produced.

The first category sought by PILF are "[d]ocuments regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security and the Pennsylvania Department of Transportation. . . ." Compl. ¶ 69 & Ex. H. PILF later clarified that it is seeking "results (full or interim) from . . . an official 'review' of voter data compared against PennDOT's database of customers to identify voters with matching driver profiles containing noncitizen designations." Compl. ¶ 82 & Ex. 1. The requested comparison of voter data and driver license

records—referred to as "the Noncitizen Matching Analysis," Compl. ¶¶ 65-67, 96—necessarily involves driver license data protected by the DPPA and therefore is not required to be disclosed.

The DPPA prevents states from disclosing "personal information . . . obtained by the department in connection with a motor vehicle record. . . ." 18 U.S.C. § 2721(a); *see also* 18 U.S.C. § 2725(3) (defining "personal information" for purposes of DPPA as "information that identifies an individual . . ."). This Court has already ruled that "[t]he glitch-related information requested by PILF contains analysis matching noncitizen's driver's license numbers to the driver's license numbers of registered voters" and "is protected from redisclosure under the DPPA . . . ." 431 F. Supp. 3d at 563. Accordingly, under this Court's ruling, the results of the so-called matching analysis and data derived therefrom are not subject to public inspection under the NVRA.

To the extent the Department of State possesses disclosable documents relating to its response to the Motor Voter error that do not include or are not derived from protected driver license records, those documents have been provided to PILF. The Department of State has produced copies of form letters sent to registrants informing them of the Motor Voter software issue and asking them to confirm their eligibility to vote or request cancellation of their registration, communications with county election officials and others concerning the letters,

public statements outlining the steps taken to investigate and address the Motor Voter issue and numerical data showing the number of letters sent and responses received. *See* Marks Decl. (ECF 64-1) ¶ 29. Given the protections in the DPPA and this Court's earlier ruling, nothing more is required to be disclosed under the NVRA.

Having received documents it asked for, PILF now claims that it is also entitled to *all* records in the Statewide Uniform Registry of Electors ("SURE") system relating to electors whose registrations were canceled because they self-identified as non-citizens, including voting history, correspondence sent to and received from registrants, audit logs, uploaded documents and information about applications submitted by the registrant. ECF 67 at 11-12. PILF assumes that, because information is stored in the SURE database, it is automatically subject to public access. But this is not what the NVRA requires. The NVRA requires disclosure only of "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). The new records sought by PILF do not so qualify. As noted in *True the Vote v. Hosemann*, the NVRA does not require disclosure of voting records or other documents that are not used in programs to update or maintain the voter roll. 431 F. Supp. 3d at 725-29. Because there is no evidence that the additional records sought by PILF were used

to register or remove voters from the voter roll or otherwise maintain an accurate voter roll—PILF does not even make such a claim—they are not within the ambit of the public disclosure provision.[3]

Put simply, PILF is not entitled to results of comparisons of driver license records and other state databases or data derived therefrom and the Department has already provided non-DPPA-protected records relating to actions taken to respond to the Motor Voter issue.  There is no genuine issue for trial with respect to the first category of records sought by PILF.

### B.    Documents received from counties relating to requests for cancellation due to non-citizenship have been produced.

The second category of records sought by PILF are "documents and records of communications received or maintained by [the Department of State] from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility" and "any official records indicating maintenance actions undertaken thereafter."  Compl. ¶ 70 & Ex. H.  Although the Department does not process requests for cancellation of voter registrations—only counties are authorized to cancel voter registrations, 25 Pa. C.S.A. §§ 1203(a),

---

[3]  PILF suggests that Philadelphia's records in the SURE system include "an uploaded image that can be used to verify the non-citizen cancellation code."  ECF 67 at 12.  Records received from Philadelphia County were provided to PILF in discovery.  Marks Decl. ¶¶ 11, 33.

1901—the Department received records from counties relating to communications addressed to the counties from persons who self-identified as non-citizens and asked to be removed from the voter rolls. Marks Decl. ¶¶ 11, 33. Those documents were provided to PILF during the discovery process. *Id.* ¶¶ 11, 33.[4] No formal list maintenance was conducted with respect to these registrants. They had already asked the counties to cancel their registrations, *id.* ¶ 11, and list maintenance programs in Pennsylvania are limited by statute to programs aimed at removing the names of registrants who have died or relocated, 25 Pa. C.S.A. § 1901(a). Simply put, there are no additional records to produce in response to the second category in PILF's NVRA letter.

PILF does not deny that it received county communications concerning cancellation requests and does not identify any additional records in the second category that are required to be disclosed, other than to suggest that "[t]hese records may have been uploaded to the SURE system." ECF 67 at 13-14. Those communications were already produced to PILF in discovery. There is no genuine issue for trial with respect to the second category.

---

[4] PILF received copies of those same records directly from the counties. Compl. ¶ 34.

### C.   The Department of State has no responsive communications with jury selection officials.

The third category of records sought by PILF are "documents and records of communication received or maintained by [the Department of State] from jury selection officials—state and federal—since January 1, 2006 referencing individuals who claimed to be non-U.S. citizens when attempting to avoid serving a duty call," including "official referrals" and maintenance actions taken as a result. Compl. ¶ 70 & Ex. H. The Department of State occasionally receives letters from jury selection officials identifying persons who asked to be excused from jury service due to non-citizenship and forwards those letters to county election officials for handling. The letters, however, are infrequent and irregular and not transmitted pursuant to any regular or established program, Marks Decl. ¶¶ 37-38, and therefore are not within the scope of the public disclosure provision. Nonetheless, the Department of State searched for but did not locate any letters from jury officials in the two-year period prior to PILF's NVRA request[5] or since the request was received. *Id.* ¶ 40. There are no documents to produce in response to the third category.

---

[5]   The NVRA requires states to maintain records for a two-year period. 52 U.S.C. § 20507(i)(1). PILF's request for documents dating back to January 1, 2006 exceeds the NVRA's maintenance and production requirement.

**D.    The Department of State has no responsive communications with law enforcement officials.**

The fourth and final category of records sought by PILF are "communications regarding list maintenance activities relating to [its other requests] [sent] to appropriate local prosecutors, Pennsylvania Attorney General, Pennsylvania State Police, any other state law enforcement agencies, the United States Attorney's office, or the Federal Bureau of Investigation." Compl. ¶ 70 & Ex. H. The Department of State has no such records. Marks Decl. ¶¶ 42-43. As noted in response to PILF's requests, the Commonwealth does not have an established list maintenance program for removing non-citizens. *Id.* ¶ 44. Nor did the Department of State communicate with federal or state law enforcement agencies concerning persons who may have inadvertently registered to vote as a result of the PennDOT software error. *Id.* ¶ 42. Accordingly, even if the records requested were within the scope of the NVRA, there are no records to produce.

**E.    Defendants are entitled to summary judgment.**

The Department of State has either produced records responsive to PILF's NVRA request or confirmed that no responsive documents exist. PILF has not established that it is entitled to any additional records and therefore Acting Secretary Degraffenreid and Deputy Secretary Marks are entitled to summary judgment in their favor.

## IV.   PILF Is Not Entitled To Access Any Additional Records Relating to the Matching Analysis.

PILF takes yet another run at accessing records relating to matching driver license and voter records, arguing that "registration records maintained in the SURE system," "correspondence among Commonwealth officials discussing PennDOT glitch-related analysis, methodology or results," and "raw totals" are required to be produced "so long as 'personal information' was omitted or redacted." ECF 67 at 16.  PILF's argument is unfounded.

PILF proposes that data concerning registrants flagged through the matching analysis are required to be disclosed, ECF 67 at 16, but that argument has already been rejected.  This Court ruled that "[t]he glitch-related records and derivative lists created during the Commonwealth's investigation are protected by the DPPA to the extent they include personal information obtained by the DMV in connection with a motor vehicle record." 431 F. Supp. 3d at 563.  Accordingly, compilations derived from information in the PennDOT database and comparisons between the PennDOT database and the voter database are exempt from disclosure.

In addition, the identities of and personal information concerning individuals who received letters are not required to be disclosed.  As the Fourth Circuit recently recognized in a similar case brought by PILF, the identities of persons flagged as potential non-citizens are entitled to protection because such information is susceptible to abuse. *Public Interest Legal Found. v. N. Carolina*

*State Bd. of Elections*, 996 F.3d 257, 267-68 (4th Cir. 2021). The Fourth Circuit observed that "'uniquely sensitive information' in otherwise disclosable documents," including "the identities and personal information of . . . those United States citizens who were once identified . . . as 'potentially' failing to satisfy the citizenship requirement but later were exonerated," is properly redacted and not subject to disclosure under the NVRA. *Id.* at 267. This reasoning applies squarely here. Public disclosure of the identity of persons who received correspondence from the Department of State asking them to affirm their eligibility or cancel their registrations would improperly and unnecessarily expose those persons to harassment and abuse and therefore disclosure is not required.[6]

The other information referenced in PILF's brief—the letters sent to registrants, the number of letters sent, the number of responses and the nature of the responses—have already been produced to PILF in discovery. Nothing more is required.

## V.    There Is No Legal or Factual Basis To Void the Attorney-Client Privilege or Work Product Doctrine.

Having failed to identify any additional documents within the ambit of the public disclosure provision, PILF swings for the fences and asks the Court to

---

[6]   Indeed, PILF itself has been criticized for making false public accusations concerning registered voters in Virginia. *See* Defs.' Br. in Supp. of Mot. for Summ. J. (ECF 64) at 14 n.7.

compel the Department to produce communications with its outside counsel and work product prepared by a non-testifying expert retained by outside counsel.  ECF 67 at 18-23.  There is no legal or factual basis to void these privileges.

The attorney-client privilege is the oldest of the privileges for confidential communications known to common law, *Upjohn Co. v. United States*, 101 S. Ct. 677, 682 (1981), and is "worthy of maximum protection," *Haines v. Liggett Grp.*, 975 F.2d 81, 90 (3d Cir. 1992).  The privilege applies to communications that are made between privileged persons, in confidence and for the purpose of obtaining or providing legal assistance.  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007).  The Department has established that outside counsel was retained to provide legal advice concerning the PennDOT Motor Voter software error, that outside counsel retained a consulting expert, that the legal advice and work performed by the consulting expert were in anticipation of litigation and that communications concerning the legal advice and expert work product were kept confidential and not disclosed or shared with third parties.  Marks Decl. ¶¶ 15-17.  PILF does not and cannot point to any evidence that might arguably suggest otherwise.  Communications between the Department and outside counsel are privileged and not required to be disclosed.

PILF argues that the privilege does not apply to "facts" or "actions taken," ECF 67 at 19, 20, but facts and actions taken by the Department of State in

14

response to the Motor Voter software error have already been identified. PILF's claim that voters were removed "inside a secret Star Chamber immune from public scrutiny," ECF 67 at 20, is creative fiction. Any voter registration cancellations were at the registrants' request, not as a result of an involuntary secret process. Further, the Department of State disclosed to the public and to PILF the letters sent to Motor Voter registrants whose citizenship status required further confirmation and statistical data identifying the number of letters sent and responses received, the nature of the responses and the number of letters not able to be delivered. *See* Marks Decl. Exs. A-D. While the Department rightfully shielded privileged communications and privileged work product, actions taken to inform registrants of the Motor Voter error were not concealed.

PILF is also wrong in arguing that the Department is required to identify the expert retained by its outside counsel. ECF 67 at 19. Disclosure of non-testifying experts is not required absent "extraordinary circumstances." *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.3d 496 (10th Cir. 1988). No such circumstances exist here. The names of non-testifying experts are not relevant to any issue in this litigation and there is nothing in the NVRA or elsewhere that permits invasion of the privilege or work product doctrine.[7] PILF

---

[7] PILF claims that non-testifying experts are required to be disclosed under Rule 26(a)(1)(A)(i), ECF 67 at 19 n.7, but that is not what the rule says. That rule only requires disclosure of experts who "the disclosing party may use to support its

likewise errs in proposing that the "manner and results" of any expert analysis constitute "facts" that are not subject to any privilege. *Id.* at 20-21. This is not accurate. "[F]acts known or opinions held by an expert . . . who is not expected to be called as a witness at trial" are not required to be disclosed absent "exceptional circumstances" which again do not exist here. Fed. R. Civ. P. 26(b)(4)(D)(ii).[8]

Finally, PILF argues without support that the work product doctrine does not apply because the expert analysis was not prepared in anticipation of litigation. ECF 67 at 21. PILF cites no evidence in the record for this assertion and there is none. To the contrary, the uncontroverted record evidence establishes that the Department of State's outside counsel retained an expert in anticipation of litigation concerning from any number of sources arising from the PennDOT software error. Marks Decl. ¶ 17. The expert analysis was prepared because of the prospect of litigation and is therefore protected work product. *See In re Grand*

---

claims or defenses," or in other words, testifying experts. Fed. R. Civ. P. 26(a)(1)(A)(i).

[8] The cases cited by PILF do not support a different result. *Rhone-Poulenc* supports Defendants to the extent it holds that, where a party has not taken the affirmative step of placing the advice of counsel at issue, it is not obligated to produce evaluations prepared by counsel. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994). The report in *Heinzl* was prepared by a consultant "without any involvement of counsel" and, on this basis, was held not to constitute attorney work product. *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 14-CV-1455, 2015 WL 6604015, at *8 (W.D. Pa. Oct. 29, 2015). Neither case supports invasion of the attorney client privilege or work product doctrine here.

*Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) ("Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (citation omitted).

Contradicting its earlier claim that the Department's actions were shrouded in secrecy, PILF argues that the Department waived the work product privilege by publicly revealing "steps . . . taken" in addressing the Motor Voter issue. ECF 67 at 22. PILF falls far short of satisfying its burden of proving waiver. *EMC Ins. Co. v. Zicolello*, No. 13-CV-825, 2014 WL 123687, at *2 (M.D. Pa. Jan. 14, 2014) (party challenging privileged communication bears burden of demonstrating that waiver occurred).[9] Waiver can occur where a party voluntarily discloses privileged communications to a third party, *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991), or affirmatively places the advice of counsel at issue by attempting to prove a claim or defense by relying on that advice, *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Neither happened here. The Department did not put counsel's advice at issue or disclose privileged communications or work product to anyone. PILF

---

[9]  Pursuant to L.R. 7.8(a), the unpublished decisions cited herein are reproduced in the attached Appendix.

does not claim otherwise. Instead, PILF posits that the Department of State impliedly waived the work product privilege by acknowledging that the software error may have allowed persons to inadvertently register to vote and by issuing a press statement describing letters sent to registrants and actions taken in relation to the letters. PILF's SOMF (ECF 66) ¶¶ 7, 63 & Ex. D. As a matter of law, this is not a waiver. *See*, e.g., *Utesch v. Lannett Co., Inc.*, No. 16-5932, 2020 WL 7260775, at *11 (E.D. Pa. Dec. 9, 2020) (public statement referencing results of internal investigation without actually disclosing confidential communications or work product does not constitute waiver).

PILF is not entitled to privileged communications between the Department of State and its counsel or facts known or opinions held by non-testifying experts retained by the Department of State's counsel.

## CONCLUSION

For the reasons above, PILF is not entitled to summary judgment and its motion should be denied.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh
Suzanne P. Conaboy

Counsel for Defendants,
Acting Secretary of the Commonwealth
Veronica Degraffenreid and Deputy
Secretary for Elections and Commission
Jonathan M. Marks

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: June 14, 2021

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)</u>

I, Donna A. Walsh, hereby certify that the foregoing Memorandum in

Opposition to Motion for Summary Judgment is in compliance with Local Rule

7.8(b)(3). The brief contains 4230 words as computed by Microsoft Office Word.

<u>/s/ Donna A. Walsh</u>
Donna A. Walsh

Date: June 14, 2021

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Opposition to Motion for Summary Judgment was served upon the following counsel of record via the Court's ECF system on this 14th day of June 2021:

Kaylan Phillips, Esquire
Noel H. Johnson, Esquire
Public Interest Legal Foundation
32E Washington Street, Suite 1675
Indianapolis, IN  46204

Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, LLC
1420 Locust Street, Suite 200
Philadelphia, PA  19102

/s/ Donna A. Walsh
Donna A. Walsh