IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:19-CV-00622 |
| | : | |
| KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION, | : | JUDGE CONNER |
| | : | |
| | : | ELECTRONICALLY FILED |
| | : | |
| Defendants.[1] | : | |

DEFENDANTS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

Having itself moved for summary judgment claiming there is no genuine issue for trial, Plaintiff Public Interest Legal Foundation ("PILF") now reverses course and speculates that the Department of State's search for disclosable

---

[1] The Complaint in this matter names Kathy Boockvar as a defendant in her (then) official capacity as Acting Secretary of the Commonwealth of Pennsylvania (she was later named Secretary of the Commonwealth). Compl. (ECF No. 1) ¶ 6. Secretary Boockvar resigned from office on February 5, 2021. Acting Secretary Veronica Degraffenreid was appointed on February 8, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Degraffenreid is "automatically substituted as a party."

documents may not have been thorough and there may be additional documents and therefore genuine issues remain to be tried. PILF's arguments necessarily fail. Mere speculation about the possible existence of additional records does not and cannot create a genuine issue of material fact or prevent entry of summary judgment in favor of Defendants. As a result, Defendants are entitled to judgment in their favor as a matter of law.

## ARGUMENT

### I. PILF Fails To Identify A Genuine Issue for Trial.

Unable to point to any record within the scope of the NVRA that was not disclosed, PILF instead posits that it is "unclear" whether all records were produced, ECF 71 at 3, that it "may not have received certain records," *id.* at 4, and that there must be additional records notwithstanding Deputy Secretary Marks's declaration to the contrary, *id.* at 2-5. This is plainly insufficient. To defeat summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014) (citation and internal punctuation marks omitted). "Bare assertions, conclusory allegations, or suspicions will not suffice." *Id.* (citation and internal punctuation marks omitted). Nor is it enough to propose "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986), to rely on speculation

and conjecture, *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016), or to suggest that a jury might disbelieve the testimony in the moving party's affidavit, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *see also Williams v. Borough of Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Ignoring these maxims, however, that is all that PILF offers here. PILF submitted no opposing affidavits and points to no evidence in the record to establish that disclosable records were improperly withheld. PILF's purely speculative assertion that there may be additional records does not create a genuine issue for trial.

## II. **PILF's Requests Were Not Misconstrued.**

PILF accuses Defendants of misconstruing its requests for records, ECF 71 at 2-5, but the uncontroverted evidence shows that PILF received the records it asked for that are within the scope of the NVRA.

PILF claims that the Department of State misread its first request as relating only to documents concerning the "glitch" investigation, ECF 71 at 2-3, but the record proves otherwise. The first category of records requested by PILF are "[d]ocuments regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security and the Pennsylvania Department of Transportation since January 1, 2006. . . ." Compl. (ECF 1), Ex. H.

Deputy Secretary Marks confirmed that, "[o]ther than protected driver license information from PennDOT"—which is not required to be disclosed, *Public Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 563 (M.D. Pa. 2019)—"the Department of State received no documents within the relevant period from the Department of Homeland Security or any other official government source identifying potential non-citizens on the voting rolls." Marks Decl. ¶ 30; *see also* Defs.' Statement of Facts (ECF 63) ¶ 5. PILF points to no evidence in the record that might arguably suggest otherwise. There is no genuine issue for trial with respect to the first category.

PILF next argues that the Department of State's production in response to the second category was "deficient" because records in the SURE system were not provided and because "[i]t is . . . unclear" whether counties possess additional responsive records. ECF 71 at 3. Again, PILF tilts at windmills. The second category of records sought by PILF are "[a]ll documents and records of communication ***received or maintained by your office*** from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility. . . ." Compl., Ex. H (emphasis added). PILF sought records "received or maintained" by the Department of State, not records in possession of the counties as it now claims. ECF 71 at 3. Further, Deputy

Secretary Marks confirmed that the Department of State already disclosed records relating to communications with registrants who requested cancellation because they were not United States citizens. Marks Decl. ¶ 29. That production (documents Bates numbered D234-2086) included records uploaded by counties to the SURE system as well as records the Department of State received from the counties.[2] Because the Department of State has already provided communications from registrants, there is no genuine issue with respect to the second category.

PILF argues that the Department of State's response to the third category is "deficient" because there may be additional responsive communications outside the two-year period mandated by the NVRA. ECF 71 at 4-5. Again, PILF misapprehends the Department of State's response. PILF's third category sought "documents and records of communication . . . from jury selection officials . . . since January 1, 2006 referencing individuals who claimed to be non-U.S. citizens when attempting to avoid serving a duty call. . . ." Compl., Ex. H. The Department of State occasionally received such letters and searched for but did not find any letters in the two-year retention period mandated by the NVRA. Marks

---

[2] While this fact is already in the record, attached as Exhibit "A" is a supplemental declaration from Deputy Secretary Marks confirming that documents in the SURE system relating to persons who cancelled their registrations because they were not United States citizens have been produced in discovery as D234-1108. Some of these records were also attached to PILF's Complaint (Exs. A-F), presumably because PILF requested and received the same records directly from the counties. *See* Compl. ¶¶ 29, 35.

Decl. ¶¶ 37, 40.  PILF offers no evidence that any letters were received in this period.  There is no genuine issue.[3]

In short, PILF has not pointed to any evidence that additional disclosable documents exist and therefore Defendants are entitled to summary judgment.

### III. PILF Fails To Establish Any Basis for Avoiding the Privacy Protection in the DPPA.

PILF concedes that the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721(a), prohibits disclosure of "personal information" obtained from driver license records, ECF 71 at 12-13, but persists in arguing that documents derived from analysis of personal information in driver license records must be disclosed, *id.* at 13.  This argument is without merit.

PILF claims that it is entitled to records in the SURE database relating to persons who received letters asking them to confirm their eligibility or cancel their registrations because such records exist independent of any comparison to driver license records.  ECF 71 at 13-14.  But this is just another way of getting protected

---

[3]  The cases cited by PILF are not on point because they involved records of regular activities.  At issue in *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019), and *Illinois Conservative Union v. Illinois*, No. 20 C 5542, 2021 WL 2206159 (N.D. Ill. June 1, 2021), were voter lists which the states admittedly retained beyond the two-year retention period mandated by the NVRA, 52 U.S.C. § 20507(i)(1).  Here, by contrast, the communications with jury officials that PILF seeks are not regular occurrences and the Department of State has confirmed that it received no such records during the two-year retention period.  The Department of State cannot be compelled to disclose what does not exist.

personal information in driver records. Hits that result when the SURE database is compared to driver license records with INS indicators necessarily derive from and incorporate INS indicators which, as this Court previously found, are protected from disclosure by the DPPA. 431 F. Supp. 3d at 563 ("the INS indicator is information created in connection with a motor vehicle record" and therefore protected by the DPPA). This Court further concluded that "glitch-related records and derivative lists created during the Commonwealth's investigation are protected by the DPPA to the extent they include personal information obtained by the DMV in connection with a motor vehicle record." *Id.* Accordingly, the identities of registrants with INS indicators in their driver license records and records in the SURE database concerning those registrants cannot be disclosed without violating the DPPA.

Moreover, disclosure of the identities of the persons who received letters is not required because such information is uniquely subject to abuse. As the Fourth Circuit recently recognized, "if the identities of those registrants [identified as potential noncitizens] were disclosed to the public, those individuals who ultimately were absolved of criminal wrongdoing nevertheless would be placed at risk of 'public branding'" and could face "long-standing personal and professional repercussions" and consequently their identities and personal information are not required to be disclosed. *Public Interest Legal Found., Inc. v. North Carolina*

*State Bd. of Elections*, 996 F.3d 257, 267-68 (4th Cir. 2021).[4]  Likewise, PILF is not entitled to such personal identifying information here.

Although the Department of State appropriately withheld the names of individuals who received letters, it disclosed other records that do not implicate protected personal information, including copies of letters sent to registrants, press announcements, communications with county election officials and data showing the number of letters sent and responses received and the nature of those responses. Marks Decl. ¶ 29.  Unable to point to any other records required to be disclosed, PILF tries to shift the burden to Defendants to identify protected records and to justify withholding those records.  ECF 71 at 14-15.  This is not how summary judgment works.  PILF bears the burden under Rule 56 and the NVRA to produce evidence sufficient to support a verdict in its favor.  *Anderson*, 477 U.S. at 252.  It

---

[4]  Contrary to PILF's argument, the Fourth Circuit decision does not suggest the existence of any genuine fact issues in this case.  ECF 71 at 16.  The Fourth Circuit held that it was error to dismiss the complaint in that case under Rule 12(b)(6) "[b]ecause discovery was not conducted[and] we cannot discern on this record whether the Foundation may be entitled to disclosure of some of the documents requested."  996 F.3d at 259.  By contrast, discovery was conducted in this case, including the exchange of written discovery and a Rule 30(b)(6) deposition of a Department of State representative, and the Department of State produced to PILF more than 2000 pages of records.  PILF has had a full opportunity to take discovery but has not identified any additional records required to be disclosed.  Defendants are entitled to summary judgment.

has not done so and as a result Defendants are entitled to summary judgment in their favor.[5]

### IV. There Is No Legal or Factual Basis To Void the Attorney-Client Privilege or Work Product Doctrine.

Having already received the documents it asked for, PILF makes a last-ditch effort to avoid summary judgment by attacking the Department of State's proper invocation of the attorney-client privilege and work product doctrine. ECF 71 at 5-12. Its argument is unfounded.

PILF fundamentally misconstrues the attorney-client privilege in arguing that communications made by and to outside counsel are not protected if they relate to business conducted by the Department of State. ECF 71 at 11-12. This is not the law. Rather, "[s]o long as obtaining or providing legal advice was one of the significant purposes," the attorney-client privilege applies "even if there were also other purposes for the investigation and even if the investigation was mandated by regulation . . . ." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754

---

[5] PILF cites *Maldonado* as ostensible support for the proposition that failure to itemize withheld records on a document-by-document basis precludes summary judgment, ECF 71 at 14-15, but that is not what *Maldonado* says. The Third Circuit held in that case that an affidavit proffered by the debtor's attorney could not support entry of summary judgment in favor of the debtor because it was not based on personal knowledge. *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). The affidavit and declaration proffered by Defendants are based on personal knowledge. *See* Marks Decl. ¶ 3; Torres Aff. (ECF 64-3) ¶ 6. Therefore, *Maldonado* does not apply.

(D.C. Cir. 2014) (Kavanaugh, J.); *see also Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) (upholding assertion of privilege over communications made by company employees to company attorneys during attorney-led investigation undertaken to ensure company's "compliance with the law"). Here, the evidence is uncontroverted and incontrovertible that the Department of State retained outside counsel to provide legal advice concerning matters relating to the Motor Voter software issue, including potential voting by non-citizens. Marks Decl. ¶¶ 15-17. That advice related to exposure in any potential anticipated litigation and any possible required reporting under the Pennsylvania voter registration law. Torres Aff. (ECF 64-3) ¶ 6. PILF does not and cannot point to any evidence that suggests that counsel was retained for any purpose other than to provide legal advice. The privilege certainly applies.[6]

---

[6] The cases cited by PILF are materially different in that they involved documents created by a party in the ordinary course of business. *Holmes* involved a pension plan's assessment of a participant's eligibility for interest on past due benefits. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138-39 (3d Cir. 2000). *Heinzl* involved a report concerning accessibility of a restaurant parking lot which was commissioned and prepared without involvement of counsel. *Heinzl v. Cracker Barrel Old Country Store, Inc.*, 14-CV-1455, 2015 WL 6604015, **7-8 (W.D. Pa. Oct. 29, 2015). The documents at issue in *United States v. Ernstoff* were standard forms generated through routine testing of rental practices by the government agency charged with assuring fair rental practices. 183 F.R.D. 148, 150-51 (D.N.J. 1998). By contrast, the communications that PILF seeks are made by and to outside counsel and involve legal advice concerning the impact of a software error. Marks Decl. ¶¶ 15-17; Torres Aff. ¶ 6. The attorney-client privilege and work product doctrine undoubtedly apply.

PILF is also wide of the mark in arguing that the work product protection should not apply because there was no possibility of litigation when counsel was engaged.  ECF 71 at 11-12.  This argument ignores the uncontroverted record evidence that outside counsel was engaged "in anticipation of litigation from any number of sources arising from the PennDOT software glitch."  Marks Decl. ¶ 17.  Seeking legal advice to respond to a "glitch" is not "the ordinary course of business" as PILF proposes.  ECF 71 at 8.  Moreover, it was certainly reasonable to anticipate litigation in these circumstances, including litigation under the NVRA on behalf of registrants impacted by the software error or any corrective action or litigation under the NVRA brought by persons or groups challenging the accuracy of the voter roll.  *See, e.g., American Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 179 (3d Cir. 2017) ("[T]he NVRA both protects registered voters from improper removal from the rolls and places limited requirements on states to remove ineligible voters from the rolls.").  Again, PILF has not marshalled any evidence that in any way suggests otherwise.

Finally, PILF errs in arguing that the Department of State should have itemized communications made by and to its outside counsel on a privilege log.  ECF 71 at 7-8.[7]  Communications between outside counsel and a consulting expert

---

[7] Nor did PILF ever move to compel preparation of a privilege log.  Having failed to do so, it cannot be heard to complain that the lack of a log creates a genuine issue for trial.

are by their nature protected by the privilege and work product doctrine and therefore a privilege log was not necessary. *See Cooper v. Old Dominion Freight Line, Inc.*, 09-CV-2441, 2011 WL 251447, at *10 (D. Kan. Jan. 25, 2011) (there is no "need for a privilege log" where requests "only apply to materials that would be privileged or work product"); *see also* Fed. R. Civ. P. 26(b)(5)(A), Advisory Committee Notes ("The obligation to provide pertinent information concerning withheld privileged materials applies only to items 'otherwise discoverable.'").[8]

More to the point, PILF's attempt to pierce the privilege and work product doctrine necessarily fails because the NVRA does not require disclosure of privileged communications or privileged attorney work product. The public disclosure provision applies only to records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). It does not require disclosure of legal advice or work product that may have preceded the implementation of such programs or activities. PILF is plainly not entitled to privileged communications or confidential work product.

---

[8] Copies of the unpublished decisions cited herein are reproduced in the attached Appendix.

## V.     PILF's New Claim for a Permanent Injunction Is Meritless.

Undeterred by its failure to identify any documents that should have been disclosed, PILF swings for the fences and argues that the Court should enter a permanent injunction imposing on the Commonwealth "an affirmative duty to disclose records similar to those requested . . . in the future." ECF 71 at 19. This eleventh hour request for entirely new relief necessarily fails. PILF did not request a "permanent" or continuing injunction in its Complaint (or in its own motion for summary judgment) and cannot amend its Complaint now to assert such a claim. *See Jones v. Treece*, 774 F. App'x 65, 67 (3d Cir. 2019) ("a plaintiff generally may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation and internal quotation marks omitted).

Moreover, even if PILF had timely and appropriately asserted a claim for a permanent injunction and identified a specific category of documents that may be the subject of such an injunction, it has no right to a permanent injunction under the four-part test referenced in its brief. ECF 71 at 19.[9] PILF did not suffer

---

[9] PILF seeks a permanent injunction under the standard applicable to claims for equitable relief. *See eBay v. MercExchange*, LLC, 547 U.S. 388, 391 (2006) (claim for permanent injunction in patent dispute). There is no equitable claim here. PILF asserts that the Eastern District of Virginia awarded a permanent injunction in an NVRA case, but the claim for injunctive relief in that case was not contested. *See Project Vote/Voting for Am., Inc. v Long*, 813 F. Supp. 2d 738, 744 (E.D. Va. 2011). That is not the situation here. Defendants deny that PILF is entitled to any relief, let alone permanent injunctive relief. The only other case cited by PILF, *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1350 (N.D. Ga.

13

irreparable (or any other) injury.  It received the records it requested after this Court resolved the threshold issue concerning construction of the statute.[10]  In addition, PILF would have an adequate remedy under the NVRA in the event it requests but does not receive documents required to be disclosed at some time in the future.  And, because PILF can bring another claim under the public disclosure provision, the balance of hardships does not favor a permanent injunction and the public interest is not implicated.  PILF has not satisfied any of the elements necessary for a permanent injunction and its new request for such relief should be denied.

## VI.     Deputy Secretary Marks Is Not a Proper Defendant.

PILF maintains that Deputy Secretary Marks is a proper party because he oversees the bureau within the Department of State that is responsible for administration of the SURE system.  ECF 71 at 22-23.  While this is an accurate statement, this does not make Deputy Marks a proper defendant.  The NVRA

---

Sept. 20, 2016), involved a motion for a preliminary injunction and does not support an award of permanent injunctive relief in this case.

[10]  PILF complains that it did not receive any documents until after discovery commenced, ECF 71 at 20, but neglects to mention the procedural history that preceded discovery, including the dismissal of PILF's first complaint due to improper notice, *Public Interest Legal Found. v. Boockvar*, 370 F. Supp. 3d 449 (M.D. Pa. 2019), and resolution of the threshold legal issue in Defendants' motion to dismiss in this case, 431 F. Supp. 3d 553.  After the ruling on Defendants' motion to dismiss, Defendants provided PILF with records identified in the Court's opinion.

imposes disclosure obligations on states, 52 U.S.C. § 20507(i)(1), and requires states to designate a single officer as the chief state election official with responsibility for coordinating state responsibilities under the act, 52 U.S.C. § 20509.  PILF cites no legal basis for "enjoining" or imposing any other responsibility on Deputy Secretary Marks, ECF 71 at 23, and there is no legal basis for such relief.  Deputy Secretary Marks should be dismissed as a party defendant.

## CONCLUSION

For the reasons above and in Defendants' opening brief, there is no genuine issue for trial and summary judgment should be entered in favor of Acting Secretary Degraffenreid and Deputy Secretary Marks.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh
Suzanne P. Conaboy

Counsel for Defendants,
Acting Secretary of the Commonwealth
Veronica Degraffenreid and Deputy
Secretary for Elections and Commission
Jonathan M. Marks

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated:  June 28, 2021

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Reply Memorandum in Further Support of Motion for Summary Judgment was served upon the following counsel of record via the Court's ECF system on this 28th day of June 2021:

>Kaylan Phillips, Esquire
>Noel H. Johnson, Esquire
>Public Interest Legal Foundation
>32E Washington Street, Suite 1675
>Indianapolis, IN  46204
>
>Linda A. Kerns, Esquire
>Law Offices of Linda A. Kerns, LLC
>1420 Locust Street, Suite 200
>Philadelphia, PA  19102

>/s/ Donna A. Walsh
>Donna A. Walsh