## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

_____

|  |  |  |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) ) | No. 1:19-cv-00622-CCC |
| KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION, | ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

_____)

### REPUBLICAN NATIONAL COMMITTEE'S
### AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

1

Harmeet K. Dhillon (*pro hac vice*)
Karin Sweigart
DHILLON LAW GROUP INC.
177 Post Street, Ste. 700
San Francisco, CA 94108
(415) 433-1700
harmeet@dhillonlaw.com
ksweigart@dhillonlaw.com

*Counsel for Republican National Committee*

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................1

II.  STATEMENT OF INTEREST ......................................................................2

III. ARGUMENT..................................................................................................2

    I.   There Are No Applicable Exceptions to Public Disclosure Under the NVRA ..................................................................................................2

    II.  Pennsylvania Cannot Use the Attorney-Client Privilege and the Work Product Doctrine to Shield Disclosure of Requested Records..............7

        A.   The Attorney Client Privilege Does Not Apply to the Requested Documents ....................................................................................9

        B.   The Work Product Doctrine Does Not Prohibit Disclosure of the Requested Documents ................................................................13

    III. FOIA and the NVRA Counsel in Favor of Disclosure of the Requested Documents ........................................................................17

IV.  CONCLUSION............................................................................................22

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Am. Civil Liberties Union of N. Cal. v. Dep't of Justice*,

   2015 WL 4241005, at *4 (N.D. Cal. July 13, 2015)............................................20

*Andrus v. Glover Constr. Co.*,

   446 U.S. 608 (1980) ...................................................................................................6

*CDK Global, LLC v. Tulley Automotive Group Inc.*,

   2018 WL 4259843, *4 (D.N.J. June 28, 2018).....................................................13

*Coastal States Gas Corp. v. Dep't of Energy*,

   617 F.2d 854 (D.D.C. 1980) ...................................................................................20

*Com. Of Pa., Dept. of Public Welfare v. U.S. Dept. of Health and Human Servs.*,

   623 F. Supp. 301 (M.D. Pa. 1985) ........................................................................19

*Cont'l Cas. Co. v. United States*,

   314 U.S. 527 (1942)...................................................................................................5

*Cuban v. S.E.C.*,

   744 F. Supp. 2d 60 (D.D.C. 2010).........................................................................20

*Dept. of Air Force v. Rose*,

   425 U.S. 352 (1976).................................................................................................17

*Electronic Frontier Foundation v. Dep't of Justice*,

   2016 WL 7406429, *7 (N.D. Cal. Dec. 22, 2016).................................................20

*Fox v. Lackawanna Cty.*,

2018 WL 4095854, at *4 (M.D. Pa. Aug. 27, 2018) ............................................15

*Harper v. Auto-Owners Insurance Co.*,

138 F.R.D. 655 (S.D. Ind. 1991)............................................................14

*In re Gabapentin Patent Litigation*,

314 F.R.D. 178 (D. N.J. 2003)............................................................14

*In re Grand Jury Investigation*,

599 F.2d 1224 (3d. Cir. 1979)........................................................ 9, 11

*In Re Grand Jury Supoena Duces Tecum*,

112 F.3d 910 (8th Cir. 1997) ............................................................12

*In re Lindsey*,

158 F.3d 1263 (D.C. Cir. 1998) ............................................................11

*John Doe Agency v. John Doe Corp.*,

493 U.S. 146 (1989)............................................................17

*Jud. Watch, Inc. v. Lamone*,

455 F. Supp. 3d 209 (D. Md. 2020). ............................................................3, 4

*Manna v. U.S. Dep't of Justice*,

51 F.3d 1158 (3d Cir. 1995)............................................................17

*Matter of Grand Jury Empanelled February 14, 1978*,

603 F.2d 469 (3d. Cir. 1979)............................................................9

*McCook Metals L.L.C. v. Alcoa, Inc.*,

   192 F.R.D. 242 (N.D. Ill. 2000)................................................................14

*McDonnell v. United States*,

   4 F.3d 1227 (3d Cir. 1993)...................................................................19

*Memory Bowl v. N. Pointe Ins. Co.*,

   280 F.R.D. 181 (D. N.J. 2012)..............................................................9

*Milner v. Dep't of Navy*,

   562 U.S. 562 (2011).............................................................................18

*Nat'l Immigration Project of National Lawyers Guild v. U.S. Dep't of Homeland*

   *Sec.*,

   868 F. Supp. 2d 284 (S.D.N.Y. 2012) .................................................21

*Nat'l Immigration Project v. Dep't of Homeland Sec.*,

   842 F.Supp.2d 720, 729 n. 10 (S.D.N.Y.2012) ...................................21

*Philadelphia & Reading Corp. v. United States*,

   944 F.2d 1063 (3d Cir. 1991)................................................................5

*Project Vote, Inc. v. Kemp*,

   208 F. Supp. 3d 1320 (N.D. Ga. 2016).................................................5

*Project Vote/Voting for Am., Inc. v. Long*,

   682 F.3d 331 (4th Cir. 2012) ...................................................... 5, 8, 17

*Project Vote/Voting for America, Inc. v. Long*,

   889 F. Supp. 2d 778 (E.D. Va. 2012) ...................................................5

*Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections*,

   996 F.3d 257 (4th Cir. 2021) ...................................................................4

*Public Interest Legal Foundation v. Boockvar*,

   431 F. Supp. 3d 553 (M.D. Pa. 2019) ....................................................5

*Scott Paper v. U.S.*,

   943 F. Supp. 489 (E.D. Pa. 1996) ........................................................20

*United States Dep't of State v. Ray*,

   502 U.S. 164 (1991) .............................................................................17

*United States ex rel. Lord v. NAPA Management Servs. Corp.*,

   2019 WL 5829535, *4 (M.D. Pa. Nov. 7, 2019) .................................13

*United States v. Rockwell Int'l*,

   897 F.2d 1255 (3d Cir. 1990)......................................................... 10, 12

*Upjohn Co. v. U.S.*,

   449 U.S. 383 (1981)................................................................................9

*Warluft v. Milton Hershey School and School Trust*,

   2018 WL 3995697, at *6 (M.D. Pa. Aug. 21, 2018) ...........................12

*Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*,

   3:16-CV-00897, at *7 (M.D. Pa. Feb 14, 2020) ...................................9

*Westinghouse Elec. Corp. v. Republic of Philippines*,

   951 F.2d 1414 (3d Cir. 1991)...............................................................10

*Wiener v. F.B.I.*,

    943 F.2d 972 (9th Cir. 1991) ................................................................20

## **Statutes**

5 U.S.C. § 552(a)(4)(B) ......................................................................18

5 U.S.C. §(a)(8)(A) .............................................................................19

52 U.S.C. § 20507(d)(2) .......................................................................3

52 U.S.C. § 20507(i)(1) ............................................................... passim

52 U.S.C. § 20507(i)(2) .................................................................. 3, 16

52 U.S.C. §§ 20501-20511 ..................................................................1

## **Other Authorities**

Freedom of Information Act ("FOIA") ............................................ passim

National Voter Registration Act of 1993 ("NVRA") ....................... passim

**INTRODUCTION**

Transparency and accountability are hallmarks of good government and the lifeblood of democracy. Congress enacted the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501-20511, to "establish procedures that will increase the number of eligible citizens who register to vote," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501. Instead of the NVRA relying solely on the federal government for enforcement, Congress included multiple tools to empower private entities to play an active role in ensuring states complied with the law. One such tool was a broad public records inspection provision requiring states to make publicly available records regarding NVRA compliance. 52 U.S.C. § 20507(i)(1). Congress's only narrow exceptions to this general rule in favor of broad disclosure related specifically to protecting voter privacy. Unfortunately, some states have attempted to create extra-statutory exceptions to disclosure in an effort to shield evidence of admitted non-compliance from public scrutiny. This Court should reject Pennsylvania's attempt to do so here. The Court should grant summary judgment for the Public Interest Legal Foundation ("PILF") because the NVRA's exceptions to the public records disclosure provision do not apply to PILF's records request, Pennsylvania's assertions of attorney-client and attorney work-product privilege are

self-serving and overbroad, and because analogues in the Freedom of Information Act ("FOIA") demonstrate the importance of disclosure here.

## STATEMENT OF INTEREST

The Republican National Committee ("RNC") is a national political party committee and the national political organization of the Republican Party of the United States. The RNC manages the Republican Party's business at the national level, supports Republican candidates and state parties, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. Because the RNC organizes the Republican Party's activities and supports Republican candidates in elections across the country, it has a clear interest in ensuring clean voter rolls and free and fair elections. The RNC has been extensively involved in elections throughout the United States since 1856, and offers a perspective it hopes will be helpful to the Court.

## ARGUMENT

### I.    There Are No Applicable Exceptions to Public Disclosure Under the NVRA

To guarantee the integrity of elections and the accuracy of registered voter lists, Congress created a virtually categorical public right to inspect "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Congress further specified states were required to maintain and allow

the public to inspect records "includ[ing] lists of the names and addresses of all persons to whom" the state sent notices to for the purpose of confirming their registrations, as provided in 52 U.S.C. § 20507(d)(2), "and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2). As one court noted:

> It is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls. State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the essential workings of democracy will suffer.

*Jud. Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209, 221 (D. Md. 2020). The NVRA's public records inspection provision "plainly requires disclosure of completed voter registration applications. Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections." *Id.*

Congress allowed only two narrow exceptions to the public's right to inspect "all records," neither of which applies here: (A) "records relat[ing] to a declination to register to vote"; and (B) records relating "to the identity of a voter registration

agency through which any particular voter is registered." *Id.* at 217. The plain text of the NVRA does not permit a state to withhold records under *any* other exception.

Courts have grappled with, and reached different conclusions about, the treatment of sensitive information within a record that is disclosed, such as a voter's date of birth, or whether a particular state record was of a category covered by the NVRA. But *no court* has found a blanket exception to the NVRA that would allow a state to conceal its records regarding election administration from public inspection in wholesale circumvention of section 20507(i)(1), as Pennsylvania is attempting to do here. *See*, *e.g.*, *Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections*, 996 F.3d 257, 259 (4th Cir. 2021) (permitting disclosure exceptions for information protected from disclosure by federal statutes, information from confidential federal databases of which federal law and an agreement prohibited disclosure, and records that were part of a criminal investigation; requiring redaction of information about individuals who potentially committed criminal offenses); *Lamone*, 455 F. Supp. 3d at 224-225 ("many states have passed laws or enacted regulations protecting the privacy of their voters by requiring redaction of birth dates from voter lists" but Maryland did not and, therefore, the elections administrator may not unilaterally "bypass" the NVRA despite privacy concerns; birth dates could reasonably be used to find duplicate registrations and voters remaining on the rolls despite "improbable" age); *Public Interest Legal Foundation v. Boockvar*, 431 F. Supp. 3d 553, 563 (M.D.

Pa. 2019) (stating that to the extent that requested information included INS indicators—information that was created in connection with motor vehicle records—records requester failed to state claim for production of voter records under NVRA); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016) (holding "it is illogical" to conclude that Congress "intended to erode Federal and State law protecting against the disclosure of private, personal information" so "all records subject to disclosure under Section 8(i) must redact certain personal information, including an applicant's birth date"); *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (finding disclosed voter applications can be redacted to omit applicants' social security numbers, which qualified as "uniquely sensitive information"); *Project Vote/Voting for America, Inc. v. Long*, 889 F. Supp. 2d 778 (E.D. Va. 2012) (holding on remand from the Fourth Circuit that the NVRA required disclosure of voter registration applicants' address, signature, and birth date, but not social security numbers).

"Generally speaking a 'legislative affirmative description' implies denial of the nondescribed powers." *Cont'l Cas. Co. v. United States*, 314 U.S. 527, 533 (1942). In cases where Congress enumerates exceptions to a general statutory scheme, the Supreme Court often applies the Latin maxim *expressio unius est exclusio alterius*. *Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063, 1073 (3d Cir. 1991). In other words, "additional exceptions are not to be implied, in

the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–617 (1980).

The NVRA's disclosure provision instructs states to allow public inspection of "*all* records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," and only includes two express exemptions inapplicable here. 52 U.S.C. § 20507(i)(1) (emphasis added). Congress knows how to write exceptions, and it did not do so in this circumstance. *Id.* The NVRA's stated purposes include protecting the integrity of the electoral process and ensuring that states maintain accurate and current voter registration rolls. 52 U.S.C. § 20501. Congress clearly intended the NVRA's disclosure provisions to promote more transparency and accountability, not less. The NVRA's legislative intent supports PILF's position, not Pennsylvania's.

PILF has requested inspection of records maintained by the state concerning Pennsylvania's handling and response to an admitted error that potentially put tens of thousands of ineligible voters on the state's voter rolls. Pennsylvania has refused to provide relevant information under the guise that some of the expert analysis related to the error was undertaken in anticipation of litigation. Without question, the requested information directly relates to the "implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). While Pennsylvania does not wish

its embarrassing errors and noncompliance with the law to be brought to light, Congress enacted the NVRA's disclosure requirements to allow oversight of precisely these situations.

In sum, there is no exception to the NVRA according to which a state may comprehensively defy Congress's command in section 20507(i)(1) to permit public inspection of its voting records, as Pennsylvania is attempting to do here. Any such exception would swallow the rule and subvert the plain text and critical purpose of the NVRA's public inspection provisions. Accordingly, other than a limited balancing of competing privacy laws and interests that may compel redactions of highly sensitive information within a record covered by the NVRA, courts interpreting the NVRA have never endorsed an extra-statutory exception to the NVRA's public inspection requirement.

## II.   Pennsylvania Cannot Use the Attorney-Client Privilege and the Work Product Doctrine to Shield Disclosure of Requested Records

Pennsylvania cannot hide behind a blanket claim of attorney-client privilege or the work product doctrine to shield disclosure of records under the NVRA. A holding to the contrary would obliterate the public inspection rights envisioned by Congress and create a framework for states to avoid public disclosure under the NVRA by structuring their list maintenance program in a legal office or by intertwining lawyers in the list maintenance process.

Congress made its intention clear that "all records" related to list maintenance, outside the two narrow exceptions, were to be available to the public. "[T]he use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *Project Vote/Voting for Am., Inc. v. Long,* 682 F.3d 331, 336 (4th Cir. 2012). The records requested by PILF are the exact type of list maintenance records Congress intended to be disclosed to the public. PILF has requested documents regarding all registrants providing the name of the registrant and the voting history of such registrant in the PennDot database; documents and records received or maintained by the Bureau of Commissions, Elections and Legislation (the "Department") requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility; all documents and records from the Department referencing individuals who claimed to be non-U.S. citizens when attempting to avoid serving a duty call; and all communications regarding these list maintenance activities made to appropriate local prosecutors, the Pennsylvania Attorney General, Pennsylvania State Police, and any other state or federal agency. Because PILF is seeking only list maintenance documents, not opinions or advice from lawyers regarding legal obligations, these records fall squarely into the "expansive meaning" of the public disclosure provision and must be disclosed. *Id.*

## A. The Attorney Client Privilege Does Not Apply to the Requested Documents

The attorney-client privilege created by federal common law does not somehow prohibit disclosure of the requested maintenance documents. Federal Rule of Evidence 501 codifies that review of testimonial privileges, such as the attorney-client privilege, should be done using federal common law in this circumstance. The attorney-client privilege protects confidential communications between attorney and client. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). "The privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice." *Memory Bowl v. N. Pointe Ins. Co*., 280 F.R.D. 181, 185 (D. N.J. 2012). It applies (1) to the asserted holder of the privilege; (2) to the person to whom the communication was made if he or she is a member of the bar or acting as a lawyer; (3) if the communication relates to a fact where the attorney was privately informed for the purpose of obtaining legal advice; and (4) if the privilege has been claimed and not waived. *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d. Cir. 1979).

"[B]ecause the attorney-client privilege has the effect of withholding potentially relevant information, courts must apply it only where it is necessary to achieve its purpose." *Id*. Moreover, "[t]he party asserting attorney-client privilege has the burden of proving that the privilege applies." *Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*, 3:16-CV-00897, at *7 (M.D. Pa. Feb 14, 2020) (citing *Matter of Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 474 (3d.

Cir. 1979)). "The attorney-client privilege can be waived if privileged information is communicated to outside parties." *U.S. v. Rockwell International*, 897 F.2d 1255, 1265 (3d Cir. 1990).

Here, Defendants refuse to disclose documents by hiding behind the attorney-client privilege because federal case law makes clear the privilege is limited to certain, narrow circumstances. "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). Defendants bear the burden to show that this privilege applies and how the privilege, *as applied by federal common law*, overcomes the plain text of the NVRA. The records requested, including among other things the identity of the expert who performed the noncitizen voter analysis, the methodology and work involved, the results of analysis, and the identity of the databases used, are public records documented in the ordinary course of voter registration and management. As explained in Defendants' press release, "[t]he Department retained an expert to conduct a full analysis of registration data by comparing the voter rolls with other available state databases. The initial analysis yielded a responsible list of Individuals for whom voter registration status required further confirmation." ECF 64-1, Exhibit D. This admission makes it clear that these records were made in the ordinary course of voter registration and management and not made or communicated (1) to a lawyer and (2) for the purpose of obtaining legal

advice; thus, these records fail at least two prongs of the four-prong test the Third Circuit has articulated is necessary to invoke the privilege. *See In re Grand Jury Investigation*, 599 F.2d at 1233. In sum, courts are reluctant to read the privilege more broadly than absolutely necessary, and Defendants have not even attempted to convince the Court to do so here. The attorney-client privilege should be confined within the narrowest possible limits, and documents in the ordinary course of voter registration and maintenance cannot reasonably reside within the clearly defined confines of the privilege.

Second, government attorney-client privilege is different and more narrow than private attorney-client privilege. This is "[b]ecause the attorney-client privilege must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle'. . . and because the government privilege is not recognized in the same way as the personal attorney-client privilege." *In re Lindsey*, 158 F.3d 1263, 1272 (D.C. Cir. 1998) (internal citations omitted). When at least "some" of the conversations or documents allegedly covered by government attorney-client privilege do not meet the aforementioned four-prong test, "*any* legal advice . . . likely could not [be] covered by government attorney-client privilege," which is even more stringent. *Id*. at 1270 (emphasis added). Here, Defendants do not and cannot assert that *all* the disputed records relating to voter registration and maintenance come within the confines of the four-prong test relating to private attorney-client privilege,

11

meaning they cannot meet the even higher burden required to meet the government attorney-client privilege claims. *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed."). Defendants present *no argument* to overcome the more complex considerations of government attorney-client privilege which apply when entities work within the public trust, and not merely in a private, commercial setting. *See In Re Grand Jury Supoena Duces Tecum*, 112 F.3d 910, 921 (8th Cir. 1997) (stating that allowing the government to use government attorneys to shield a production of information would represent a "gross misuse of public assets" and counteract the "strong public interest in honest government"). The same strong public interest in honest government supports Plaintiff's arguments here. *Id.*

Third, attorney-client privilege must be asserted on a document-by-document basis, "rather than as a single, blanket assertion." *Rockwell*, 897 F.2d at 1265; *see also Lord*, 2019 WL 582935, at \*3; *Warluft v. Milton Hershey School and School Trust*, 2018 WL 3995697, at \*6 (M.D. Pa. Aug. 21, 2018) ("[W]hen addressing legal questions regarding whether the attorney client or work product privileges apply to particular documents we are cautioned to eschew any categorical approach which cloaks or rejects the privilege in a wholesale fashion without regard to the specific content of particular documents."). Defendants have not identified each document

and claimed attorney-client privilege on specific bases, which they must do to provide Plaintiff the opportunity to challenge privilege claims. *Id.* (describing elements the party claiming privilege must include in a privilege log). Defendants' privilege claims should be rejected.

### B. The Work Product Doctrine Does Not Prohibit Disclosure of the Requested Documents

Additionally, the work product doctrine does not apply to the requested records because the records are factual in nature and created in the ordinary course of voter registration, retention, and maintenance. "The law is clear that 'documents prepared in the regular course of business rather than for purpose of the litigation are not eligible for work-product protection, even if the prospect of litigation exists.'" *United States ex rel. Lord v. NAPA Management Servs. Corp.*, 2019 WL 5829535, *4 (M.D. Pa. Nov. 7, 2019) (internal citations omitted). Courts within the Third Circuit have "adopted a 'two-part test for ascertaining whether the documents (or things) at issue should be protected under the [work-product doctrine].'" *Id*. at *7 (quoting *CDK Global, LLC v. Tulley Automotive Group Inc.*, 2018 WL 4259843, *4 (D.N.J. June 28, 2018)).

"The *first inquiry* is the 'reasonable anticipation test,' which requires that the court determine whether litigation could reasonably have been anticipated." *Id*. (emphasis added). "[T]he relevant inquiry is 'whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be

said to have been prepared or obtained because of the prospect of litigation.'" *Id*.
"[A] party must show more than a 'remote prospect,' an 'inchoate possibility,' or a
'likely chance of litigation." *In re Gabapentin Patent Litigation*, 314 F.R.D. 178,
183 (D. N.J. 2003) (*quoting Harper v. Auto-Owners Insurance Co.*, 138 F.R.D. 655,
659 (S.D. Ind. 1991)). "Although the litigation need not be imminent, 'there must be
an identifiable specific claim of impending litigation.'" *United States ex rel. Lord*,
2019 WL 5829535 at *4 (internal citations omitted). "The mere involvement of,
consultation with, or investigation by an attorney does not, in itself, evidence the
'anticipation of litigation.'" *In re Gabapentin Patent Litigation*, 314 F.R.D. at 183.
"Neither will the mere fact that litigation actually occurred establish that documents
prepared before the litigation were created in anticipation thereof." *Id.*

The second prong of the test is whether, "the material [was] produced because
of the prospect of litigation *and for no other purpose*." *Id.* at 184 (emphasis added).
"Documents created for other purposes that prove useful in subsequent litigation are
not attorney work product." *Id*. "Accordingly, documents created in the ordinary
course of business, even if useful in subsequent litigation, are not attorney work
product." *Id*. Further, the "articulable claim likely to lead to litigation *must pertain
to this particular party*, not the world in general." *Id. (quoting McCook Metals
L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242 259 (N.D. Ill. 2000)) (emphasis added).

Here, under the first prong, the Court must determine if the requested records can fairly be said to have been prepared or obtained because of "an identifiable specific claim of impending litigation." This means that Defendants' expert's analysis and any noncitizen matching analysis-related records, among other records, must have been created *specifically in relation to an impending lawsuit, not a likely chance of litigation*. While Defendants may have retained outside counsel in response to the software error in anticipation of litigation *generally*, Defendants' investigation into noncitizen registration started more than two years before PILF requested any records. *See* Exhibit F at 3 (September 2015 entry); Doc. 66-1 at 115:2-7. As Defendants admit, "any number of sources" could have been the reason for expert retention as opposed to "the instant action." Defendants' Memorandum of Law in Opposition to Plaintiff's Mot. for Summary Judgment, 20, No. 1:19-CV-00622; *Fox v. Lackawanna Cty.*, 2018 WL 4095854, at *4 (M.D. Pa. Aug. 27, 2018). This admission alone along with the admissions made in the previously cited press release confirm that the requested records were not prepared or obtained because of identifiable and specific litigation and are, thus, not attorney work product.

An analysis as to the second prong here buoys the conclusions for the first. The records regarding an investigation by Pennsylvania and remedial efforts taken because of that investigation were not created primarily for purposes of litigation, even if Pennsylvania finds them useful for that purpose. The requested records were

created to determine the extent to which the glitch allowed non-citizens to have impermissibly been included in Pennsylvania's voter rolls and to help remediate the error. Further, these records could not have been created specifically pertaining to future *litigation by Plaintiff*, as Plaintiff did not make their records requests until *two years after* Pennsylvania created these records. And PILF only sued to obtain records about the voter registration issue, not because of the problem itself. Each attempt by Defendants to withhold the requested documents and communications in contravention of the NVRA fails because it does not meet the two-prong test for work-product privilege.

The records withheld by Defendants do not fall under the work-product privilege, and, in any event, the NVRA does not provide a disclosure exception for alleged attorney work-product privileged information. 52 U.S.C. § 20507(i)(2). The only additional exceptions to the NVRA's disclosure provisions courts have recognized involve protecting highly sensitive voter data. The expert documents, data, and analysis Pennsylvania withhold here under the guise of work product privilege protections do not fall within the NVRA's recognized statutory disclosure exceptions, are withheld contrary to the NVRA's stated purposes, and dramatically depart from the limited privacy exceptions recognized by the courts to date. If Congress wishes to grant sweeping exceptions that swallow the rule, it may do so. It

is not for the courts, or states, to contravene the federal legislative process for their own ends.

### III.   FOIA and the NVRA Counsel in Favor of Disclosure of the Requested Documents

While FOIA and the NVRA create different statutory schemes for disclosure of government documents, both statutes were designed to facilitate transparency in government, place the burden of proving a disclosure exemption on the government, and have narrow exemptions to disclosure for private information. This Court should find instructive the way courts have treated government claims of privilege under FOIA as a model for how to analyze Pennsylvania's claims of attorney-client privilege under the NVRA here.

FOIA was enacted by Congress "to facilitate public access to Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). "FOIA creates a presumption favoring disclosure," *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1163 (3d Cir. 1995), and "reflect[s] a general philosophy of full agency disclosure." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citing *Dept. of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)).

Similarly, the NVRA promotes transparency and embodies Congress's "conviction" that the right to vote must not be sacrificed to "administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2011). The statute includes a mandatory directive

requiring states to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). The burden of disclosure is on states to disclose information or justify any exemption, and Defendants' suggestions otherwise ring hollow. *Id.*

Defendants argue that the NVRA's lack of a specific burden-shifting provision somehow automatically shifts the burden on Plaintiff to prove the inapplicability of an exemption, *see* ECF 73 at 8-9. But the NVRA's broad disclosure language (states "shall make available for public inspection . . . all records") and the fundamental purpose of the NVRA strongly support the argument that the onus is on the states to explain why they believe they can refuse to disclose certain requested information. Further, unlike FOIA, the NVRA does not even require individuals to request information, simply mandating that states make available such information for public inspection. The NVRA specifically contemplates a regime where information disclosure, even without request, is the rule, and the state has the burden to justify withholding any information that should have been otherwise made available.

Like the NVRA's two narrow statutory exceptions, under FOIA, the government must prove that any records and information it withholds fall within one

of its enumerated statutory exemptions for disclosure. 5 U.S.C. § 552(a)(4)(B). The

agency has the burden of showing that a statutory exemption applies. *McDonnell v.*

*United States*, 4 F.3d 1227, 1257 (3d Cir. 1993). And this requirement makes sense,

as, with both the NVRA and FOIA, the government entity possesses and is best able

to analyze information to argue and prove whether an exemption applies. Requestors

should not be forced to guess at the content of particular information and argue

against the application of limited exemptions to its disclosure in a vacuum, which

would be the practical impact of Defendants arguments here.[1]

Because FOIA's purpose is rooted in disclosure, courts have consistently

refused attempts to invoke the attorney-client privilege when complying with FOIA

requests if the privilege is too vague or broad. For instance, the privilege does not

apply to agency records which were intended to be confidential at the time they were

made absent assertion or proof that the matter discussed in the documents remained

confidential or that the documents were circulated only to those in the agency

authorized to speak or act for the agency on the subject matter of the

communications. *Com. Of Pa., Dept. of Public Welfare v. U.S. Dept. of Health and*

*Human Servs.*, 623 F. Supp. 301, 305-06 (M.D. Pa. 1985) (interpreting attorney-

---

[1] Under FOIA, the agency must also "consider whether partial disclosure of
information is possible whenever the agency determines that a full disclosure of a
requested record is not possible . . . and take reasonable steps necessary to segregate
and release nonexempt information." 5 U.S.C. § 552(a)(8)(A).

client privilege in the FOIA context even after government agency had specified each document to be protected by the privilege). Files subject to review by members of the agency *outside of those directly responsible* for the information are grounds to overcome a claim of attorney-client privilege. *Scott Paper v. U.S.*, 943 F. Supp. 489, 499 (E.D. Pa. 1996) (emphasis added). Conclusory allegations of privilege do not suffice, as to invoke the privilege agencies must establish both that that the communications were confidential when created *and* have retained their confidential status. *Cuban v. S.E.C.*, 744 F. Supp. 2d 60, 79 (D.D.C. 2010). "If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential." *Id.* at 80 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.D.C. 1980)).

Applying the same logic here, to invoke attorney-client privilege Defendants should be required to show that each specific document requested has remained confidential and narrowly available only to those responsible for the information. Generalized "[b]oilerplate" invocations of the privilege, as Defendants have made, "fail 'to tailor the explanation to the specific document withheld'" and are insufficient. *Electronic Frontier Foundation v. Dep't of Justice*, 2016 WL 7406429, *7 (N.D. Cal. Dec. 22, 2016) (quoting *Wiener v. F.B.I.*, 943 F.2d 972, 978 (9th Cir. 1991)). Courts interpreting FOIA have found that claiming that a document contains "confidential legal advice," without more, is not enough. *Id.* at *7; *see also Am. Civil*

*Liberties Union of N. Cal. v. Dep't of Justice*, 2015 WL 4241005, at *4 (N.D. Cal. July 13, 2015). This means that Defendants' bold and sweeping statement that "[c]ommunications between the Department and outside counsel are privileged and not required to be disclosed" without further elaboration does not pass muster. Defendants' Mem. of Law in Opposition at 14.

Under FOIA, agencies are prohibited "from treating their policies as private information." *Nat'l Immigration Project v. Dep't of Homeland Sec.*, 842 F.Supp.2d 720, 729 n. 10 (S.D.N.Y.2012). Further, under FOIA, privileged information must concern the government agency itself rather than mere information surrounding the legal obligations of the agency or individuals with whom the agency has non-public information. *Nat'l Immigration Project of National Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 297-98 (S.D.N.Y. 2012) (holding that the United States Immigration and Customs Enforcement (ICE) could not invoke the attorney-client privilege to withhold from disclosure under FOIA legal advice regarding parole information relating to deported aliens and could not "invoke the workproduct privilege with respect to communications that merely describe the implementation of its policy."). Applying the privilege here, Defendants cannot assert privilege over records that solely include the Department's external obligations under the NVRA or their list maintenance policies.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Summary Judgment.

Dated: September 22, 2021                    Respectfully submitted,

By: /s/ Harmeet K. Dhillon

Harmeet K. Dhillon (*pro hac vice*)
Karin Sweigart
DHILLON LAW GROUP INC.
177 Post Street, Ste. 700
San Francisco, CA 94108
(415) 433-1700
harmeet@dhillonlaw.com
ksweigart@dhillonlaw.com

*Counsel for Republican National Committee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.8(b)(2), I certify that the attached brief complies with

the word count limit in Local Rule 7.8(b)(2) and contains 4,932 words.


Dated: September 22, 2021                    */s/ Harmeet K. Dhillon*
                                             Harmeet K. Dhillon (*pro hac vice*)
                                             *Counsel for Republican National*
                                             *Committee*

## CERTIFICATE OF SERVICE

I certify that on September 22, 2021, I electronically filed the foregoing Motion and Amicus Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

Dated: September 22, 2021                       */s/ Harmeet K. Dhillon*
                                                    Harmeet K. Dhillon (*pro hac vice*)
                                                    *Counsel for Republican*
                                                    *National Committee*