# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:19-CV-00622 |
| | : | |
| LEIGH M. CHAPMAN, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, | : | JUDGE CONNER |
| | : | |
| | : | ELECTRONICALLY FILED |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION

## INTRODUCTION

Pursuant to the Memorandum and Order issued on March 31, 2022 (ECF 83, 84) which granted, in part, and denied, in part, the parties' respective motions for summary judgment, certain additional records appear to be subject to disclosure to Plaintiff The Public Interest Legal Foundation ("PILF") pursuant to the public disclosure provision in the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i)(1). After careful review of the decision, however, it is not sufficiently clear which specific additional records are required to be disclosed and which personal information should be redacted from those records. Accordingly, to avoid

further dispute, Defendants Acting Secretary of the Commonwealth Leigh M. Chapman and Deputy Secretary for Elections and Commissions Jonathan M. Marks (referred to collectively herein as "the Department of State" or "Department") respectfully request that the Court clarify parts of its decision concerning required additional disclosures. In addition, the Department of State requests that the Court reconsider its conclusion that material reviewed by a consulting expert is not protected by the work product doctrine. The Department respectfully submits that this is not a correct conclusion of law and should be reconsidered for the reasons below.

## ARGUMENT

### I. Clarification Is Needed Concerning Specific Voter Information Required To Be Produced in Response to PILF's Request.

A motion for clarification is appropriately granted to eliminate ambiguity from a court ruling. *See, e.g.*, *Montgomery Cnty. v. Microvote Corp.*, No. 97-6331, 2000 WL 341566, at *1 (E.D. Pa. Mar. 31, 2000) (motion for clarification "appropriate" to disambiguate part of opinion that "appears confusing").[1] Clarification is needed here to resolve ambiguity regarding which specific voter information is required to be disclosed in response to PILF's request.

---

[1] The unpublished decisions cited herein are reproduced in the attached Appendix pursuant to Local Rule 7.8(a).

2

In its Memorandum, the Court determined that the analysis by the expert retained by the Department of State's outside counsel was in anticipation of litigation, Mem. at 17-19, and that "the work-product doctrine shields the records produced in conjunction with the [expert's] noncitizen matching analysis from disclosure," *id.* at 20. The Court added in a footnote, however, that "the thousands of letters sent to potential noncitizen registrants based upon the results of the noncitizen matching analysis" are not protected by the work product doctrine, *id.* at 20 n.11, thereby seeming to suggest that unredacted letters are required to be disclosed. Any such direction, however, appears to conflict with the Court's direction in footnote 7 on page 15 that "[t]he Commonwealth may redact the private personal information outlined in *N.C. State Bd. of Elections*"—defined to include "personal information of citizens initially identified as potentially failing to meet the citizenship requirement for voter registration but ultimately exonerated"—"from records disclosed under the NVRA." *Id.* at 15 n.7.

Footnotes 7 and 11 can be harmonized and read together to require disclosure of letters sent to potential noncitizen registrants following redaction of the names, addresses and other personal information of persons who received the letters and who either affirmed their eligibility to vote or were not confirmed to be noncitizens. Accordingly, the Department seeks to clarify that the names, addresses and identifying information for persons who received "the thousands of

letters sent to potential noncitizen registrants" should properly be redacted consistent with the privacy protections identified in the Court's Memorandum.[2]

Further, the Department seeks clarification as to whether personal identifying information concerning recipients of the letters who subsequently canceled their voter registrations is required to be disclosed. PILF's NVRA request sought "[d]ocuments regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration . . .," including "actions taken regarding the registrant's registration (if any) . . . ." Mem. at 5-6. The cancelation form included with the letters sent to registrants (a copy is reproduced with Exhibit B) includes no reason for canceling a voter's registration. Accordingly, a registrant who requested cancelation using the enclosed form did not represent that he or she was a noncitizen. Given the absence of proof of noncitizen status, and out of recognition that privacy rights must be balanced with the disclosure obligations in the NVRA, *see, e.g.*, Mem. at 14-15; *see also Public Interest Legal Found. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021), the Department seeks clarification with respect to whether the names and

---

[2] The letters were the product of a mail merge process and, as a result, there are no copies of the letters that can be disclosed. The form letters, however, have already been provided to PILF. (The form letters are reproduced at ECF 64-1 at Exs. A & B to the Marks Declaration and are attached hereto as Exhibits "A" and "B.") If the identities of the recipients are required to be disclosed, any disclosure would consist of a list of recipient names and addresses.

4

personal identifiers of persons who canceled their registrations after receiving letters are required to be disclosed in response to PILF's request and, if disclosure is required, the Department requests that the Court clarify that the completed cancelation requests are not admissions that the persons are not U.S. citizens.[3]

Accordingly, to avoid a dispute over what is required by the Court's ruling, the Department respectfully requests that the Court clarify that (1) the names, addresses and other personal identifying information of letter recipients who were not confirmed to be noncitizens may properly be redacted and need not be disclosed, and (2) the names, addresses and other personal identifying information of letter recipients who returned general cancelation requests may properly be redacted and need not be disclosed or, in the alternative, that the Court declare that the completed cancelation forms are not proof of non-citizenship.

## II. Clarification Is Needed as to Whether the Entire SURE Database Is Required To Be Produced in Response to PILF's Request.

While the Court's ruling is clear that the voting histories for the 1,160 registrants who requested cancelation due to lack of citizenship are required to be

---

[3] The Department understands the Court's Memorandum as requiring disclosure of the names and voting histories of the 1,160 registrants who self-canceled their voter registrations because they were noncitizens. Mem. at 20-22. This request for clarification relates instead to the 215 individuals who were among the 11,198 who received letters requesting that they affirm their eligibility to vote and who returned general forms requesting cancelation that made no reference to citizenship or lack thereof. *See* ECF 64-1, Marks Decl., at Ex. D.

5

disclosed in response to PILF's request, Mem. at 20-22, the Conclusion to the Memorandum seems to suggest that the **_entire_** SURE database must also be disclosed, *id.* at 26 ("PILF has met its Rule 56 burden regarding its first request to the extent that the SURE database is subject to disclosure . . . ."). The Department seeks clarification with regard to whether the entire secure database is required to be publicly disclosed.

      The SURE system is the platform that supports various state functions including voter registration, voter list maintenance, precinct identification, production of poll books and absentee and mail-in balloting. It contains numerous tables and within those tables are thousands of columns of data related to millions of active, inactive and cancelled registrants. The SURE database constitutes critical election infrastructure and is securely protected against external threats to Commonwealth elections. It includes an array of private voter information that is not fairly responsive to PILF's request and cannot reasonably have been intended to fall within the scope of the NVRA's public disclosure provision, including, *inter alia*, social security numbers for every registered voter in the Commonwealth, protected driver license numbers and digitized and electronic signatures that are specifically protected from disclosure by 25 Pa. C.S.A. § 1404(a)(3). Redacting sensitive private information and other information unrelated to voter registration would require creation of an entirely new database and substantial cost and effort.

The NVRA cannot reasonably be construed as requiring creation of such a new repository of records.

Accordingly, the Department seeks clarification that the Memorandum does not require disclosure of the entire secure SURE database, but rather disclosure of names, voting histories and other data in the SURE system (consistent with the limitations in footnote 7) concerning registrants who canceled their voting registrations because they identified as noncitizens. Alternatively, the Department requests clarification that production of the public information list, also known as the Full Voter Export, will satisfy the direction in the Memorandum to produce records from the SURE database.[4]

### III. Reconsideration Is Warranted With Respect to the Court's Statement That the Work Product Doctrine Does Not Apply to Records Provided to a Consulting Expert.

In footnote 11 of the Memorandum, the Court noted that its ruling that the Department of State's expert analysis is protected by the work product doctrine does not extend to "records used by the expert to conduct their analysis." Mem. at 20, n.11. The Department respectfully disagrees and requests that the Court reconsider this statement to correct a clear error of law and prevent manifest

---

[4] The Public Information List or Full Voter Export includes, *inter alia*, each voter's name, date of registration, status, date of last status change, date last voted and voter history. PILF has separately received from the Department of State copies of the Full Voter Export.

7

injustice. *See Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration may be granted, *inter alia*, "to correct a clear error of law or fact or to prevent manifest injustice") (citation omitted).

More than 75 years ago, the Supreme Court made clear that the work product doctrine protects information prepared by or for lawyers in anticipation of litigation. *See Hickman v. Taylor*, 329 U.S. 495 (1947). The Court recognized that, "[i]n performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy . . . Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 510-11. The work product protection extends to consulting experts retained by counsel and protects against disclosure of communications with and documents provided to consulting experts by counsel which reflect counsel's mental impressions, opinions and legal theories. *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 667-68 (3d Cir. 2003) ("Discovery of this information goes to the core of the work product doctrine . . . ."). The doctrine is codified in Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure which protects against compelled disclosure of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation . . . and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D).

The federal courts have uniformly held that materials considered by a consulting expert are not discoverable. *See*, *e.g.*, *Brasfield & Gorrie, LLC v. Hirschfeld Steel Grp. LP*, No. 2:20-cv-00984-LSC, 2021 WL 5449203, at *5 (N.D. Ala. Nov. 22, 2021) (finding requests for documents reviewed and evaluated by non-testifying expert improper because they "relate precisely to [expert's] role as a non-testifying expert engaged in anticipation of litigation"); *Employees Committed for J. v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008) ("When an expert is retained as a litigation consultant . . . materials reviewed or generated by the expert are generally privileged and immune from disclosure."); *Plymovent Corp. v. Air Tech Sols., Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007) ("Rule 26(b)(4)(B) . . . creates a safe harbor whereby facts and opinions of nontestifying experts are shielded from discovery, except upon a showing of exceptional circumstances."); *SEC v. Reyes*, No. 06-04435, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) ("[T]he work-product privilege generally applies to materials reviewed or generated by [consulting experts] in that capacity.") (citing, *inter alia*, *In re Cendant Corp.*, 343 F.3d at 662-65); *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1152 (N.D. Ill. 2001) ("[D]efendant is prohibited from eliciting the testimony or records of [a non-testifying expert] regarding the opinions he developed or information he acquired . . . in anticipation of litigation.").

The Department respectfully submits that the Court erred in concluding that records used by the consulting expert retained by the Department's outside counsel are not entitled to the same protection afforded to the expert's analysis and other work product. The Department requests that the Court reconsider this part of the Memorandum to correct this clear error of law and prevent manifest injustice.[5]

## **CONCLUSION**

For the reasons above, the Court should clarify that (1) the names, addresses and other personal identifying information of letter recipients who were not confirmed to be noncitizens may properly be redacted and need not be disclosed, (2) the names, addresses and other personal identifying information of letter recipients who returned general cancelation requests may properly be redacted and need not be disclosed or, alternatively, the Court should declare that the completed cancelation forms are not proof of non-citizenship, and (3) the entire SURE database need not be disclosed, but rather the Department may comply with the Court's Memorandum by providing the Full Voter Export. Further, the Court should reconsider its statement that material reviewed by a consulting expert is not

---

[5] If records reviewed by a consulting expert retained by the Department of State's outside counsel were deemed to be subject to public disclosure, such a ruling would further necessarily implicate privacy concerns, Mem. at 14-15 & n.7, and statutory protections, including the Driver's Privacy Protection Act, 18 U.S.C. § 2721, which cannot be fully litigated without exposing protected work product. Acknowledging that records reviewed by a non-testifying expert are protected work product would avoid this untenable circumstance.

protected by the work product doctrine and should instead direct that such material constitutes work product and is not required to be disclosed to PILF.

        Respectfully submitted,

        <u>/s/ Donna A. Walsh</u>
        Daniel T. Brier
        Donna A. Walsh
        Suzanne P. Conaboy

        Counsel for Defendants,
        Acting Secretary of the Commonwealth
        Leigh M. Chapman and Deputy Secretary
        for Elections and Commission Jonathan M.
        Marks

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: April 14, 2022

# CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Clarification and Partial Reconsideration was served upon the following counsel of record via the Court's ECF system on this 14th day of April 2022:

> Kaylan Phillips, Esquire
> Noel H. Johnson, Esquire
> Public Interest Legal Foundation
> 32E Washington Street, Suite 1675
> Indianapolis, IN 46204
>
> Linda A. Kerns, Esquire
> Law Offices of Linda A. Kerns, LLC
> 1420 Locust Street, Suite 200
> Philadelphia, PA 19102

/s/ Donna A. Walsh
Donna A. Walsh