IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:19-CV-00622 |
| | : | |
| LEIGH M. CHAPMAN, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, | : | JUDGE CONNER |
| | : | |
| | : | ELECTRONICALLY FILED |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## REPLY IN FURTHER SUPPORT OF MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION

Contemporaneously with this filing, the Department of State made a supplemental production of information in response to Plaintiff The Public Interest Legal Foundation's ("PILF") request for records under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i). Specifically, the Department provided a listing of all persons whose voter registrations were canceled and whose records show the reason for the cancellation was due to non-citizenship (1,363) and voting histories, if any, for each canceled registrant. The Department also produced a list of registrants who received the June 12, 2018 letter and whose registrations were canceled due to non-citizenship (93) and the voting histories, if

any, for those registrants.[1] The supplemental production informs and provides new relevant context for the pending motion for clarification.[2]

> A. **The Department Should Not Be Required To Disclose the Names of Persons Who Received Letters and Did Not Identify as Non-Citizens.**

PILF reads the Court's ruling broadly to require disclosure of the names of all registrants who received the June 12, 2018 letter concerning voter qualifications and who did not return the letter certifying satisfaction of those qualifications because, in its view, such persons were not "exonerated" and are assumed to be non-citizens. Opp'n Br. at 5. PILF's viewpoint is inconsistent with the protocol that was followed in *NC State Bd. of Elections,* which this Court endorsed. Mem. (ECF 83) at 15 n.7. Further, PILF's argument misunderstands the purpose for the

---

[1] The Department has advised PILF that information concerning the reason for any particular voter registration cancellation must be verified with county election officials who process cancellations. The data recorded by county election officials in the Statewide Uniform Registry of Electors ("SURE") system is transactional data that changes over time. For example, a registrant who canceled a registration may later re-register. In addition, some cancellations categorized as due to non-citizenship were triggered by notice from registrants that they had changed addresses—*i.e.* they gave notice of *non-residence* rather than *non-citizenship*. In many cases, registrations were canceled without any record in the SURE system as to why or how county officials concluded the registrant was a non-citizen. Accordingly, the Department of State strongly cautions against drawing conclusions about any individual's status, knowledge or intent without further validation.

[2] The Department is processing additional responsive material from the SURE system to further supplement this production to PILF.

letters and its position, if adopted, would result in unnecessary intrusion on the privacy interests of registrants.

In ruling on the cross-motions for summary judgment, at PILF's suggestion, the Court endorsed the redaction protocol in *N.C. State Bd. of Elections*, another case involving PILF and a request for records under the NVRA. Mem. at 15 n.7. PILF argues here that the protocol in that case required disclosure of personal information regarding registrants who were identified as potentially failing to satisfy the citizenship requirement and who were not later exonerated. *Id.* at 4-5 & n.2. But that was not the ruling in *N.C. State Bd. of Elections*. The Fourth Circuit recognized in that case that "sensitive information" not subject to disclosure under the NVRA "would include the identities and personal information of those subject to criminal investigations, ***and*** those United States citizens who were once identified by the Board as 'potentially' failing to satisfy the citizenship requirement but later were exonerated." *Public Interest Legal Foundation, Inc. v. N.C. State Bd. of Elections* 996 F.3d 257, 267 (4th Cir. 2021) (emphasis added). North Carolina officials expressed willingness to devise a system of redaction to protect this information and, on this basis, the Fourth Circuit remanded the matter to the district court to "delineate any redaction protocols consistent with the NVRA necessary to protect sensitive information, ***including*** the names of those citizens identified by the Board as potential noncitizens." *Id.* at 268 (emphasis added).

The Court directed that "identities and personal information of individuals who potentially committed criminal offenses, including those who later were determined to be United States citizens, . . . must be redacted." *Id.* at 259. *N.C. State Bd. of Elections* thus protects the identities of persons suspected of being noncitizens and persons who were investigated and later exonerated.

Importantly, the protocol that was agreed to after remand in *N.C. State Bd. of Elections* specifically required redaction of names of persons identified as potentially not satisfying the citizenship requirement. The Settlement Agreement and Release dated January 18, 2022 (attached as Exhibit "A") provides that records relating to the "Noncitizen Audit Process"—defined to mean the process of comparing "voter and election record with various government databases to identify potentially ineligible voters and irregularities due to lack of U.S. citizenship"—were to be redacted to eliminate "all information that would permit the recipient to personally identify ***any individual registrant***, including names, dates of birth, Social Security numbers, driver's license numbers, phone numbers, email addresses, street addresses, signatures, and identifying numbers used for registration and voting purposes." Settlement Agreement and Release, ¶ II.D (emphasis added). This same protocol should be applied here.

PILF advocates for a different process in this case because, in its view, any person "not confirmed" to be a citizen was not "exonerated" of illegal activity. Br.

4

at 5. This argument misapprehends the Department of State's purpose in sending the letters and what registrants were asked to do. The letter (attached to the Department's Supp. Br. as Exhibit B) advised recipients that the Motor Voter system may have allowed non-citizens to inadvertently register to vote and asked that the recipients verify their eligibility or cancel their registration. The letter stated that "[f]ailure to respond will likely result in further action regarding your voter registration." (Emphasis omitted.) The letter did not warn that lack of a response would be deemed an admission that the recipient was not a U.S. citizen. But that is how PILF reads the letter—that failure to respond means the registrant was not "exonerated." This is patently unreasonable. It is also contrary to the very wording and spirit of the letters sent to registrants.

PILF proposes that disclosure of the recipients' names is not a concern because the Department of State made no reports to law enforcement in connection with the letters, Br. at 4, but the potential for harassment and embarrassment and other personal and professional repercussions continues—the precise concerns that redaction of personal identifiers was intended to protect against. *See generally N.C. State Bd. of Elections*, 996 F.3d at 267.

PILF itself has demonstrated the risks inherent in disseminating such information. Notably, PILF published reports claiming that non-citizens illegally registered to vote and voted. *See*, *e.g.*, *Steeling the Vote: Allegheny County*

5

*Reveals How Citizenship Verification Protects Citizens and Immigrants Alike*, available at https://publicinterestlegal.org/reports/steeling-the-vote-allegheny-county-reveals-how-citizenship-verification-protects-citizens-and-immigrants-alike/ (last visited November 11, 2022). One of PILF's publications led to federal civil rights litigation brought on behalf of registrants who claimed they were incorrectly identified as non-citizens. *See League of United Latin American Citizens, et al. v. Public Interest Legal Foundation, et al.*, No. 18 CV 423 (E.D. Va.). As the Fourth Circuit recognized in *N.C. State Bd. of Elections*, "[b]eing improperly identified as a noncitizen . . . could have long-standing personal and professional repercussions." 996 F.3d at 267. Those repercussions are properly avoided by permitting redaction of the names and personal identifiers of letter recipients who were not confirmed to be noncitizens.

The Department respectfully requests that the Court clarify that the names, addresses and other personal identifying information of all letter recipients who were not confirmed to be non-citizens need not be disclosed and may be redacted consistent with the protocol agreed to by PILF in *N.C. State Bd. of Elections*.

> **B.     The Department Should Not Be Required to Disclose the Names of Persons Who Submitted General Cancellation Requests.**

As noted above, in response to PILF's request and pursuant to the Court's ruling, the Department has provided a list of the registrants whose voter registrations were canceled and whose records show that the reason for the

6

cancellation was non-citizenship. PILF is asking the Court to go much further and compel the disclosure of the names of persons who received letters and canceled their registrations without giving a reason for the cancellation. Br. at 6-7. The Department seeks clarification that no such production is required.

PILF assumes that any cancellation after receipt of the letter must be due to non-citizenship, Br. at 6-7, but this assumption is unfounded. The general cancellation form (attached to the Department's Supp. Br. as Ex. B) lists no reason for cancellation, and, for this reason, the Department seeks clarification that, if the forms are required to be disclosed, the completed forms shall not be deemed an admission of non-citizenship. That PILF seems to insist otherwise proves the need for clarification. Contrary to PILF's argument, Br. at 1, lack of consensus on this important point is a proper basis for a motion for clarification. *See*, *e.g.*, *Montgomery Cnty. v. Microvote Corp.*, No. 97-6331, 2000 WL 341566, at *1 (E.D. Pa. Mar. 31, 2000) (motion for clarification "appropriate" to disambiguate part of opinion that "appears confusing").[3]

In the event the Court requires production of the general cancellation requests, the Department seeks, in the alternative a declaration that the completed cancellation forms are not legal proof of non-citizenship.

---

[3] The unpublished decisions cited herein are reproduced in the attached Appendix pursuant to Local Rule 7.8(a).

### C. PILF Is Not Seeking the Entire SURE Database.

PILF concedes that it "has not requested access to the *entire* SURE database." Br. at 8. Accordingly, the Department respectfully requests clarification that, notwithstanding the reference to the SURE database on page 26 of the Court's Memorandum, the entire database is not required to be disclosed but instead only names, voting histories and communications in the SURE system (consistent with the limitations in footnote 7) concerning registrants whose registrations were canceled due to non-citizenship are required to be disclosed.

### D. The Work Product Doctrine Protects Against Disclosure of Information Provided to a Consulting Expert.

As the Department detailed in its opening brief, records provided to a consulting expert are protected under the work product doctrine and Fed. R. Civ. P. 26(b)(4)(D) and, therefore, their production cannot be compelled. PILF offers nothing that would support a different result.

The Court has already found—and PILF does not challenge—that counsel for the Department retained a consulting expert in anticipation of litigation and that the records produced in conjunction with the expert's analysis are protected from disclosure by the work product doctrine. Mem. at 19-20. The question is whether the compendium of records that outside counsel confidentially provided to the consulting expert are also protected work product. The Department respectfully submits there can be no dispute that the selection and compilation of documents by

counsel in preparation for anticipated litigation is protected by the work product doctrine. *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985). The law is clear that the work product doctrine "protects from discovery materials prepared or collected by an attorney 'in the course of preparation for possible litigation.'" *In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir. 1979) (quoting *Hickman v. Taylor*, 329 U.S. 495, 505 (1947)). Communications with and documents provided to a consulting expert "reflect the mental impressions, opinions, conclusions, and legal theories" of counsel and therefore "[d]isovery of this information goes to the core of the work product doctrine. . . ." *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 667-68 (3d Cir. 2003).

PILF does not address *Hickman* or *Cendant* in its opposition brief and cannot avoid the consequence of straightforward application of this authority here. Instead, PILF quibbles with application of Rule 26(b)(4)(D), which precludes discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D); *Sporck*, 759 F.2d at 316 ("The work product doctrine as articulated in *Hickman* has been partially codified in Federal Rule of Civil procedure 26(b)(3).") None of its arguments have merit.

PILF first claims that Rule 26(d)(4)(D) applies only to "interrogatories and deposition." Br. at 10. Decisions in this Circuit hold otherwise. In *In re Painted Aluminum Prods. Antitrust Litig.*, No. 95-CV-6557, 1996 WL 397472 (E.D. Pa. July 9, 1996), the Court rejected PILF's narrow reading of the rule and observed that "it is by now a truism that the various discovery devices function as an integrated system, and that in deciding the limits of privilege, we should treat the various devices similarly." *Id.* at *1 (citations omitted). Similarly, in *Plymovent Corp. v. Air Tech. Sols.*, 243 F.R.D. 139, 144 (D.N.J. 2007), the Court rejected the suggestion that work product protection can only be invoked in interrogatory responses and depositions, explaining that, if this argument were accepted, "any party could completely circumvent Rule 26(b)(4)(B) simply by serving a document subpoena." *Id.* at 143-44. The *Plymovent* Court went on to say that "[c]ompelling disclosure of documents would have the same chilling effect on free consultation between a retaining party and its expert as compelling a deposition or answers to interrogatories." *Id.* at 144.[4]

PILF also posits that Rule 26(b)(4)(D) only protects "facts known or opinions held" by the non-testifying expert, Br. at 12, but that is exactly what the Department is seeking to protect—the compendium of material provided by counsel to a non-testifying expert. Such information reflects mental impressions of

---

[4] Rule 26(b)(4)(B) was renumbered Rule 26(b)(4)(D) in 2010.

counsel and therefore "goes to the core of the work product doctrine." *In re Cendant Corp. Secs. Litig.*, 343 F.3d at 667. As the Third Circuit held in *Sporck*, "the selection and compilation of documents by counsel . . . in preparation for [litigation] falls within the highly-protected category of opinion work product." *Sporck*, 759 F.2d at 316.

PILF's further assertion that Rule 26(b)(4)(D) is only implicated where "fairness" should preclude access to a party's trial preparation materials is without merit. Br. at 13-14. To this point, PILF asserts that there is no risk of such unfairness in this "public records case." *Id.* at 13-14. This argument, however, misapprehends controlling law and the policy underlying the work product doctrine. The doctrine is intended to foster "the orderly prosecution and defense of legal claims" by protecting against compelled disclosure of materials and information assembled by counsel in providing legal advice and preparing for litigation. *Hickman*, 329 U.S. at 501-511. Nothing in the doctrine limits its application to an equitable assessment of "fairness." In any event, as described above, it would be fundamentally unfair to require production of the requested information here.

PILF also maintains that disclosure should be compelled because this matter presents "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

11

Br. at 14-15. Yet this case presents none of the rare and exceptional circumstances that might justify disclosure of work product. *See*, *e.g.*, *Hickman*, 329 U.S. at 511-12. Indeed, PILF's argument is a reductive fallacy—that is, they contend that they need protected work product because there is no other means to obtain protected work product. Such assertion does not present exceptional circumstances; rather, it requests an intrusion on the work-product privilege far beyond the bounds of the records originally sought or available under the NVRA.

In this regard, PILF has already received information it requested—the names of persons whose registrations were canceled due to non-citizenship and voter information in the SURE system relating to those cancellations. Nothing in the protected work product now sought by PILF could further illuminate these records.

None of the cases cited by PILF support its request to compel disclosure of documents assembled by the Department's outside counsel for its non-testifying expert. *In re Zofran* involved a unique factual scenario where the defendant sought to discover communications between plaintiffs' counsel and a consulting expert who authored a study that the plaintiffs' testifying expert relied on. *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 392 F. Supp. 3d 179, 182-83 (D. Mass 2019). The Court ruled that the communications were discoverable because plaintiffs' testifying experts relied on the study and the non-testifying expert made false

statements to the court as to the nature of her relationship with plaintiffs' counsel. *Id.* at 186-87. No such circumstances exist here. The work product doctrine was held not to apply in *Planned Parenthood* because the information at issue was shared with a testifying expert. *Planned Parenthood of the Great Nw. and the Hawaiian Islands v. Wasden*, 18-CV-00555, 2020 WL 7847241, at *3 (D. Id. Dec. 31, 2020) (work product doctrine does not protect "communications the [testifying] expert had with *anyone* other than the party's counsel about the opinions expressed").[5] There is no testifying expert in this case and, therefore, there has been no disclosure to any testifying expert. *McCuistian* involved photographs taken by a consulting expert during destructive inspection of an allegedly defective smoke detector. *McCuistian v. LG Elecs.*, No. 15-CV-279-JA-GMB, 2016 WL 1690420 (M.D. Ala. Apr. 27, 2016). None of these cases remotely support compelled disclosure of material considered and provided confidentially to the consulting expert here.

The material assembled for and provided to the non-testifying expert is privileged work product that is protected from compelled disclosure. Accordingly, the Department respectfully requests that the Court correct and clarify the

---

[5] *Terre Haute Warehousing Serv.* supports the Department to the extent it holds that witness statements considered by a non-testifying expert were not required to be disclosed. *Terre Haute Warehousing Serv., Inc. v. Grinnell Fire Prot. Sys. Co.*, 193 F.R.D. 561, 563-64 (S.D. Ind. 1999).

Memorandum to eliminate any requirement that materials provided to the consulting expert must be disclosed. To be clear, the Department is not claiming that otherwise discoverable information can be withheld from PILF simply because it was provided to a consulting expert. The Department understands that discoverable information must be produced to PILF and the Department continues to supplement accordingly. PILF is simply not entitled to invade the work product doctrine to discover the records, including privileged and statutorily protected information, that was selected by the Department's counsel for review by the consulting expert.

## **CONCLUSION**[6]

For the reasons detailed above and in the Department's opening brief, the Court should clarify that (1) the names, addresses and other personal identifying information of letter recipients who were not confirmed to be non-citizens may properly be redacted and need not be disclosed, (2) the names, addresses and other personal identifying information of letter recipients who returned general

---

[6] PILF asks in its Opposition Brief that the Court clarify that the name of the non-testifying expert is not confidential and set a deadline for production of additional records. Br. at 14 n.4 & 15 n.5. Such requests are not properly raised in a footnote in an opposition brief. And this matter is easily distinguished from the case cited by PILF. *Benevis, LLC v. Mauze & Bagby, PLLC*, 12-CV-36, 2015 WL 12763537 (S.D. Tex. Dec. 14, 2015) (identity of former employee of defendant dental practice hired by plaintiff law firm as "consulting expert" not protected because former employee had relevant information concerning defendant's alleged fraud).

cancellation requests may properly be redacted and need not be disclosed, or alternatively, the Court should declare that the completed cancellation forms are not proof of non-citizenship, and (3) the Department is not required to disclose the entire SURE database. Further, the Court should reconsider its statement that material reviewed by a consulting expert is not protected by the work product doctrine and should instead direct that such material constitutes protected work product and is not required to be disclosed to PILF.

       Respectfully submitted,

       /s/ Donna A. Walsh
       Daniel T. Brier
       Donna A. Walsh
       Suzanne P. Conaboy

       Counsel for Defendants,
       Acting Secretary of the Commonwealth
       Leigh M. Chapman and Deputy Secretary
       for Elections and Commission Jonathan M.
       Marks

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: November 11, 2022

# **CERTIFICATE OF SERVICE**

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Reply in Further Support of Motion for Clarification and Partial Reconsideration was served upon the following counsel of record via the Court's ECF system on this 11th day of November 2022:

>Kaylan Phillips, Esquire
>Noel H. Johnson, Esquire
>Public Interest Legal Foundation
>32E Washington Street, Suite 1675
>Indianapolis, IN  46204
>
>Linda A. Kerns, Esquire
>Law Offices of Linda A. Kerns, LLC
>1420 Locust Street, Suite 200
>Philadelphia, PA  19102

>>/s/ Donna A. Walsh
>>Donna A. Walsh