IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | NO. 1:19-CV-00622 |
| LEIGH M. CHAPMAN, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, | : | JUDGE CONNER |
| | : | ELECTRONICALLY FILED |
| Defendants. | : | |

### DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)

Plaintiff The Public Interest Legal Foundation ("PILF") opens its opposition brief with a quote from testimony presented in 2019 to a Congressional subcommittee by Leigh M. Chapman in her prior capacity as Program Director for a non-profit human rights organization. PILF strains in claiming an inconsistency between then-Program Director Chapman's earlier remarks and the Department's response to PILF's request for records under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i), but there is no inconsistency. The Department properly seeks to protect privileged work product, to respect statutory confidentiality obligations and to safeguard the privacy of registered voters who have not been

confirmed to be ineligible to vote. PILF points to no authority for disregarding privilege or statutory or privacy protections. For the reasons below and in the Department's opening brief, the Court should amend its March 31, 2022 Memorandum (ECF 83) to make clear that the Department is not required to identify or produce privileged work product or personal information concerning registrants not confirmed to be non-citizens.

### A. The Work Product Doctrine Protects Against Disclosure of Information Provided to a Consulting Expert.

This Court's statement that "records used by the [Department's non-testifying] expert to conduct their analysis" are not protected work product, Mem. at 20 n.11, conflicts with Third Circuit precedent. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("the selection and compilation of documents by counsel . . . in preparation for [litigation] falls within the highly-protected category of opinion work product"); *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 667 (3d Cir. 2003) (communications with and documents provided to consulting expert "reflect the mental impressions, opinions, conclusions, and legal theories" of counsel and therefore "[d]iscovery of this information goes to the core of the work product doctrine. . ."). This clear error of law is properly corrected through reconsideration. *See, e.g., Max's Seafood Café v. Quintero*s, 176 F.3d 669, 678 (3d Cir. 1999)

("reconsideration is the appropriate means of bringing to the court's attention manifest errors of . . . law").[1]

The Court has already found—and PILF does not challenge—that counsel for the Department retained a consulting expert in anticipation of litigation and that the records produced in conjunction with the expert's analysis are protected from disclosure by the work product doctrine. Mem. at 19-20. The issue here is whether the compendium of records that outside counsel confidentially provided to the consulting expert is also protected work product. The Department respectfully submits that it is settled law that "the selection and compilation of documents by counsel" for anticipated litigation is protected by the work product doctrine. *Sporck*, 759 F.2d at 316. The doctrine "protects from discovery materials prepared or collected by an attorney 'in the course of preparation for possible litigation.'" *In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir. 1979) (quoting *Hickman v. Taylor*, 329 U.S. 495, 505 (1947)). Communications with and documents provided to a consulting expert "reflect the mental impressions, opinions, conclusions, and

---

[1] PILF observes that the Third Circuit has never adopted a precise definition of "clear error of law," Br. (ECF 120) at 3, but that is no impediment to correcting the legal error here. Under any formulation of the definition, reconsideration is properly granted where, as here, a ruling is contrary to controlling precedent. *See, e.g., Amos v. Franklin Fin. Servs. Corp.*, No. 1:CV-10-1285, 2011 WL 5903875, at *3 (M.D. Pa. Nov. 22, 2011) ("Since our conclusion was also contrary to direct and controlling Supreme Court precedent, we must grant the motion for reconsideration to correct this clear error of law."), *aff'd on other grounds*, 509 F. App'x 165 (3d Cir. 2013).

legal theories" of counsel and therefore "[d]isovery of this information goes to the core of the work product doctrine. . . ." *In re Cendant Corp.*, 343 F.3d at 667-68.

PILF does not address *Hickman* or *Cendant* in its opposition brief and cannot avoid the consequence that follows from straightforward application of this controlling authority. Instead, PILF quibbles with application of Rule 26(b)(4)(D), which partially codifies the work product doctrine by precluding discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D); *Sporck*, 759 F.2d at 316 ("The work product doctrine as articulated in *Hickman* has been partially codified in Federal Rule of Civil procedure 26(b)(3)."). None of PILF's arguments have merit.

PILF first claims that Rule 26(d)(4)(D) applies only to "interrogatories and deposition." Br. (ECF 120) at 4. Cases in this Circuit hold otherwise. In *In re Painted Aluminum Prods. Antitrust Litig.*, No. 95-CV-6557, 1996 WL 397472 (E.D. Pa. July 9, 1996),[2] the Court rejected the narrow reading of the rule proposed by PILF here and, citing *Hickman*, observed that "it is by now a truism that the various discovery devices function as an integrated system, and that in deciding the limits of

---

[2] The unpublished decisions cited herein are reproduced in the attached Appendix pursuant to Local Rule 7.8(a).

4

privilege, we should treat the various devices similarly." *Id.* at *1 (citing *Hickman*, 67 S. Ct. at 391). Similarly, in *Plymovent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139, 144 (D.N.J. 2007), the Court rejected the suggestion that work product protection can only be invoked in interrogatory responses and depositions, explaining that, if this argument were accepted, "any party could completely circumvent Rule 26(b)(4)(B) simply by serving a document subpoena." *Id.* at 143-44.[3] The *Plymovent* Court went on to say that "[c]ompelling disclosure of documents would have the same chilling effect on free consultation between a retaining party and its expert as compelling a deposition or answers to interrogatories." *Id.* at 144.

PILF further asserts that Rule 26(b)(4)(D) is only implicated where "fairness" requires protection of a party's trial preparation material and there is no risk of this type of "unfairness" in a "public records case." Br. at 7-8. This argument, however, misapprehends controlling law and the policy underlying the work product doctrine. The work product privilege is intended to foster "the orderly prosecution and defense of legal claims" by protecting against compelled disclosure of materials and information assembled by counsel in providing legal advice and preparing for litigation. *Hickman*, 329 U.S. at 501-11. Application of the doctrine is not limited by equitable assessments of "fairness." In any event, as demonstrated herein, it

---

[3] Rule 26(b)(4)(B) was renumbered Rule 26(b)(4)(D) in 2010.

5

would be *fundamentally unfair* to require production of confidential communications with and material provided to a non-testifying expert.

PILF also maintains that disclosure should be compelled because it is "impossible" for it to obtain the records by other means. Br. at 8. But this case presents none of the rare and exceptional circumstances that might arguably justify disclosure of work product. *See*, *e.g.*, *Hickman*, 329 U.S. at 511-12. Indeed, PILF's argument is a reductive fallacy—that is, PILF contends that it needs protected work product because there is no other means to obtain protected work product. Such assertion does not present exceptional circumstances; rather, it requests an intrusion on the work-product privilege far beyond the bounds of the records originally sought or available under the NVRA.

Importantly, PILF has received the information it requested under the NVRA—the names of persons whose registrations were canceled due to non-citizenship, voting history (if any) for those registrants, and information in the Statewide Uniform Registry of Electors ("SURE") system relating to cancellations attributed to non-citizenship. To be clear, the Department is *not* claiming that otherwise discoverable information can be withheld from PILF simply because it was provided to a consulting expert. The Department understands that discoverable information must be produced to PILF and the Department has produced that information. PILF is simply not entitled to invade the work product privilege to

6

discover the records, including privileged and statutorily protected information, selected by the Department's outside counsel for review by the consulting expert.

None of the cases cited by PILF support its request to invade protected work product. *In re Zofran* involved a unique factual scenario where the defendant sought to discover communications between plaintiffs' counsel and a consulting expert who authored a study that the plaintiffs' testifying expert relied on. *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 392 F. Supp. 3d 179, 182-83 (D. Mass 2019). The Court ruled that the communications were discoverable because plaintiffs' testifying expert relied on the non-testifying expert's study and the non-testifying expert made false statements to the court as to the nature of her relationship with plaintiffs' counsel. *Id.* at 186-87. No such circumstances exist here. Similarly, the work product doctrine was held not to apply in *Planned Parenthood* because the information at issue in that case was shared with a testifying expert. *Planned Parenthood of the Great Nw. and the Hawaiian Islands v. Wasden*, 18-CV-00555-BLW, 2020 WL 7847241, at *3 (D. Id. Dec. 31, 2020) (work product doctrine does not protect "communications the [testifying] expert had with *anyone* other than the party's counsel about the opinions expressed") (citation omitted).[4] There is no

---

[4] *Terre Haute Warehousing Serv.* supports the Department to the extent it holds that witness statements considered by a non-testifying expert were not required to be disclosed. *Terre Haute Warehousing Serv., Inc. v. Grinnell Fire Prot. Sys. Co.*, 193 F.R.D. 561, 563-64 (S.D. Ind. 1999).

testifying expert in this case and, therefore, there has been no disclosure to any testifying expert. *McCuistian* involved photographs taken by a consulting expert during destructive inspection of an allegedly defective smoke detector. *McCuistian v. LG Elecs., U.S.A., Inc.*, No. 15-CV-279-JA-GMB, 2016 WL 1690420 (M.D. Ala. Apr. 27, 2016). None of these cases support compelled disclosure of material considered and provided confidentially to the consulting expert here.

Because material assembled for a non-testifying expert by counsel is privileged work product protected from disclosure under controlling law, the Department respectfully requests that the Court amend the Memorandum to make clear that such material need not be disclosed.

### B. The Department Should Not Be Required To Disclose the Names of Persons Who Received Letters and Did Not Identify as Non-Citizens.

PILF reads the Court's March 31, 2022 Memorandum broadly to require disclosure of the names of all registrants who received the June 12, 2018 letter concerning voter qualifications and who did not return the letter certifying satisfaction of those qualifications, because, in its view, such persons were not "exonerated" and are assumed to be non-citizens. Br. at 11-13. PILF's viewpoint is inconsistent with the protocol that was followed in *NC State Bd. of Elections,* which this Court endorsed. Mem. at 15 n.7. Further, PILF's argument misunderstands the

purpose for the letters and its position, if adopted, would result in unnecessary infringement of the privacy interests of registrants.

In ruling on the cross-motions for summary judgment, at PILF's urging, the Court endorsed the redaction protocol in *N.C. State Bd. of Elections*, another case involving PILF and a request for records under the NVRA. *Id.* PILF argues here that the protocol in that case required disclosure of personal information regarding registrants who were identified as potentially failing to satisfy the citizenship requirement and who were not later exonerated. Br. at 11-13 & n.7. But that was not the ruling in *N.C. State Bd. of Elections*. The Fourth Circuit recognized in that case that "sensitive information" not subject to disclosure under the NVRA "would include the identities and personal information of those subject to criminal investigations, ***and*** those United States citizens who were once identified by the Board as 'potentially' failing to satisfy the citizenship requirement but later were exonerated." *Public Int. Legal Found., Inc. v. N.C. State Bd. of Elections* 996 F.3d 257, 267 (4th Cir. 2021) (emphasis added). North Carolina officials expressed willingness to devise a system of redaction to protect this information and, on this basis, the Fourth Circuit remanded the matter to the district court to "delineate any redaction protocols consistent with the NVRA necessary to protect sensitive information, ***including*** the names of those citizens identified by the Board as potential noncitizens." *Id.* at 268 (emphasis added). The Court directed that

9

"identities and personal information of individuals who potentially committed criminal offenses, including those who later were determined to be United States citizens, . . . must be redacted." *Id.* at 259. *N.C. State Bd. of Elections* thus protects the identities of persons suspected of being noncitizens as well as the identities of persons who were investigated and later exonerated.

The protocol that was agreed to after remand in *N.C. State Bd. of Elections* specifically required redaction of names of persons identified as potentially not satisfying the citizenship requirement. The Settlement Agreement and Release dated January 18, 2022 (attached hereto as Exhibit "A") provides that records relating to the "Noncitizen Audit Process"—defined in Paragraph I.J to mean the process of comparing "voter and election record with various government databases to identify potentially ineligible voters and irregularities due to lack of U.S. citizenship"—were to be redacted to eliminate "all information that would permit the recipient to personally identify ***any individual registrant***, including names, dates of birth, Social Security numbers, driver's license numbers, phone numbers, email addresses, street addresses, signatures, and identifying numbers used for registration and voting purposes." Settlement Agreement and Release ¶¶ I.J, II.D (emphasis added). This same protocol should apply here.

PILF advocates for a different process in this case because, in its view, any person "not confirmed" to be a citizen after receiving the June 12, 2018 letter was

not "exonerated" of illegal activity. Br. at 12. This argument misapprehends the Department of State's purpose in sending the letter and what registrants were asked to do. The letter (attached to the Department's Supp. Br. (ECF 92) as Exhibit B) advised recipients that the Motor Voter system may have allowed non-citizens to inadvertently register to vote and asked that the recipients verify their eligibility or cancel their registration. The letter stated that "[f]ailure to respond will likely result in further action regarding your voter registration." (Emphasis omitted.) The letter did not warn that lack of a response would be deemed an admission that the recipient was not a U.S. citizen. But that is how PILF reads the letter—that failure to respond means the registrant was not "exonerated." This is patently unreasonable and contrary to both the wording and spirit of the letter to registrants.

PILF proposes that disclosure of the recipients' names is not a concern because the Department of State made no reports to law enforcement in connection with the letters, Br. at 11, but the potential for harassment and embarrassment and other personal and professional repercussions persists—the precise concerns that redaction of personal identifiers is intended to protect against. *See generally N.C. State Bd. of Elections*, 996 F.3d at 267.

PILF itself has demonstrated the risks inherent in disseminating such information. Notably, PILF used similar information to publish reports claiming that non-citizens illegally registered to vote and voted. *See, e.g., Steeling the Vote:*

*Allegheny County Reveals How Citizenship Verification Protects Citizens and Immigrants Alike*, available at https://publicinterestlegal.org/reports/steeling-the-vote-allegheny-county-reveals-how-citizenship-verification-protects-citizens-and-immigrants-alike/ (last visited November 23, 2022); *see also* Compl. (ECF 1) ¶ 29 (referencing PILF report titled *Aliens and Felons: Thousands on Voter Rolls in Philadelphia*). One of PILF's publications led to federal civil rights litigation brought on behalf of registrants who claimed they were incorrectly identified as non-citizens. *See League of United Latin Am. Citizens, et al. v. Public Int. Legal Found., et al.*, No. 18 CV 423 (E.D. Va.). As the Fourth Circuit recognized in *N.C. State Bd. of Elections*, "[b]eing improperly identified as a noncitizen . . . could have long-standing personal and professional repercussions." 996 F.3d at 267. Those repercussions are properly avoided by permitting redaction of the names and personal identifiers of letter recipients not confirmed to be noncitizens.

The Department respectfully requests that the Court clarify that the names, addresses and other personal identifying information of all letter recipients who were not confirmed to be non-citizens need not be disclosed and may be redacted consistent with the protocol agreed to by PILF in *N.C. State Bd. of Elections*.

    **C.    The Department Should Not Be Required to Disclose the Names of Persons Who Submitted General Cancellation Requests.**

In response to PILF's request and pursuant to the Court's ruling, the Department has provided a list of the registrants whose voter registrations were

canceled and whose records show that the reason for the cancellation was non-citizenship. PILF is asking the Court to go much further and compel the disclosure of the names of persons who received letters and canceled their registrations without giving a reason for the cancellation. Br. at 13-14. The Department seeks clarification that no such disclosure is required.

PILF assumes that any cancellation after receipt of the letter must be due to non-citizenship, *id.* at 14, but this assumption is unfounded. The general cancellation form (attached to the Department's Supp. Br. as Ex. B) lists no reason for cancellation, and, for this reason, the Department seeks clarification that the general cancellation forms need not be disclosed. That PILF insists otherwise proves the need for clarification. Contrary to PILF's argument, *id.* at 14-15, lack of consensus on this important issue affecting non-parties is a proper basis for clarification. *See, e.g.*, *Montgomery Cnty. v. Microvote Corp.*, No. 97-6331, 2000 WL 341566, at *1 (E.D. Pa. Mar. 31, 2000) (motion for clarification "appropriate" to disambiguate part of opinion that "appears confusing").

In the event the Court requires production of the general cancellation requests, the Department seeks, in the alternative a declaration that the completed cancellation forms are not legal proof of non-citizenship.

# CONCLUSION[5]

For the reasons detailed above and in the Department's opening brief, the Court should amend the Memorandum and Judgment to direct that material selected for and considered by a non-testifying expert need not be identified or disclosed to PILF in response to its request under the NVRA. In addition, the Court should clarify that (1) the names, addresses and other personal identifying information of letter recipients who were not confirmed to be noncitizens may properly be redacted and need not be disclosed, and (2) the names, addresses and other personal identifying information of letter recipients who returned general cancellation requests may properly be redacted and need not be disclosed or, alternatively, the

---

[5] PILF asks in its Opposition Brief that the Court clarify that the name of the non-testifying expert is not privileged. Br. at 8 n.4. A request for relief is not properly raised in a footnote in an opposition brief. And this matter is easily distinguished from the case cited by PILF. *Benevis, LLC v. Mauze & Bagby, PLLC*, 12-CV-36, 2015 WL 12763537, **17-18 (S.D. Tex. Dec. 14, 2015) (identity of former employee of defendant dental practice hired by plaintiff law firm as "consulting expert" not protected because former employee had relevant information concerning defendant's alleged fraud).

Court should amend the judgment to specifically declare that the completed cancellation forms are not proof of non-citizenship.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Counsel for Defendants,
Acting Secretary of the Commonwealth
Leigh M. Chapman and Deputy Secretary
for Elections and Commissions Jonathan M.
Marks

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: November 23, 2022

# CERTIFICATE OF SERVICE

    I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Reply in Further Support of Motion To Alter or Amend Judgment was served upon the following counsel of record via the Court's ECF system on this 23rd day of November 2022:

    Kaylan Phillips, Esquire
    Noel H. Johnson, Esquire
    Public Interest Legal Foundation
    32E Washington Street, Suite 1675
    Indianapolis, IN  46204

    Linda A. Kerns, Esquire
    Law Offices of Linda A. Kerns, LLC
    1420 Locust Street, Suite 200
    Philadelphia, PA  19102

    /s/ Donna A. Walsh
    Donna A. Walsh