# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release made this __18th__ day of January 2022, by and between Public Interest Legal Foundation, Inc. ("Plaintiff") and Karen Brinson Bell and the North Carolina State Board of Elections ("Defendants") (collectively, "Parties").

## RECITALS

WHEREAS, in September and October 2018, Plaintiff sought records from the boards of elections in Durham, Forsyth, Guilford, Mecklenburg, and Buncombe Counties (the "Five Counties") relating to voter registration and voting by non-United States citizens (the "Request").

WHEREAS, Defendants agreed to facilitate a response to Plaintiff's Request.

WHEREAS, on April 30, 2019, Plaintiff provided notice to Defendants that, in Plaintiff's view, the Defendants' response to Plaintiff's Request violated the public inspection provisions of the federal National Voter Registration Act of 1993, 52 U.S.C. § 20507(i);

WHEREAS, on June 17, 2019, Plaintiff filed an action against Defendants in the United States District Court for the Eastern District of North Carolina, *Public Interest Legal Foundation, Inc. v. Bell, et al.*, Civil Action No. 5:19-cv-00248-BO (the "Litigation").

WHEREAS, Defendants deny any and all liability for the causes of action asserted by Plaintiff in the Litigation; and,

WHEREAS, to avoid the uncertainty and expense of further litigation, Plaintiff and Defendants desire to resolve fully and finally all remaining issues and disputes between them involving the Litigation, without any admission of liability.

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration as more fully described below, Plaintiff and Defendants agree as follows:

## AGREEMENT

I. **General Terms**

   A. The parties to this Settlement Agreement ("Settlement Agreement") are the Plaintiff and Defendants. Nothing in this Settlement Agreement shall be construed to make any other person or entity not executing this Settlement Agreement a third-party beneficiary to this Settlement Agreement.

   B. This Settlement Agreement applies to, is binding upon, and inures to the benefit of the Plaintiff (and its successors, assigns, and designees) and the Defendants (and their successors, assigns, and designees).

C. This Settlement Agreement shall not constitute an admission or evidence of any fact, wrongdoing, misconduct, or liability on the part of the Defendants, the State of North Carolina, or any other person affiliated with any such person or entity.

D. Each undersigned representative of the Parties to this Settlement Agreement certifies that he or she is fully authorized by the Party to enter into and execute the terms and conditions of this Settlement Agreement and to legally bind such Party to this Settlement Agreement.

E. This Settlement Agreement is the entire agreement between the Parties.

F. This Settlement Agreement may be executed in any number of counterpart originals, each of which shall be deemed to constitute an original agreement, and all of which shall constitute one agreement. The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

G. This Settlement Agreement is governed by, and interpreted according to, the laws of the State of North Carolina without regard to conflict of laws principles.

H. This Settlement Agreement may not be modified or changed orally, but only by an agreement in writing signed by the Parties.

I. The Parties represent that prior to signing this Settlement Agreement, each has read it, understood its terms and conditions, consulted with counsel, and voluntarily signed it.

J. The term "Noncitizen Audit Processes" means actions by the North Carolina State Board of Elections (and its current and former representatives, agents, and employees) to "compare voter and election records with various government databases to identify potentially ineligible voters and irregularities due to lack of U.S. citizenship, ranging from unintentional violations to intentional voter fraud and elections tampering"[1] and any similar activities relating to noncitizens.

K. The term "List Maintenance Activities" means actions taken to ensure the accuracy and currency of voter registration records and/or eligible voter lists, regardless of whether the action is required by law.

## II. Production of Records

A. **Noncitizen Audit Processes.** Defendants shall provide to the Plaintiff records relating to the Defendants' Noncitizen Audit Processes, using the following search protocols:

---

[1] Doc. 1-1 at 1 (2016 Post-Election Audit Report).

1. Defendants shall perform a search of electronically stored information using its e-discovery search platform

    a. covering a date range from 1/1/2011 until the date this Settlement Agreement is executed;

    b. including the following custodians: Gary Bartlett, Don Wright, Kim Strach, Marc Burris, Brian Neesby, George McCue, Brian LiVecchi, Josh Lawson, Veronica Degraffenreid, Kelly Tornow, and Katelyn Love; and,

    c. using the following search terms: audit! /5 citizen!

2. Defendants shall perform a search of electronically stored information using its e-discovery search platform

    a. covering a date range from 1/1/2011 until the date this Settlement Agreement is executed;

    b. including the following custodians: Cheryl Travers, Matt Martucci, Joan Fleming, Chuck Stuber, Marshall Tudor, Clyde Roper, Danielle Brinton, Thomas Harrington, and David Richards; and,

    c. using the following search terms: "citizenship," "U.S. citizen," and "noncitizen."

3. Defendants shall manually review relevant physical files.

B. **List Maintenance Activities**

1. Defendants shall instruct the Five Counties to search for and produce electronically and physically stored records, dated from 2011 to the date this Settlement Agreement is executed, relating to Noncitizen Audit Processes and List Maintenance Activities relating to noncitizens, including:

    a. Copies of original and subsequently submitted applications for voter registration;

    b. Voting histories and methods of casting ballots since the creation of the registration file;

    c. Correspondence to and from each registrant;

    d. Any other related records, including those related to "independent research into citizenship of the flagged registrants outside the challenge process"; and,

   e. Records relating to any registrant whose voter record contains a Reason Code or Comment referring to non-citizenship as the reason for removal.

   2. Defendants shall then review those records for responsiveness to the Request, redact those records as permitted in Section 2(D), and produce those records to the Plaintiff.

   C. **Time for Production.** Defendants shall provide the records described in Section II to Plaintiff within 120 days of the date the Litigation is dismissed pursuant to this Settlement Agreement.

   D. **Redaction.** In records described in Section II, Defendants may redact all information that would permit the recipient to personally identify any individual registrant, including names, dates of birth, Social Security numbers, driver's license numbers, phone numbers, email addresses, street addresses, signatures, and identifying numbers used for registration and voting purposes.

III. **Attorneys' Fees and Litigation Expenses**

   A. Within 120 days of the date the Litigation is dismissed pursuant to this Settlement Agreement, Defendants shall pay to the Plaintiff $5,000, which shall constitute a full settlement for any claim to attorneys' fees or litigation expenses the Foundation has made or could make in the Litigation.

   B. The Plaintiff shall not pursue any additional attorneys' fees, costs, or litigation expenses relating to the Litigation.

   C. Other than the payment described in Section III.A., each Party shall bear its own fees, costs, and expenses related to the Litigation.

IV. **Dismissal**

   A. The Parties shall execute and file with the court "a stipulation of dismissal with prejudice signed by all parties who have appeared" pursuant to the Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

V. **Release**

   A. The Plaintiff shall forever release Defendants, their respective successors and assigns, and their agents from any claims arising from the conduct related to the Litigation.

For the Plaintiff: Public Interest Legal Foundation, Inc.

_____          __1/18/2022__
J. Christian Adams                                              Date
President
Public Interest Legal Foundation, Inc.

For the Defendants: Karen Brinson Bell and the North Carolina State Board of Elections

_____      1-26-2022
Karen Brinson Bell                        Date

Approved for legal sufficiency:

_____ 1-26-22
Terence Steed
Special Deputy Attorney General