IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | CIVIL ACTION NO. 1:19-CV-622 |
| | : | |
| | : | (Judge Conner) |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **ALBERT SCHMIDT, Acting Secretary of the Commonwealth of Pennsylvania,[1] and JONATHAN M. MARKS, Deputy Secretary for Elections and Commissions,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

# ORDER

AND NOW, this 27th day of February, 2023, upon consideration of the motion (Doc. 88) for clarification and partial reconsideration filed by defendants Albert Schmidt, Acting Secretary of the Commonwealth of Pennsylvania, and Jonathan M. Marks, Deputy Secretary for Elections and Commissions (collectively the "Commonwealth"), wherein the Commonwealth seeks clarification regarding its disclosure obligations under our memorandum and order dated March 31, 2022, as well as reconsideration of our conclusion as to applicability of the work-product doctrine, (see Doc. 89 at 1-2),[2] and the court noting preliminarily the matter *sub*

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Schmidt is automatically substituted as a defendant for former Secretary Leigh M. Chapman. See FED. R. CIV. P. 25(d).

[2] The Commonwealth protectively filed a second motion, styled as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e), (see Doc. 91), in answer to plaintiff's challenge to the stylization of the first motion. The motions raise the same arguments, and we will consider them together.

*judice* concerns the Commonwealth's duty to disclose certain voting records under Section 20507(i)(1) of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i)(1), in response to requests from plaintiff Public Interest Legal Foundation ("PILF"), and further noting the purpose of a motion for clarification is "to explain or clarify something ambiguous or vague about a court's decision, not to alter or amend it," see Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co., No. 11-247, 2014 WL 4060309, at *14 (W.D. Pa. Aug. 15, 2014) (citation omitted); see also Ebert v. Township of Hamilton, No. 15-7331, 2018 WL 4961467, at *2 (D.N.J. Oct. 15, 2018) (citation omitted), and motions to alter or amend judgment under Rule 59(e) must rely on at least one of the following three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice," Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)), and, taking the Commonwealth's concerns *seriatim*,[3] *first*, the court observing the Commonwealth seeks clarification or reconsideration as to footnote eleven of our memorandum, (see Doc. 89 at 7-10; Doc. 92 at 4-8), which states, in relevant part, that our holding regarding applicability of the work-product doctrine to a particular class of records "should not be construed as stating the work-product doctrine applies to . . . records used by the expert to conduct their analysis," (see Doc. 83 at 19-20 & n.11), and the Commonwealth argues the court erred by "concluding that the compilation of

---

[3] The parties have reached an agreement mooting the Commonwealth's request for clarification regarding "the SURE database." (See Doc. 92 at 11 n.6; Doc. 122 at 8). We therefore need not address that issue herein.

records used by a consulting expert are required to be disclosed," (see Doc. 92 at 7), and the court finding the Commonwealth has not identified clear error of law or risk of manifest injustice as to footnote eleven but agreeing to offer clarification in light of the Commonwealth's expressed confusion;[4] *second*, the court observing the Commonwealth seeks clarification regarding whether it must disclose names and addresses of individuals to whom it sent letters regarding their possible status as noncitizen voters[5] and, if it must disclose such information, the scope of permissible redactions, (see Doc. 89 at 3-5 & n.2; Doc. 92 at 8-11), and further observing names and addresses of letter recipients fall within the scope of what must be disclosed under Section 20507(i)(1) as the information relates to "ensuring the accuracy and

---

[4] The Commonwealth misreads footnote eleven to require it to disclose to PILF a compilation of all materials reviewed by its expert. (See Doc. 89 at 7-9; Doc. 92 at 4-8; Doc. 122 at 8-9). Our footnote includes no such requirement, and we do not understand PILF to seek disclosure of any such compilation. (See Doc. 83 at 20 n.11; Doc. 120 at 6-8). The intention of our footnote was to make clear that records otherwise subject to disclosure do not receive work-product protection merely because the expert viewed them. That is, records *created specifically* for the expert to review are protected by the work-product doctrine, (see Doc. 83 at 18-20), but the work-product doctrine does not protect records otherwise subject to disclosure created in the ordinary course of business or for purposes other than litigation, see United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990) (citations omitted); (see also Doc. 122 at 14 (disclaiming the Commonwealth has any desire to withhold "otherwise discoverable information . . . simply because it was provided to a consulting expert"). To be clear: footnote eleven does *not* require the Commonwealth to disclose "the compendium of records that outside counsel confidentially provided to the consulting expert," (see Doc. 122 at 8); it merely explains records *otherwise* subject to disclosure are not exempted from the order merely because the expert laid eyes on them.

[5] We note PILF originally sought the letters sent to said individuals, but the Commonwealth represents the letters exist only as templates sent using a mail-merge process; the Commonwealth therefore offers to disclose a "list of recipient names and addresses" in lieu of the individualized letters. (See Doc. 89 at 4 n.2).

currency of official lists of eligible voters," see 52 U.S.C. § 20507(i)(1), and the Commonwealth correctly reads footnote seven to authorize redaction of said disclosures to protect certain personal information, (see Doc. 89 at 3 (citing Doc. 83 at 15 n. 7); Doc. 92 at 8-9 (same)), and the court finding the Commonwealth has not identified clear error of law or risk of manifest injustice concerning footnote seven, but clarification is necessary because the Commonwealth overreads the breadth of permissible redactions;[6] and *lastly*, the court observing the Commonwealth seeks a declaration "that the completed cancelation forms are not proof of non-citizenship,"

---

[6] Footnote seven authorizes the Commonwealth to redact certain information from its disclosures to address privacy concerns. (See Doc. 83 at 15 n.7). Namely, we adopted the redaction scheme employed by the Court of Appeals for the Fourth Circuit in a similar case, (see id. (citing Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections, 996 F.3d 257, 267 (4th Cir. 2021))), in which the court authorized the North Carolina Board of Elections to redact from voting records disclosed under the NVRA "(1) Social Security numbers, (2) 'identities and personal information of those subject to criminal investigations,' and (3) personal information of citizens initially identified as potentially failing to meet the citizenship requirement for voter registration but ultimately exonerated." N.C. State Bd. of Elections, 996 F.3d at 267). The Commonwealth now suggests footnote seven authorizes redaction of "names, addresses, and other personal information of persons who received the letters and who either affirmed their eligibility to vote or were not confirmed to be noncitizens" from the list of recipients. (See Doc. 89 at 3-5; Doc. 92 at 8-10). This reading is overbroad. The Commonwealth may redact names and addresses of potential noncitizen registrants who affirmed their eligibility to vote. As the Fourth Circuit noted, these individuals could face "long-standing personal and professional repercussions" by being wrongly associated with noncitizen voting. See N.C. State Bd. of Elections, 996 F.3d at 267. However, names and addresses of individuals who responded to the letter by cancelling their voter registration, or who failed to reply to the letter or have not been confirmed to be citizens, must be disclosed. Neither category of individuals was "exonerated." See id. We recognize such disclosures affect the privacy of these individuals, but Congress prioritized transparency over privacy in crafting the NVRA's broad disclosure requirements. (See Doc. 83 at 14-15 (citing Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 339 (4th Cir. 2012))).

4

(see Doc. 89 at 5; Doc. 92 at 11), and the court finding the request is not properly before the court, see Arizona v. City of Tucson, 761 F.3d 1005, 1010 (9th Cir. 2014) ("[R]equests for declaratory judgment are not properly before the court if raised only in passing, or by motion." (citation omitted)); Hubay v. Mendez, 500 F. Supp. 3d 438, 443 n.2 (W.D. Pa. 2020) (citation omitted), and the court concluding the Commonwealth has not identified any clear error or risk of manifest injustice meriting reconsideration under Rule 59(e), but that the clarifications provided *supra* are appropriate under the circumstances,[7] it is hereby ORDERED that:

---

[7] PILF files a show-cause motion (Doc. 121) averring that the Commonwealth failed to timely disclose certain "supplemental information" and requesting that the court sanction the Commonwealth under Federal Rule of Civil Procedure 11(c)(2). (See Doc. 121 at 1-3). The Commission, in turn, moves to strike PILF's motion, *inter alia*, for failing to comply with the notice requirement of Rule 11(c)(2). (See Doc. 124 at 1-2). Despite being styled as a "motion to show cause," the first sentence of PILF's motion announces PILF "moves the court to impose sanctions [on the Commonwealth]," (see Doc. 121 at 1), and, accordingly, we construe the motion as one for sanctions under Rule 11. PILF admits it did not comply with Rule 11's safe-harbor provision. See Hampton v. Wetzel, No. 1:14-CV-1367, 2017 WL 895568, at *2 (M.D. Pa. Mar. 7, 2017) (Conner, C.J.). It raises two arguments in defense of this failure, the first of which we have already rejected, *viz.*, its claim this is not a "sanctions" motion at all. PILF also broadly contends that giving notice to the Commonwealth would have been futile. (See Doc. 126 at 1-5). But there is nothing in the record to support this contention. To the contrary, PILF acknowledges that the Commonwealth turned over the supplemental information, at least in part, mere hours after PILF filed its motion. (See id. at 3). Assuming *arguendo* that PILF's motion satisfied Rule 11(c)(2), we would nevertheless exercise our discretion to deny the motion due to the lack of any indication the Commonwealth acted unreasonably. Hence, we will deny the motion for sanctions. See Schaefer Salt, 542 F.3d at 99 ("If the twenty-one day period is not provided, the motion must be denied.").

5

1. The Commonwealth's motion (Doc. 88) for clarification and partial reconsideration is GRANTED to the extent that clarification has been provided herein. The motion is otherwise DENIED.

2. The Commonwealth's motion (Doc. 91) to amend or alter judgment is DENIED.

3. PILF's motion (Doc. 121) is CONSTRUED as a motion for sanctions under Federal Rule of Civil Procedure 11 and is DENIED as so construed.

4. The Commonwealth's motion (Doc. 123) to strike PILF's motion (Doc. 121) for sanctions is DENIED as moot.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania