IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** : | CIVIL ACTION NO. 1:19-CV-622 |
| : | |
| : | **(Judge Conner)** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **ALBERT SCHMIDT, Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, Deputy Secretary for Elections and Commissions,** : | |
| : | |
| **Defendants** : | |

**MEMORANDUM**

The Public Interest Legal Foundation ("PILF") sought production of voter registration records from defendants Albert Schmidt, Secretary of the Commonwealth of Pennsylvania, and Jonathan M. Marks, Deputy Secretary of Elections and Commissions, (collectively "the Commonwealth"), under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507. The court previously entered judgment in favor of PILF and against the Commonwealth, ordering the latter to produce certain categories of records. PILF now seeks attorneys' fees and costs pursuant to 52 U.S.C. § 20510(c).

**I.    Factual Background & Procedural History**

In 2017, the Commonwealth of Pennsylvania admitted that a "glitch" in a computer system used by the Pennsylvania Department of Transportation enabled an unknown number of noncitizens to register to vote. See Pub. Int. Legal Found. v. Chapman, 595 F. Supp. 3d 296, 301 (M.D. Pa. 2022). The Commonwealth

conducted a multi-stage investigation to ascertain which registered voters might be noncitizens and to develop a plan for addressing the problem. See id. at 301-02. As part of its investigation, the Commonwealth engaged outside counsel who, in turn, engaged an expert to analyze the Commonwealth's voting records. See id. at 302. Based on the expert's analysis, the Commonwealth sent more than 10,000 letters to potential noncitizen registrants asking them to affirm their citizenship. See id.

PILF reacted to the publicity surrounding the glitch by seeking disclosure of all documents related to noncitizen voter registration. See id. at 302-03. The Commonwealth refused to provide PILF any documents, asserting the records sought were outside the scope of the NVRA's disclosure requirement. See id. at 303. PILF filed suit against the Commonwealth in this court in 2018, but we dismissed the group's initial lawsuit due to procedural defects. See Pub. Int. Legal Found. v. Boockvar, 370 F. Supp. 3d 449, 458 (M.D. Pa. 2019).

PILF cured said defects and refiled its suit in early 2019. We held at the motion-to-dismiss stage that the Commonwealth's efforts to address noncitizen registration fell within the scope of the NVRA's disclosure requirement. At the same time, we determined that certain information sought by PILF was protected from disclosure by the Driver's Privacy Protection Act, 18 U.S.C. § 2721. The Commonwealth subsequently endeavored to comply with PILF's disclosure requests but refused to produce many of the records PILF sought. At summary judgment, we found the Commonwealth had not fully met its burden regarding three of PILF's four requests; we also held certain key records were protected from disclosure by the work-product doctrine. We allowed the Commonwealth to redact

private information about individuals initially identified as potential noncitizen registrants whose eligibility to vote later had been established.

The Commonwealth filed two motions shortly thereafter asking the court to clarify, reconsider, or amend portions of our judgment. While these motions were pending, the parties jointly agreed to enter mediation before a magistrate judge. We stayed proceedings for several months while the parties negotiated in front of Magistrate Judge Joseph F. Saporito, Jr., but the parties were unable to reach a settlement. Litigation promptly resumed, with PILF filing what it styled as a "motion to show cause" attacking the Commonwealth for failing to timely disclose certain information. The Commonwealth replied with a motion to strike PILF's motion to show cause as procedurally flawed. We granted the Commonwealth's motions to the extent it sought clarification regarding the nuances of our summary-judgment holding, but denied its request to reconsider or amend our judgment. We construed PILF's motion to show cause as a motion for sanctions and denied it as construed because of procedural and substantive flaws. We also denied the Commonwealth's motion to strike as moot in light of the aforementioned denial.

PILF now moves for attorneys' fees and costs.[1] PILF asserts that two staff attorneys, Noel H. Johnson, Esquire, and Kaylan L. Phillips, Esquire, and one outside counsel, Linda A. Kerns, Esquire, worked 567.55 hours on matters related to this litigation. (See Doc. 127-2 at 25; Doc. 127-5 at 4; Doc. 131-2 at 2; Doc. 131-4 at 1). From that time, PILF excludes 81.6 hours as non-compensable—most notably because the hours relate to either the unsuccessful mediation with Judge Saporito or media appearances—leaving a total of 485.95 hours for which PILF seeks compensation. (See generally Docs. 127-2, 127-5; see also Doc. 127-1 ¶¶ 10-13; Doc. 127-4 ¶¶ 8-10). PILF also seeks $2,723.91 in litigation-related expenses. (See generally Docs. 127-3, 127-6). The motion is ripe and ready for disposition.

## II. Legal Standard

The NVRA grants courts discretionary authority to award "the prevailing party (other than the United States) reasonable attorney fees, including litigation

---

[1] PILF filed its initial motion for attorneys' fees on December 16, 2022, while the Commonwealth's post-judgment motions were still pending, and explicitly reserved the right to file a supplemental motion seeking attorneys' fees for any additional legal work. (See Doc. 127 at 12). PILF filed its supplemental motion on January 31, 2023. (See Doc. 131). The Commonwealth contends PILF's supplemental motion is untimely because PILF filed it six weeks after the deadline set by our order dated October 25, 2022. (See Doc. 132 at 1-2 (citing Doc. 119 ¶ 2(d))). We disagree. PILF's reservation tolled our deadline. Moreover, the Commonwealth continued to vigorously contest the extent of relief it was required to give PILF after PILF filed its motion for attorneys' fees. (See Doc. 128). It would be fundamentally unfair and contrary to Congress' intention in enacting the NVRA's fee-shifting provision to allow the Commonwealth to escape its obligation to fully compensate the prevailing party for litigation expenditures because the Commonwealth, in effect, ran out the clock. We will grant PILF's supplemental motion. For simplicity's sake, we will address and refer to both motions as though they were one throughout the remainder of this opinion.

expenses, and costs." 52 U.S.C. § 20510(c). The standards for determining whether to award attorneys' fees and the extent of such an award are the same under the NVRA as other civil rights statutes. See Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983). A litigant is considered a "prevailing party" when "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433 (citation omitted); accord Mancini v. Northampton County, 836 F.3d 308, 321 (3d Cir. 2016) (quoting Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 163 (3d Cir. 2002)). The purpose of fee-shifting provisions like that of the NVRA is to ensure those with grievances have access to the courts. See Hensley, 461 U.S. at 429 (citation omitted). Hence, prevailing plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. (quotation omitted); see Mancini, 836 F.3d at 320 (citing Hensley, 461 U.S. at 429). When a plaintiff "achieve[s] only partial or limited success, a district court may adjust the fee downward," Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 318 (3d Cir. 2006) (citing Hensley, 461 U.S. at 434-36; Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)), even if the plaintiff's claims were "interrelated, nonfrivolous, and raised in good faith," id. (quoting Hensley, 461 U.S. at 436).

Courts assess the reasonableness of a request for attorneys' fees by applying the lodestar formula, which multiplies the number of hours reasonably expended by a reasonable hourly rate. See Hensley, 461 U.S. at 433; Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing party bears the initial burden of demonstrating the reasonableness of the claimed rate and hours spent under a fee-

5

shifting statute.  See United States *ex rel.* Palmer v. C&D Techs., Inc., 897 F.3d 128, 139 (3d Cir. 2018) (quoting Rode, 892 F.2d at 1183).  The burden then shifts to the opposing party to make specific objections to the proposed hours and rate.  See id. In considering objections, the court has considerable discretion to adjust fees and costs downwards.  See id.  However, the court may not decrease the award *sua sponte*.  See Interfaith Comm. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005) (citing Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989)). Once an opposing party makes an objection, the burden shifts back to the applicant to justify their request.  See id.  If they carry their burden, the resulting lodestar amount is presumed to be a reasonable fee, see Clemens v. N.Y. Cent. Mut. Fire Ins. Co., 903 F.3d 396, 400 (3d Cir. 2018) (quoting Maldonado, 256 F.3d at 184); nonetheless, the court retains discretion to make adjustments when appropriate, see Spencer, 469 F.3d at 318; Rode, 892 F.2d at 1183.

### III.   Discussion

####    A.   **Appropriateness of Attorneys' Fees**

The threshold question in this matter is whether attorneys' fees are appropriate at all.  The parties agree PILF is the prevailing party, they simply differ as to the extent of PILF's success.  (Compare Doc. 127 at 4-5, with Doc. 129 at 7-8). The Commonwealth insists, however, this case involves the sort of special circumstances that ought to render an award of attorneys' fees inappropriate.  (See Doc. 129 at 6-7).  As the Commonwealth sees it, PILF's disclosure requests raised novel questions of law, to which the Commonwealth responded in good faith.  (See id.)  We are unpersuaded.  Although this litigation has presented some novel legal

6

issues, see, e.g., Pub. Int. Legal Found. v. Boockvar, 431 F. Supp. 3d 553, 559 (M.D. Pa. 2019) ("As a matter of first impression in our circuit, we are asked to interpret the NVRA's Disclosure Provision."), the Commonwealth points to no cogent authority for the proposition that attorneys' fees are precluded or even disfavored under the NVRA when the parties' dispute involves unsettled questions of law.[2] The Commonwealth may have acted in good faith throughout this litigation, but "the government's good faith alone is no defense to an award of attorneys' fees." See Taylor v. United States, 815 F.2d 249, 254 n.1 (3d Cir. 1987) (Becker, J., concurring) (collecting cases addressing fee-shifting provisions under civil rights

---

[2] The Commonwealth cites three cases in support of its position: Abramson v. United States, 45 Fed. Cl. 149, 153 (1999); Varsity Brands, Inc. v. Star Athletica, LLC, No. 10-02508, 2014 WL 1091978, at *1 (W.D. Tenn. Mar. 18, 2014); Thompkins v. Lil' Joe Records, Inc., No. 02-61161-CIV, 2008 WL 896898, at *6 (S.D. Fla. Mar. 31, 2008). All are inapposite. Abramson addresses a motion for attorneys' fees under the Back Pay Act, 5 U.S.C. § 5596, and Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. See Abramson, 45 Fed. Cl. at 151-52. The Back Pay Act is not a civil rights statute and requires the movant to prove the award is "warranted in the interest of justice." See id. at 151 (quoting 5 U.S.C. § 7701(g)(1)). The EAJA's fee-shifting provision mandates courts award attorneys' fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." See id. (quoting 28 U.S.C. § 2412(d)(1)(A)). Conversely, the relevant NVRA provision is discretionary and does not suggest a party is less susceptible to paying attorneys' fees when their legal positions are "substantially justified." See 52 U.S.C. § 20510. Varsity Brands and Thompkins both address motions for attorneys' fees under statutes protecting intellectual property, not civil rights. See Varsity Brands, 2014 WL 1091978, at *1 (discussing fee shifting under the Copyright Act, 17 U.S.C. § 505, and Lanham Act, 15 U.S.C. § 1117(a)); Thompkins, 2008 WL 896898, at *6 (discussing fee shifting under the Copyright Act). The Supreme Court of the United States has made clear that the policy considerations animating federal intellectual property laws justify applying different standards to disputes involving that discrete subject matter even when those laws employ language similar to civil rights statutes. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 522-25 (1994).

statutes); see also Jordan v. Dorsey, 587 F. Supp. 282, 285 (E.D. Pa. 1984) (permitting good-faith defense would frustrate purpose of fee-shifting provisions in civil rights statutes). Because we find the matter *sub judice* does not present special circumstances, we will award PILF attorneys' fees.

Alternatively, the Commonwealth argues that we should reduce PILF's award by "75% or more" because PILF was only partially successful in this litigation. (See Doc. 129 at 9). We agree PILF was not successful in obtaining every single document it desired. But the crux of PILF's request was to obtain documents detailing the Commonwealth's investigation and efforts to remediate noncitizen voter registration. Particularly, PILF wanted to know which registered voters the Commonwealth suspected were non-citizens. PILF obtained an order from this court compelling the Commonwealth to turn over documents substantially answering that question. Given the extensive length of this litigation, the complexity of the legal issues involved, and the vigorous defense put forward by the Commonwealth, we find PILF is entitled to the full value of the compensable hours it successfully invested toward that end.

### B. Lodestar Calculation

Our lodestar calculation begins with assessing the reasonableness of PILF's proffered billing rate. See Walker v. Gruver, No. 1:11-CV-1223, 2013 WL 5947623, at *3 (M.D. Pa. Nov. 5, 2013) (Conner, C.J.) (citing Interfaith, 426 F.3d at 711). Typically, courts determine a reasonable hourly rate by looking at the market rate for similar legal services provided by attorneys of "reasonably comparable skill, experience, and reputation." See Maldonado, 256 F.3d at 184 (quoting Rode, 892

F.2d at 1183). PILF suggests its attorneys' time is worth $400 per hour, (see Doc. 127 at 10), and the group submits an affidavit from a practicing attorney in the Middle District of Pennsylvania who attests to the reasonableness of this rate given the nature of the litigation and the respective attorneys' skill and experience. (See Doc 127-7). The Commonwealth does not object to the reasonableness of the proposed rate. See Mancini, 836 F.3d at 320 n.12 (not contesting reasonableness of rate waives issue). After considering the affidavit, the court's knowledge of the legal economy in the region where it sits, the Commonwealth's lack of opposition, and all other relevant factors, we find $400 per hour to be a reasonable rate.

Having ascertained a reasonable billing rate, we turn to the particular hours billed by Attorneys Johnson, Phillips, and Kerns. Attorney Johnson submits an affidavit and billing statement itemizing the hours he and Attorney Phillips worked on this matter. (See Docs. 127-1, 127-2, 131-1, 131-2). Attorney Kerns submits similar documentation. (See Docs. 127-4. 127-5, 131-3, 131-4). PILF also attaches an expense report with receipts documenting its litigation-related costs and expenses. (See Doc. 127-3). Together, Attorneys Johnson, Phillips, and Kerns worked 485.95 hours for which PILF seeks compensation. These filings are unquestionably specific enough to allow us to assess the reasonableness of the hours claimed by the three attorneys. See Clemens, 903 F.3d at 401 (citing Washington v. Phila. Cnty. Ct. of Com. Pl., 89 F.3d 1031, 1037 (3d Cir. 1996)); Gelis v. BMW of N. Am., LLC, 49 F.4th 371, 379-80 (3d Cir. 2022) (citing Rode, 892 F.2d at 1190). The Commonwealth objects to certain hours cited in Johnson's and Kerns' statements. It also objects to an item listed among PILF's expenses. We address these objections *seriatim*.

1. *Sanctions Motion*

The Commonwealth argues we should exclude 14.40 hours related to filing and defending PILF's motion to show cause because the motion was baseless and sanctionable in and of itself. (See Doc. 129 at 10-11). PILF defends the motion as related to the relief ordered in our summary-judgment decision.[3] (See Doc. 130 at 10-11). We are unpersuaded by PILF's argument. As we pointed out in our order, PILF's motion was procedurally flawed on its face, poorly unsupported by the facts, and unnecessary to achieve PILF's stated goal. (See Doc. 133 at 5 n.7). The purpose of the NVRA's fee-shifting provision is to enhance citizens' access to information used by states to construct voter rolls. A palpable air of acrimony has developed between the parties after years of vigorous litigation, and PILF's motion strikes us as serving this acrimony rather than the interests Congress intended the NVRA to advance. We will exclude these 14.40 hours from PILF's attorneys' fees.[4]

2. *Hersh Subpoena*

PILF initially believed that the Commonwealth had hired one Eitan Hersh, a professor of political science at Tufts University, to be its expert witness in this

---

[3] The Commonwealth and PILF submitted their arguments regarding the compensability of work on the motion for sanctions before we denied the motion. Neither party subsequently has elected to supplement their positions. Their pre-denial positions on the issue are sufficiently clear and expansive such that we may fairly assess them on the merits.

[4] The Commonwealth asks to be reimbursed for its own attorneys' fees related to opposing PILF's motion. (See Doc. 129 at 10-11 & n.3). Setting aside any procedural impropriety with this request, we find application of the American rule appropriate in this situation. PILF's motion was not frivolous; the Commonwealth missed a disclosure deadline (if only narrowly).

matter. (See Doc. 129 at 12-13; Doc. 130 at 11-12). PILF's attorneys subsequently invested time subpoenaing Hersh before dropping the idea after learning he would not be the Commonwealth's designated expert witness. (See Doc. 130 at 11-12). The Commonwealth asks the court to exclude 4.1 hours and $111.06 in expenses related to subpoenaing Hersh as unnecessary and unrelated to this litigation. (See Doc. 129 at 12-13). PILF rejoins that it "did its best to discover the expert's identity through alternative means," (see Doc. 130 at 11), but at no point has PILF explained why it believed Hersh was the Commonwealth's expert as opposed to any other consultant with expertise in the field of political science. We have no basis upon which to conclude the time and resources PILF expended in pursuit of Hersh were necessary or reasonable. Consequently, we will exclude these 4.1 hours and $111.06 in expenses from PILF's final award.

### 3.   *Vague and Unrelated Entries*

The Commonwealth challenges 34.2 hours as excessively vague or unrelated to the present litigation. (See Doc. 129 at 14-16). As we have already noted, the prevailing party must document the hours its attorneys spent working on a case with sufficient specificity to enable the court to assess compensability. See Clemens, 903 F.3d at 401; Gelis, 49 F.4th at 379-80. A fee petition should include "some fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates." Gelis, 49 F.4th at 380 (quoting Rode, 892 F.2d at 1190). However, "it is not necessary to

know the exact number of minutes spent nor the precise activity to which each hour was devoted." Id. (quoting Rode, 892 F.2d at 1190).

PILF concedes 0.7 hours of Attorney Johnson's work related to a phone call on April 6, 2022, and a special admission form for another attorney and should be excluded from the total compensable hours. (See Doc. 130 at 13-19). Nevertheless, PILF insists the rest of the challenged work is sufficiently specific when read in context and genuinely related to this litigation. (See id.)[5] We largely agree. Each of the entries challenged by the Commonwealth (Johnson's phone call aside) lists the task performed, the attorney who performed the task, the date, and the time spent in fractional hours. We need not inquire any further.[6] See Walker, 2013 WL 5947623, at *15 (citing, *inter alia*, Washington, 89 F.3d at 1037-38). PILF adequately explains the connection between the challenged entries and the instant litigation, with one exception. (See Doc. 130 at 17-18). Attorney Phillips asserts she spent 0.7 hours on February 18, 2020, *inter alia*, working on a "special appearance" and doing "training." (See 127-2 at 5). PILF explains the relationship between the appearance and the matter *sub judice*, (see Doc. 130 at 13), but does not explain the relevance of the training. Hence, we must assume the 0.7 hours spent training is

---

[5] PILF appears to exclude Attorney Johnson's April 6 call twice. (See Doc. 130 at 13, 18). We will only deduct it once.

[6] The Commonwealth insists PILF bears a "heavy burden" when it comes to establishing sufficient specificity but relies entirely on caselaw from the United States Court of Appeals for the District of Columbia Circuit. (See Doc. 129 at 14 (citing Kennecott Corp. v. EPA, 804 F.2d 763, 767 (D.C. Cir. 1986) (*per curiam*); Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 970 (D.C. Cir. 2004)). The standard set by our court of appeals controls, not that of a sister court. See Washington, 89 F.3d at 1037.

unrelated and not compensable.[7] Accordingly, we will exclude 1.4 hours; the challenged hours are otherwise compensable.

### 4.  *Local Rules*

The Commonwealth challenges several additional entries totaling 5.7 hours as duplicative and excessive because each entry involves reviewing the local rules of court.  (See Doc. 129 at 16-17).  We do not find these hours to be duplicative.  First, 3.9 of these hours are associated with entries describing multiple tasks such as reviewing communications, conducting legal research, and discussing the case with another attorney—not just reviewing rules.  (See Doc. 127-2 at 3, 16, 20).  As explicitly set forth in the time entry, it is abundantly clear that only a fraction of the identified time was spent on review.  Second, even if PILF's attorneys did spend upwards of 5.7 hours reviewing the local rules, we do not find this be an excessive amount of review given the length of this litigation.[8]  These hours are compensable.

---

[7] We exclude the entire 0.7 hours because PILF aggregated the special admission and training, thus we cannot determine how much time was spent on the compensable versus the non-compensable tasks and must exclude all the time attributed to this entry.  See Rode, 892 F.2d at 1191 (aggregating time is not best practices and carries risks).

[8] The Commonwealth cites to West Virginia University Hospitals, Inc. v. Casey, 898 F.2d 357, 366 (3d Cir. 1990), in support of its assertion that 5.7 hours is categorically excessive.  (See 129 at 17).  In Casey, our court of appeals found 7 hours spent reviewing local rules to be "grossly excessive."  See Casey, 898 F.2d at 366.  But the Casey court was addressing a much different situation.  The attorneys in Casey were experienced appellate practitioners seeking compensation for time spent reviewing the local rules in relation to a Third Circuit appeal.  Undergirding our court of appeals' holding is the assumption appellate rules vary little from circuit to circuit.  In contrast, local rules vary considerably from district to district.  Neither Attorney Johnson nor Attorney Phillips were admitted to practice in Pennsylvania and they had no experience litigating in the Middle District.  (See Doc. 127-1 ¶ 15).  Our local rules are over 100 pages in length and somewhat

### 5.   *Duplicative Work*

The Commonwealth challenges several entries related to PILF's attorneys editing and revising motions, briefs, and other legal documents as unreasonable. (See Doc. 129 at 16-17). We disagree. The revision, editing, winnowing, and perfecting of legal writing is one of a lawyer's most important tasks and much appreciated by the court. These hours are compensable as well.

### 6.   *Administrative Tasks*

The Commonwealth challenges 5.7 hours related to what it calls "administrative tasks." (See id. at 18). The tasks, which appear in a handful of entries scattered over multiple years, relate to several aspects of Attorney Johnson's work: fixing typos, downloading case filings, scanning documents, and constructing a table of contents. (See id.). Fixing typographical errors falls within the editorial work we have already found to be compensable. See *supra* p. 13. Constructing a table of contents and scanning documents, however, are the sort of "purely clerical" tasks for which a law degree is unnecessary. See Clemens, 903 F.3d at 401 (citing Missouri v. Jenkins *ex rel.* Agyei, 491 U.S. 274, 288 n.10 (1989)). A paralegal or administrative assistant could have completed that work effectively, see Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001), and it is unreasonable to bill

---

idiosyncratic in their approach to certain motions, most notably motions for summary judgment. Representing a party on appeal also tends to be far more limited in time and scope than representing a party through the procedural eddies, rapids, and whirlpools of complex, multi-year litigation.

for those tasks at the same rate as bona fide legal work, see Clemens, 903 F.3d at 401. We will exclude the entire[9] 2.8 hours Attorney Johnson spent on these tasks.

### 7. *New Complaint*

The Commonwealth also objects to 13.7 hours PILF's attorneys purportedly spent working on a "new complaint," work the Commonwealth views as duplicative because the complaint filed in this litigation was merely a revised version of the complaint PILF filed in its previously dismissed lawsuit against the Commonwealth. (See Doc. 129 at 18-19). This challenge is unavailing. It is clear from context that the "new complaint" entries at issue refer to efforts to revise the prior complaint. The complaint that initiated this lawsuit includes an additional 28 paragraphs when compared with the prior complaint, as well as innumerable smaller changes. Compare (Doc. 1), with Pub. Int. Legal Found. v. Torres, No. 1:18-CV-463, Doc. 1 (M.D. Pa. Feb. 26, 2018). We find 13.7 hours an entirely reasonable—and therefore compensable—amount of time to bill for making these changes to such an essential filing.

### 8. *Voluntary Mediation*

Attorney Johnson represents in his affidavit that PILF decided, as a matter of billing judgment, not to seek reimbursement for dozens of hours its attorneys put toward mediation with Judge Saporito. (See Doc. 127-1 ¶ 12; see also Doc. 127-2 at 21-23). The Commonwealth notes Attorney Kerns failed to follow Attorney

---

[9] Again, we cannot separate the compensable time in these entries from the non-compensable time because PILF chose to aggregate. See *supra* p. 12 n.7.

Johnson's lead and exclude the 12.75 hours she worked on the mediation. (See Doc. 129 at 19-20). PILF concedes the inclusion of these hours was erroneous and withdraws them.[10] (See Doc. 130 at 22). Accordingly, these hours are not compensable.

### C. Adjustment

PILF originally sought compensation for 485.95 hours. Accounting for the adjustments outlined above, we reduce the total number of compensable hours to 450.5. Using the reasonable rate of $400 per hour, PILF's lodestar amount works out to be $180,200.00. See Hensley, 461 U.S. at 433; Maldonado, 256 F.3d at 184. Having determined PILF is entitled to the full value of its compensable hours, we award PILF $180,200.00 in reasonable attorneys' fees and $2,612.85 in litigation-related expenses.

## IV. Conclusion

For the foregoing reasons, the court will grant in part and deny in part plaintiff's motion for attorneys' fees. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   October 17, 2023

---

[10] PILF does not concede the hours are categorically non-compensable but agrees they should be excluded in an exercise of its billing judgment. (See Doc. 130 at 22).